1          A PROSPECTIVE JUROR:  No.

2          MS. PARK:  Did you know what was going on?

3          A PROSPECTIVE JUROR:  I don't remember when I

4     learned that he had been arrested.  It was -- it was my

5     brother and it was twenty years ago and his record has been

6     sealed, pretty much done.

7          MS. PARK:  So nothing about that that would affect

8     you here?

9          A PROSPECTIVE JUROR:  No.

10         MS. PARK:  Thank you, everyone.

11         THE COURT:  Thank you, Ms. Park.

12         Mr. Herlich.

13         MR. HERLICH:  Yes.

14         Judge, can I have the --

15         THE COURT:  The board?

16         MR. HERLICH:  Yeah.

17         THE SERGEANT:  (Handing.)

18         MR. HERLICH:  So I can get everyone's name right.

19         So, the Judge instructed you on a lot of the

20    preliminary concepts of criminal procedure, like proof

21    beyond a reasonable doubt, and I'll try to hammer that a

22    little bit during this period of voir dire.

23         There's two lawyers, I believe, in the group.

24    Could you raise your hands?

25         (Prospective jurors indicating.)

```
 1              MR. HERLICH:  You know the stuff already, okay.

 2         And you're also a Ph.D in engineering, correct?

 3              A PROSPECTIVE JUROR:  Yes.

 4              MR. HERLICH:  So, Ms. Boyle, do you have any

 5    problem with the fact that the People have to prove their

 6    case beyond a reasonable doubt, which means that unless they

 7    meet that burden of proof, you must acquit the accused, Mr.

 8    Harrell?  Any problem with that?

 9              A PROSPECTIVE JUROR:  No, it's fine.

10              MR. HERLICH:  Okay.

11         And with regard to the burden of proof, as

12    indicated, it always remains with the prosecution.  If Mr.

13    Harrell elects not to testify, you can't hold it against him

14    or draw any inferences unfavorable to him.

15              Any problem with that?

16              A PROSPECTIVE JUROR:  No.

17              MR. HERLICH:  Okay, Mr. Alexander, you indicated

18    that your stepson is a U.S. marshal in Virginia?

19              A PROSPECTIVE JUROR:  Yes.

20              MR. HERLICH:  Okay.

21         So you have a loved one in law enforcement.  Would

22    you give the testimony of a police officer the same scrutiny

23    that you would any other witness; in other words, can you

24    assure us you won't give more weight to police testimony in

25    this case simply because they're police officers?
```

Joanne Fleming

1          A PROSPECTIVE JUROR:  Yes.

2          MR. HERLICH:  You'll judge them by the same

3     methods and tools you use to judge the credibility of a

4     civilian witness?

5          A PROSPECTIVE JUROR:  Yes.

6          MR. HERLICH:  Okay, great.

7          Ms. Cuddihy, you were a criminal juror twice?

8          A PROSPECTIVE JUROR:  Yes.

9          MR. HERLICH:  Anything about those experiences

10    that would have an impact on your ability to be fair and

11    impartial in this case?

12         A PROSPECTIVE JUROR:  No.

13         MR. HERLICH:  In either of those cases, did the

14    judge have any conversations with the jury after the

15    conclusion of those cases?

16         A PROSPECTIVE JUROR:  No.

17         MR. HERLICH:  Thank you.

18         Okay, Ms. Tajzler?

19         A PROSPECTIVE JUROR:  Tajzler.

20         MR. HERLICH:  Tajzler.

21         You studied criminal justice and then had the good

22    sense to go and enroll in an M.B.A. program?

23         A PROSPECTIVE JUROR:  Yes.

24         MR. HERLICH:  What turned you away from criminal

25    justice, if anything?

1          A PROSPECTIVE JUROR:   The lack of jobs.

2          MR. HERLICH:   Okay.

3          You indicated that you were a victim of a crime.

4     Would that affect your ability to be fair and impartial in

5     this case?

6          A PROSPECTIVE JUROR:   The more I sit here and

7     think about it, I'm having a little bit more trouble.

8     Before I thought I would be able to, like, not bring any of

9     my personal background to this, but now I'm starting to --

10          MR. HERLICH:   Maybe.

11          A PROSPECTIVE JUROR:   -- second-guess that.

12          MR. HERLICH:   Anything you want to tell the Judge

13     privately?   Before we continue or --

14          A PROSPECTIVE JUROR:   Sure.

15          THE COURT:   Okay, come up.

16          (Whereupon, the following proceedings took place

17     on the record and outside the presence of the prospective

18     jury panel:)

19          A PROSPECTIVE JUROR:   I was assaulted two

20     different occasions and I thought I would be able to be

21     impartial.   The more I hear about the circumstances of this

22     case, I don't know if I can be impartial.

23          THE COURT:   Okay, not --

24          The circumstances do not involve any allegation

25     that the victim was drugged.

1        A PROSPECTIVE JUROR:  I'm sorry?

2        THE COURT:  There will be no allegations that the

3  victim was drugged.

4        A PROSPECTIVE JUROR:  Okay, I understand that.

5        THE COURT:  Does that change how you feel about

6  staying on the case?

7        A PROSPECTIVE JUROR:  Strictly the no fighting

8  back thing.

9        THE COURT:  Right.

10        A PROSPECTIVE JUROR:  I said with that, so...

11        THE COURT:  Right.

12        Is that what you expect the evidence will show in

13  this case?

14        MS. PARK:  (Indicating.)

15        THE COURT:  Okay.

16        So you're going to hear that she didn't fight back

17  perhaps the ways other people might fight back.  If you

18  heard that, can you still be fair and impartial in this

19  case?

20        MS. PARK:  I mean, Judge, she's also --

21        THE COURT:  Let her answer.

22        A PROSPECTIVE JUROR:  I can relate to that.

23        THE COURT:  Okay.

24        A PROSPECTIVE JUROR:  So that's -- I don't --

25  that's why I know how concerned about bringing my personal

Joanne Fleming

A185

1    experience is into this.

2              THE COURT:  So you can understand why someone

3    might not fight back.

4              A PROSPECTIVE JUROR:  Exactly.

5              THE COURT:  That doesn't prevent you from being a

6    juror in this case?

7              A PROSPECTIVE JUROR:  Yes.

8              MR. HERLICH:  I didn't hear.  You said you were an

9    assault victim twice.  Was it a sexual assault?

10             A PROSPECTIVE JUROR:  First time, no.  Second

11   time, yes.

12             MR. HERLICH:  It was.  Well --

13             A PROSPECTIVE JUROR:  It wasn't to the extent of

14   this.  It was -- it was not rape, but it was --

15             THE COURT:  Okay.

16             A PROSPECTIVE JUROR:  I understand the not

17   fighting back.

18             THE COURT:  Okay.

19             A PROSPECTIVE JUROR:  And I feel sympathetic to

20   the --

21             THE COURT:  Okay.

22             Will you be able to set aside any sympathy and

23   decide this case just on the evidence and the law?

24             A PROSPECTIVE JUROR:  I will absolutely try, but

25   now knowing some of the details that were presented, it has

1       changed my opinion.

2                THE COURT:  So you're not sure if you can set

3       sympathy aside?

4                A PROSPECTIVE JUROR:  I don't think I can set it

5       aside.

6                THE COURT:  Let's make sure we're speaking about

7       the same thing.  When I say "sympathy," it's natural --

8                A PROSPECTIVE JUROR:  Yeah.

9                THE COURT:  -- it's natural for everyone to feel

10      sympathy to someone you know who may have been the victim of

11      a crime.  The issue is whether the sympathy would affect

12      your ability to be fair and impartial.

13               A PROSPECTIVE JUROR:  Now knowing this, the

14      details, yeah, I think it would be affected.

15               THE COURT:  Are there any objections?

16               MR. HERLICH:  No.

17               MS. PARK:  (Indicating.)

18               THE COURT:  Okay, we're going to excuse you.

19               A PROSPECTIVE JUROR:  Okay.

20               (Whereupon, the following proceedings took place

21      on the record and in the presence of the prospective jury

22      panel:)

23               (Whereupon, the prospective juror exited the

24      courtroom.)

25               MR. HERLICH:  Mr. Hall, you still here with us on

1    this case?

2              A PROSPECTIVE JUROR:  (Indicating.)

3              MR. HERLICH:  Again, the presumption of innocence,

4    proof beyond a reasonable doubt.  Any issues with the fact

5    that the prosecution has the obligation to prove the case

6    beyond a reasonable doubt, and if they fail to do so, you're

7    required to acquit Mr. Harrell?  Any problem with that?

8              A PROSPECTIVE JUROR:  I understand that.

9              MR. HERLICH:  Ms. Gresequet?

10             A PROSPECTIVE JUROR:  (Indicating.)

11             MR. HERLICH:  Okay, you are a nursing assistant,

12   is that correct?

13             A PROSPECTIVE JUROR:  Yes.

14             MR. HERLICH:  Do you work at homes or do you work

15   at hospitals?

16             A PROSPECTIVE JUROR:  I work in the nursing home.

17             MR. HERLICH:  Nursing home?

18             A PROSPECTIVE JUROR:  Nursing home.

19             MR. HERLICH:  Okay.

20             Anything that's been discussed so far -- obviously

21   this is a case involving allegations of a sexual assault.

22   Any problem with being able to sit as a fair and impartial

23   juror in a case like this?

24             A PROSPECTIVE JUROR:  No problem.

25             MR. HERLICH:  No problems.

1          And, Ms. Turner, in opening statements we will get

2     into more details, but at this point I will just note,

3     because it was mentioned on the prosecutor's voir dire,

4     there's some charges that require, as part of the People's

5     burden of proof, forcible compulsion.  And that term will be

6     defined by the Judge at the end of the case.

7          And then there are some charges that do not

8     require forcible compulsion but are considered sex crimes

9     based on -- merely based on the age of the complaining

10    witness, who is, as a matter of law, incapable of consent.

11         Any problem with following the Judge's

12    instructions in distinguishing those two sets of charges?

13         A PROSPECTIVE JUROR:  Well, I didn't -- I didn't

14    think so.  If the Judge is going to -- can I talk about this

15    or do I just say yes or no?

16         THE COURT:  No, you can express yourself.

17         A PROSPECTIVE JUROR:  The prosecutor said she

18    didn't fight back and you're saying the Judge -- that your

19    Honor will explain what forcible means, and I'm trying to

20    figure out if you're asking me if I've already come to a

21    conclusion about forcible and not fighting back.

22         MR. HERLICH:  No conclusion.  That's not what I

23    asked you.

24         A PROSPECTIVE JUROR:  Yeah.

25         MR. HERLICH:  I asked you:  Will you be able to

1    distinguish the charges in the indictment that require, as

2    an element of the crime, forcible compulsion and those which

3    whose element is essentially the age of the person being

4    fifteen-years old without the cognizant requirement of

5    forcible compulsion?

6                A PROSPECTIVE JUROR:  Yes, I can distinguish

7    between the two.

8                MR. HERLICH:  Yes.

9                Mr. Wilson, you were a criminal and civil juror,

10   correct?

11               A PROSPECTIVE JUROR:  Yes.

12               MR. HERLICH:  Can you assure us that whatever

13   legal instructions were given --

14               Did the civil case go to verdict or was it

15   settled?

16               A PROSPECTIVE JUROR:  It was settled out of court.

17               MR. HERLICH:  So you never wound up deliberating

18   as a juror in the civil case.

19               A PROSPECTIVE JUROR:  No.

20               And all those cases were very unrelated to this,

21   what you are describing today.

22               MR. HERLICH:  Okay.

23               Well, so you never were instructed on the law and

24   a burden of proof in a civil case, I assume?  You were never

25   given those instructions by a judge.

1    A PROSPECTIVE JUROR:  In the beginning, yes.

2    MR. HERLICH:  Oh, you were?

3    A PROSPECTIVE JUROR:  But then they let us go

4    because they settled out of court.

5    MR. HERLICH:  Okay.

6    In a civil case, the burden of proof is on the

7    plaintiff, a preponderence of the evidence, more likely, and

8    not that something happened.  In a criminal case, where we

9    are, it's proof beyond a reasonable doubt.

10   Can you assure us that you will hold the

11   prosecution to their burden of proof?

12   A PROSPECTIVE JUROR:  Yes.

13   MR. HERLICH:  Thank you.

14   Ms. Gurtenboim, you indicated that you were

15   assaulted on two different occasions.  Were any arrests made

16   in those cases?

17   A PROSPECTIVE JUROR:  Yes.

18   MR. HERLICH:  Did you have to testify in any court

19   proceedings in these cases?

20   A PROSPECTIVE JUROR:  Not in a court proceeding.

21   MR. HERLICH:  Before a grand jury?

22   A PROSPECTIVE JUROR:  No, never made it that far.

23   MR. HERLICH:  Anything about those events that

24   would have any bearing on your ability to be fair and

25   impartial in this case?

Joanne Fleming

1          A PROSPECTIVE JUROR:  No.

2          MR. HERLICH:  Ms. Spinner?

3          A PROSPECTIVE JUROR:  Mm-hmm.

4          MR. HERLICH:  You have an M.A. in applied

5     statistics?

6          A PROSPECTIVE JUROR:  Mm-hmm.

7          MR. HERLICH:  Do you use that in your work in any

8     way, shape or form?

9          A PROSPECTIVE JUROR:  No.

10          MR. HERLICH:  No.

11          Any special area in statistics that you were

12     interested in when you studied it?

13          A PROSPECTIVE JUROR:  Econometrics.

14          MR. HERLICH:  If you're selected as a juror in

15     this case, a very small part of the case will have something

16     to do with statistics, and can you assure us you won't hold

17     yourself out as the resident expert in the jury about

18     statistics but you'll just accept what you hear from the

19     witness stand, scrutinize the witnesses who will be

20     testifying about statistics, without being the maven in the

21     jury room on statistics?

22          If I'm not making myself clear, in other words,

23     you can bring your general knowledge, your common sense, to

24     bear in the jury room, but the fact that you have some

25     expertise in statistics shouldn't enable you to be sort of a

1      second expert in the jury room.  You're --

2                  A PROSPECTIVE JUROR:  Okay.

3                  MR. HERLICH:  -- you're bound by the testimony of

4      what you hear in court from certain witnesses and obviously

5      your good sense at scrutinizing that witness.

6                  A PROSPECTIVE JUROR:  Okay.

7                  MR. HERLICH:  Any problem with that?

8                  A PROSPECTIVE JUROR:  No.

9                  MR. HERLICH:  Okay.

10                  Mr. Morais, what led you away from journalism and

11      into public relations?

12                  A PROSPECTIVE JUROR:  I mean, a combination of the

13      fact a lot of long hours, a lot of late nights.  Also, I

14      mean, occasionally I was primarily sports, doing sports, but

15      you know, at the same time, yeah, it was a lot of late

16      nights, you know.

17                  MR. HERLICH:  Okay.

18                  THE COURT:  Mr. Herlich, are you just about done?

19                  MR. HERLICH:  I'm sorry?

20                  THE COURT:  Are you just about done?

21                  MR. HERLICH:  Yes, your Honor.  Almost, just a

22      couple of questions.

23                  Ms. Sutton, you were a civil juror, correct?

24                  A PROSPECTIVE JUROR:  (Indicating.)

25                  MR. HERLICH:  Did it go to verdict or was it

1      settled?

2                   A PROSPECTIVE JUROR:  It was verdict.

3                   MR. HERLICH:  Okay.

4                   So the Judge instructed you about the burden of

5      proof in that case where the plaintiff has a preponderence

6      of the evidence.

7                   A PROSPECTIVE JUROR:  (Indicating.)

8                   MR. HERLICH:  Here, in a criminal case, it's proof

9      beyond a reasonable doubt, much higher standard.

10                  Can you assure us that you will take the

11     instructions from the Judge in this case and disregard

12     whatever you may have learned in the civil case?

13                  A PROSPECTIVE JUROR:  Most definitely.

14                  MR. HERLICH:  Thank you.

15                  THE COURT:  Okay, thank you, jurors.

16                  At this time, the law permits the attorneys to

17     review their notes and make some decisions.  So I will ask

18     you to please step outside for a few minutes while we do

19     that.

20                  A COURT OFFICER:  Make sure you have all your

21     belongings and step this way, please.

22                  (Whereupon, the prospective jurors in the box

23     exited the courtroom.)

24                  THE COURT:  Do you need a few minutes?

25                  MR. HERLICH:  Yeah.

1          (Counsel conferring with defendant.)

2          THE COURT:  Are you ready?

3          MR. HERLICH:  Yes.

4          THE COURT:  There's thirteen left.  So, we're

5     going to take the first twelve which are in seats one

6     through twenty.

7          Looking at seats one through twenty, are there any

8     challenges for cause, People?

9          MS. PARK:  No.

10          THE COURT:  Defense, for cause?

11          MR. HERLICH:  No.

12          THE COURT:  Okay.

13          Peremptory challenges, People, one through twenty?

14          MS. PARK:  Number fifteen, Ms. Burtenboim.

15          MR. HERLICH:  Gurtenboim.          PEOPLE'S 1

16          MS. PARK:  Gurtenboim.

17          THE COURT:  Close, okay.

18          Anybody else?

19          MS. PARK:  No.

20          THE COURT:  That's it, okay.

21          How about you, Mr. Herlich, one through twenty,

22     any peremptory challenges?          DEFENSE 3

23          MR. HERLICH:  Yes, your Honor.

24          Number one, Jean Boyle.  Number seven, Garrett

25     Hall.  Number ten, Ms. Turner.  And number nineteen,

Joanne Fleming

A195

1    Mr. Lee.

2            THE COURT:  Let's see if we got this right now.

3    Seat number three, Timothy Alexander, becomes Juror Number 1

4    and our foreperson.

5            Seat number five becomes Juror Number 2.

6            Seat number nine becomes Juror Number 3.

7            Seat eleven becomes Juror Number 4.

8            Seat sixteen becomes Juror Number 5.

9            Seat seventeen becomes Juror Number 6.

10           And seat twenty becomes Juror Number 7.

11           That leaves just seat twenty-one.  Any challenge

12   for cause, People?

13           MS. PARK:  No.

14           THE COURT:  Mr. Herlich, for cause?

15           MR. HERLICH:  No.

16           THE COURT:  Peremptory challenge, People?

17           MS. PARK:  No.

18           THE COURT:  Defense?

19           MR. HERLICH:  Yes, your Honor, I would challenge

20   Mr. Baldwin peremptorily.

21           THE COURT:  Alright.  **Defense 4**

22           So we got seven jurors.  We did better than I

23   thought.

24           I'm still inclined not to have these jurors come

25   back nine-thirty tomorrow morning.

Joanne Fleming

 1          MR. HERLICH:  Monday morning.

 2          THE COURT:  No, Tuesday.

 3          MS. PARK:  Tuesday.

 4          MR. HERLICH:  That's right.

 5          THE COURT:  We have to get a whole new panel.

 6          MR. HERLICH:  You're right.  I was --

 7          THE COURT:  Okay.

 8          Let's bring them in, please.

 9          (Whereupon, the prospective jurors in the box

10     entered the courtroom.)

11          A COURT OFFICER:  This way, jurors.

12          There or in the audience?

13          THE COURT:  In the audience.

14          A COURT OFFICER:  This way, jurors.

15          THE COURT:  Okay, jurors, please listen for your

16     name.  If your name is called, that means you've been

17     selected to sit as a juror in this trial.  Please come up

18     with your belongings, the court officer will show you where

19     to sit.  That will be your seat for the remainder of the

20     trial.

21          THE CLERK:  Juror Number 1, Timothy Alexander.

22     A-L-E-X-A-N-D-E-R.

23          Juror Number 2, Kathleen Cuddihy, C-U-D-D-I-H-Y.

24          Juror Number 3, Arelis Gresequet,

25     G-R-E-S-E-Q-U-E-T.

1          Juror Number 4, Scott Wilson, W-I-L-S-O-N.

2          Juror Number 5, Sheryl Spinner, S-P-I-N-N-E-R.

3          Juror Number 6, Didier Morais, M-O-R-A-I-S, first

4    name D-I-D-I-E-R.

5          Juror Number 7, Audrey Sutton, S-U-T-T-O-N.

6          THE COURT:  Alright, jurors in the audience, thank

7    you very much for your service.  You can return back to the

8    fifteenth floor?

9          THE CLERK:  Fifteenth floor.

10         THE COURT:  Thank you very much.  You're excused.

11         MR. HERLICH:  Your Honor, may we approach for one

12   moment?

13         THE COURT:  Before they leave?

14         MR. HERLICH:  No.

15         THE COURT:  Yes, come on up.

16         (Whereupon, the following proceedings took place

17   on the record and outside the presence of the prospective

18   jury panel:)

19         MR. HERLICH:  I'm sorry, your Honor, the defendant

20   just informed me he wanted to exclude Ms. Spinner, and my

21   notes are so confusing because some people were --

22         THE COURT:  Do you have any objection?

23         MS. PARK:  It's alright.

24         THE COURT:  We will excuse Ms. Spinner.

25         And that will be your sixth.  That will be your

Joanne Fleming

1    sixth challenge.

2              MR. HERLICH:  Right.

3              (Whereupon, the following proceedings took place

4    on the record and in the presence of the prospective jury

5    panel:)

6              THE COURT:  Ms. Spinner, I'm sorry, you're

7    actually excused.

8              A PROSPECTIVE JUROR:  Oh, okay.

9              THE CLERK:  Sir, you can slide to your left.

10             And, Ms. Sutton, if you can please come up and

11   take seat number six.

12             (Whereupon, the prospective juror exited the

13   courtroom.)

14             THE CLERK:  Jurors, please rise and raise your

15   right hands?

16             (Prospective jurors comply.)

17             THE CLERK:  Jurors satisfactory to the People?

18             MS. PARK:  Yes.

19             THE CLERK:  To the defense?

20             MR. HERLICH:  Yes.

21             (Whereupon, the six prospective jurors were sworn

22   or affirmed in as trial jurors by the Clerk of the court.)

23             THE CLERK:  Have a seat.

24             THE COURT:  Okay, jurors, as you can see, we have

25   selected our first six jurors.  We need to pick six more and

Proceedings

1    we also need to select our alternates.

2         Obviously jury selection is going to continue.

3    There's no reason for you to come back here and be sitting

4    around the hallways waiting for us to finish jury selection.

5    So, I ask you please not to come back until Tuesday morning

6    at nine-thirty, okay?

7         When you arrive on Tuesday morning at nine-thirty,

8    please do not enter the courtroom, just wait outside in the

9    hallway, one of the court officers will go outside and

10   invite you in when we're ready for you.

11        Between now and then, I ask you to simply put this

12   case out of your mind.  You really know nothing about the

13   case.  Put it out of your mind.

14        Do not discuss this case either among yourselves

15   or with anyone else.

16        Please continue to keep an open mind as to the

17   defendant's guilt or innocence.

18        Please do not form or express an opinion as to the

19   defendant's guilt or innocence.

20        Now, this is very important.  If you're going to

21   be late, for any reason, please give us a call.  Let us know

22   why you're delayed and when you expect to be here.  We can't

23   conduct no business until every single juror is present.  So

24   if we have the twelve jurors and say we select four

25   alternates, we can't conduct any proceedings until all

1      sixteen jurors are actually present.  So please give us a

2      call and let us know what's going on.

3              If for any reason we're not going to be ready for

4      you Tuesday morning at nine-thirty, we will call you and let

5      you know.  Right now, that's the plan and I expect we will

6      be able to do that.

7              If you have any additional questions, the court

8      officer outside will answer your questions.  He will also

9      give you our contact information and we will take your

10     contact information.

11             Thank you.  I will see you Tuesday morning.

12             A COURT OFFICER:  Okay, jurors, this way, please.

13             (Whereupon, the six sworn jurors exited the

14     courtroom)

15             THE COURT:  Okay, I will see you Monday morning at

16     nine-thirty.

17             MR. HERLICH:  Okay.

18             THE COURT:  Take care.

19             (Whereupon, the trial was adjourned to Monday,

20     28th, 2015.)

21

22

23

24

25

Joanne Fleming

A201

```
 1   SUPREME COURT OF THE STATE OF NEW YORK
     COUNTY OF NEW YORK:  CRIMINAL TERM:  PART 59
 2   ----------------------------------------x

 3   THE PEOPLE OF THE STATE OF NEW YORK          Indictment
                                                  No. 4258/14
 4
                    -against-                     Crim. Sex Act 1
 5
                                                  Jury Trial
 6   LONNIE HARRELL,

 7                          Defendant.

 8   ----------------------------------------x

 9                                       September 28th, 2015

10                                       100 Centre Street
                                         New York, NY  10013
11

12   B e f o r e:

13
                          HONORABLE JUAN M. MERCHAN,
14
                                            Justice.
15

16   Appearances:

17
                          CYRUS R. VANCE, JR., ESQ.
18                        District Attorney, New York County
                          BY:  JUNG PARK, ESQ.
19                             Assistant District Attorney

20
                          THEODORE HERLICH, ESQ.
21                        Attorney for Defendant

22

23

24
                                       Joanne Fleming
25                                     Senior Court Reporter
```

Proceedings                                                          195

```
 1                      (In open court)

 2                      THE CLERK:  Case on trial, 4258 of '14, Lonnie

 3      Harrell.

 4                      THE COURT:  Good morning.

 5                      Your appearances, please.

 6                      MR. HERLICH:  Theodore Herlich for Mr. Harrell.

 7      Good morning, Judge.

 8                      MS. PARK:  Jung Park for the People.

 9      Good morning.

10                      THE COURT:  Good morning.

11                      Good morning, Mr. Harrell.

12                      THE DEFENDANT:  Good morning, sir.

13                      THE COURT:  I am informed that we have

14      seventy-five jurors outside.  Any reason we can't bring them

15      in?

16                      MS. PARK:  No.

17                      THE COURT:  So let's bring them in, please.

18                      A COURT OFFICER:  Panel entering.

19                      (Whereupon, the prospective trial jurors entered

20      the courtroom.)

21                      THE CLERK:  I will ask all jurors to please rise

22      and raise your right hand.

23                      (Whereupon, the prospective jury panel was sworn

24      or affirmed in by the Clerk of the Court.)

25                      THE CLERK:  Thank you.
```

Joanne Fleming

Voir Dire - The Court

1        Please be seated.

2        THE COURT:  Good morning, jurors.

3        Welcome to New York County Supreme Court, Part 59.

4   My name is Juan Merchan and I will be the judge presiding

5   over this matter.

6        Some of you are about to be selected as jurors for

7   a trial in a criminal case, and I'm about to explain to you

8   about what the trial involves and what your role will be and

9   what my role will be.

10       These introductory remarks will take about twenty

11  or twenty-five minutes.  Before I continue, I do want to

12  thank all of you for being here.

13       You are about to participate in a trial by jury.

14  The system of trial by jury is one of the cornerstones of

15  our judicial system.  Under that system, members of the

16  community, normal average members of the community, just

17  like you, are asked to determine whether another member of

18  the community, who has been accused of committing a crime,

19  is actually found guilty or not guilty of the commission of

20  that crime.

21       The name of this case is the People of the State

22  of New York versus Lonnie Harrell.  The words "People of the

23  State of New York" in the title mean the government of the

24  State of New York.

25       The fact that this action is brought in the name

Joanne Fleming

A204

1       of the People or that the evidence is presented by a public

2       official does not in any way indicate that the public wants

3       a specific verdict.  The People are served by whatever

4       verdict is justified by the evidence.

5               The People, that is, the government, is

6       represented by the district attorney of New York County,

7       Cyrus Vance, Jr., and he, in turn, is represented in this

8       action by assistant district attorney Jung Park who is

9       seated to my left.

10              MS. PARK:  Good morning, everyone.

11              VOICES FROM JURY BOX:  Good morning.

12              THE COURT:  The defendant, Mr. Lonnie Harrell, is

13      represented by his attorney, Mr. Theodore Herlich, who's

14      seated to my right.

15              MR. HERLICH:  Good morning.

16              VOICES FROM JURY BOX:  Good morning.

17              THE COURT:  The defendant is charged with the

18      crimes of criminal sexual act in the first degree, an

19      attempt to commit the crime of rape in the first degree,

20      sexual abuse in the first degree and criminal sexual act in

21      the third degree.

22              The allegations, in substance, are that on July

23      16th, 2014, inside an apartment located at Ninety-Two St.

24      Nicholas Avenue in New York County, the defendant sexually

25      assaulted the complaining witness who is fifteen years of

Joanne Fleming

A205

1       age at the time.

2            Specifically, the People allege that the defendant

3       forcibly committed several different sex acts against the

4       complaining witness, some of which included an attempt of

5       vaginal penetration, digital penetration and oral sex.  The

6       defendant denies these allegations.

7            At the end of the trial, I will give you detailed

8       instructions on the crimes charged and it is upon those

9       instructions that you must base your decision.

10           I've given you this brief description of the

11      charges only for the purpose of allowing you to consider

12      whether there's anything about the nature of the charges

13      that would affect your ability to be a fair and impartial

14      juror.  You are not to use the description that I've just

15      given to you for any other purpose.

16           This case comes to us by way an of indictment.  An

17      indictment is a document that contains an accusation.

18      Neither the indictment itself, nor the fact that an

19      indictment has been filed, constitutes evidence.

20           The indictment has been filed against the

21      defendant and the defendant has answered that he is not

22      guilty of these accusations.  The trial, therefore, is to be

23      conducted for you to decide whether the defendant is guilty

24      or not guilty of these crimes.

25           A jury is composed of twelve people.  In addition

Joanne Fleming

A206

1    to the twelve jurors, we will also select alternate jurors.

2             An alternate juror is one who may serve in place

3    of one of the first jurors should an unforeseen and

4    extraordinary emergency arise that makes it totally

5    impossible for one of the first twelve jurors to complete

6    the trial.  The first person called who is sworn as a juror

7    will serve as the jury's foreperson.

8             If you have participated in jury selection in a

9    criminal case before, you may notice that the method of jury

10   selection varies from judge to judge, but the essence of

11   each procedure is the same.  It involves a combination of

12   explanations of law and questions, all designed to help each

13   of you, as well as the lawyers, to decide -- it involves a

14   combination of explanations of the law and questions, all

15   designed to help each of you, as well as the lawyers, to

16   decide whether you can sit as a juror in this case and be

17   fair in judging whether the defendant is guilty or not

18   guilty of a charged crime.

19            My jury selection procedure is as follows:

20            First:  I will explain some of the basic law that

21   applies to this case and all criminal trials.  I do this in

22   part because if you are selected as a juror, you will be

23   required to follow the law whether you agree with the law or

24   not.  Later I will ask you whether you understand the law I

25   have explained and whether you can accept and follow it.

Joanne Fleming

A207

Second:  I, together with the attorneys, will interview those jurors who have specific concerns about their ability to serve on this case on the basis of which you've heard up to that point.  As I will explain later, each juror will be accorded a measure of privacy during that interview.

Third:  The clerk of the court will call at random the names of eighteen jurors who will take a seat in the area on my left which is called a jury box.  Those jurors will be handed a questionnaire.  I will then ask the jurors with the questionnaires to answer aloud in a narrative form and then each lawyer will address the jurors in the jury box for approximately fifteen minutes.

Finally:  All the jurors will be excused for a few minutes, and during the time, the lawyers will be given an opportunity, as required by our law, to excuse one or more of the jurors in the jury box.  Those jurors who are not excused become members of the jury and we repeat that process until we have selected all of our jurors and the alternate jurors.

The jury's responsibility is to evaluate fairly the testimony and other evidence presented at the trial in order to judge what the believable and accurate facts are, if any.  The jury's, therefore, also known as the finders of the facts or the judges of the facts.

Joanne Fleming

Voir Dire - The Court

1     After the jury has found or judged the facts, the

2  jury must apply the law as I explain it to those facts and

3  decide, without favor, bias, prejudice, sympathy or a

4  consideration of a possible sentence or punishment whether

5  the People have proven the defendant guilty beyond a

6  reasonable doubt.

7     In your deliberations, you may not consider or

8  speculate about matters relating to sentence or punishment.

9  If there is a verdict of guilty, it will be my

10  responsibility to impose an appropriate sentence.

11     In reaching its verdict, guilty or not guilty, the

12  jury must be fair.  It's important, then, for you to know

13  what makes a person a fair juror so that you can decide

14  whether you can be a fair juror in this particular case.

15  Later in the proceedings I will ask whether you can be a

16  fair juror here.

17     A fair juror is a person who will accept and apply

18  the law of New York, in particular, that the defendant is

19  presumed to be innocent and that the People, the government,

20  bears the responsibility of proving the defendant guilty

21  beyond a reasonable doubt.

22     A fair juror is a person who has no personal bias

23  or prejudice in favor of or against the party or any

24  witness, whether the witness is a police officer or a

25  civilian.

Joanne Fleming

Voir Dire - The Court

```
 1              A fair juror is a person who will listen carefully
 2        to all the testimony and other evidence and not make a final
 3        decision on the verdict until the end of the case after the
 4        juror has heard all the evidence, has heard the lawyers'
 5        summations, has heard the Court's final instructions on the
 6        law and has had an opportunity, after all of that, to
 7        discuss the evidence with the other jurors and consider
 8        their views.
 9              Finally, a fair juror is a person who, without
10        favor, bias, prejudice or sympathy, for either the People or
11        the defendant or any witness, whether the witness is a
12        police officer or a civilian, renders a verdict of guilty or
13        not guilty which the juror is convinced is consistent with
14        the juror's honest evaluation of the testimony and other
15        evidence and that juror's honest application of the law.
16              My role is to help assure a fair and orderly trial
17        in accordance with our law.  I do that by presiding over the
18        trial, deciding questions of law that arise among and
19        between the parties, and explain to you, the jury, as I'm
20        doing right now, what the law is that the jury must accept
21        and follow.
22              We're both judges in the case.  It's important to
23        recognize that we judge different things.  You, the jury,
24        judge the facts of the case in order to reach a verdict of
25        guilty or not guilty if you can.  And I judge the law,
```

Joanne Fleming

A210

1    meaning I decide questions of law and I instruct the jury on

2    the law.

3           It is not my responsibility to judge the facts

4    here.  I do not decide whether the defendant is guilty or

5    not guilty.  You are the judges of the facts and you alone

6    are responsible for deciding whether the defendant is guilty

7    or not guilty.

8           So, nothing I say, or how I say it, and no ruling

9    I make on the law is intended to be, nor should it be,

10   considered by you as an expression of my opinion on the

11   facts of the case or of whether the defendant is guilty or

12   not guilty.

13          We now turn to the fundamental principles of our

14   law that apply in all criminal cases:  The presumption of

15   innocence, the burden of proof and the requirement of proof

16   beyond a reasonable doubt.

17          Throughout these proceedings, the defendant is

18   presumed to be innocent.  As a result, you must find the

19   defendant not guilty unless, on the evidence presented at

20   this trial, you conclude that the People have proven the

21   defendant guilty beyond a reasonable doubt.

22          That a defendant does not testify as a witness is

23   not a factor from which any inference unfavorable to the

24   defendant may be drawn.  The defendant is not required to

25   prove that he is in guilty.  In fact, the defendant is not

Voir Dire - The Court

1    required to prove or disprove anything.

2          The People have the burden of proving the

3    defendant guilty beyond a reasonable doubt.  That means,

4    before you can find the defendant guilty of a crime, the

5    People must prove, beyond a reasonable doubt, every element

6    of the crime, including that the defendant is the person who

7    committed that crime.

8          The burden of proof never shifts from the People

9    to the defendant.  If the People fail to satisfy their

10   burden of proof, you must find the defendant not guilty.  If

11   the People satisfy their burden of proof, you must find the

12   defendant guilty.

13         The law uses the term "proof beyond a reasonable

14   doubt" to tell you how convincing the evidence of guilt must

15   be to permit a verdict of guilty.

16         The law recognizes that in dealing with human

17   affairs, there are very few things in this world that we do

18   know with absolute certainty.  Therefore, the law does not

19   require the People to prove a defendant guilty beyond all

20   possible doubt.

21         On the other hand, it is not sufficient to prove

22   that the defendant is probably guilty.  In a criminal case,

23   the proof of guilt must be stronger than that, it must be

24   beyond a reasonable doubt.

25         A reasonable doubt is an honest doubt of the

Joanne Fleming

A212

1    defendant's guilt for which a reason exists based upon the

2    nature and the quality of the evidence.  It is an actual

3    doubt.  Not an imaginary doubt.

4            It is a doubt that a reasonable person, acting in

5    a matter of this importance, would be likely to entertain

6    because of the evidence that was presented or because of the

7    lack of convincing evidence.

8            Proof of guilt beyond a reasonable doubt is proof

9    that leaves you so firmly convinced of the defendant's guilt

10   that you have no reasonable doubt of the existence of any

11   element of the crime or of the defendant's identity as the

12   person who committed that crime.

13           In determining whether or not the People have

14   proven the defendant's guilt beyond a reasonable doubt, you

15   should be guided solely by a full and fair evaluation of the

16   evidence.  After carefully evaluating the evidence, each of

17   you must decide whether or not that evidence convinces you

18   beyond a reasonable doubt of the defendant's guilt.

19           Whatever your verdict may be, it must not rest

20   upon baseless speculation, nor may it be influenced in any

21   way by bias, prejudice, sympathy or by a desire to bring an

22   end to your deliberations or to avoid an unpleasant duty.

23           Again, if you are not convinced beyond a

24   reasonable doubt that the defendant is guilty of a charged

25   crime, you must find the defendant not guilty of that crime.

Joanne Fleming

A213

1   And if you are convinced beyond a reasonable doubt that the

2   defendant is guilty of a charged crime, you must find the

3   defendant guilty of that crime.

4          As judges of the facts, you alone determine the

5   truthfulness and accuracy of the testimony of each witness.

6   You must decide whether a witness told the truth and was

7   accurate, or instead, testified falsely or was mistaken.

8          You must also decide what importance to give to

9   the testimony that you accept as truthful and accurate.

10         It is the quality of the testimony that is

11  controlling, not the number of witnesses who testify.

12         There is no particular formula for evaluating the

13  truthfulness and accuracy of another person's statements or

14  testimony.  You bring to this process all of your varied

15  life experiences.

16         In life, you frequently decide the truthfulness

17  and accuracy of statements made to you by other people.  The

18  same factors used to make those decisions should be used in

19  this case when evaluating the testimony.  I will instruct

20  you further on this subject at the end of the trial.

21         In this case you will hear the testimony of police

22  officers.  The testimony of a witness should not be believed

23  solely and simply because a witness is a police officer.  At

24  the same time, a witness' testimony should not be

25  disbelieved solely and simply because the witness is a

1   police officer.

2            In other words, you must not believe or disbelieve

3   a police officer just because he or she is a police officer.

4   You must listen to a police officer's testimony just like

5   you would listen to any other witness, and you must evaluate

6   a police officer's testimony for truthfulness and accuracy

7   in the same way you would evaluate the testimony of any

8   other witness.

9            Your verdict, whether guilty or not guilty, must

10  be unanimous.  Since twelve people seldom agree immediately

11  on anything, to reach a unanimous verdict, you must

12  deliberate with the other jurors.  That means you should

13  discuss the evidence and consult with each other, listen to

14  each other, give each other's views careful consideration

15  and reason together when considering the evidence.

16           And when you deliberate, you should do so with a

17  view towards reaching an agreement if that can be done

18  without surrendering individual judgment.  Each of you must

19  decide the case for yourself but only after a fair and

20  impartial consideration of the evidence.

21           You should not surrender an honest view of the

22  evidence simply because you want the trial to end or because

23  you're outvoted.  At the same time, you should not hesitate

24  to re-examine your views and change your opinion if you

25  become convinced that it was not correct.

Joanne Fleming

A215

1          The attorneys have informed me that they expect

2     this trial to last two weeks or less.  That's just an

3     estimate.  You know, the trial could run a little bit

4     longer, it could run a little bit shorter.  Based on our

5     experience, that's the best estimate we can come up with,

6     that it will run two weeks or perhaps a little less.

7          The attorneys have also given me the names of

8     witnesses they expect to call to the stand during the course

9     of the trial or names that might be mentioned from the stand

10    during the course of the trial.

11         I'm going to read those names to you.  Please

12    listen to those names.  You will be given an opportunity, in

13    a few minutes, to let me know if you recognize any of these

14    people:

15         Cypress Smith, Laketa Smith, Dr. Anjay Singh,

16    A-N-J-A-Y, Jeannie Tamariz, J-E-A-N-N-I-E, T-A-M-A-R-I-Z,

17    Alynka Jean, A-L-Y-N-K-A, Detective Susan Barbato, Detective

18    Randolff Pinard, Officer Ariel Castillo, Officer Danny Lora,

19    Officer Millicent Semper-Martinez, Officer Ruth Mateo,

20    Officer Christopher Hager, Officer Bradley Field, Tanya

21    deVulpullieres, I will spell that,

22    D-E-V-U-L-P-U-L-L-I-E-R-E-S, Dean DeLitta, D-E-L-I-T-T-A,

23    Ronald Witt and Winston Chambers.

24         Okay, now that you have heard my preliminary

25    instructions, if you have a legitimate, good-faith reason to

1  believe, based solely upon what you've heard up to this

2  point, that you cannot serve on this jury, that you cannot

3  be fair or for some other reason you cannot serve, you will

4  be given an opportunity, in a few minutes, to let me know

5  why.

6          The way we will do it, we will be joined at the

7  bench by defense counsel, the assistant district attorney

8  and the court reporter.  The court reporter will take down

9  everything that we say.  Everything that's said in this

10  part, Part 59 is taken down by a court reporter.

11          You will be asked to approach one by one, and at

12  that time you can tell me why you believe that you should be

13  excused, why you believe you cannot be fair and impartial.

14          Please bear in mind, however, that simply having

15  work, school or child care responsibilities alone, without

16  more, will not suffice to excuse you from jury duty.  You

17  can imagine that if I excused everyone who had that as an

18  excuse, I will not ever be able to pick a jury, but I pick

19  juries all the time, as do my colleagues on the Supreme

20  Court bench.

21          The way we will do this is, the court officers,

22  the sergeant, the clerk of the Court, will give you certain

23  instructions.  I ask you to please follow their

24  instructions.  When they speak to you, they speak on behalf

25  of the Court.  So, I ask you to please extend to them the

Joanne Fleming

A217

1    same courtesies that you would extend to me.  At this time,

2    please follow their instructions.

3              Counsel, please approach.

4              (Whereupon, the following proceedings took place

5    on the record and outside the presence of the prospective

6    jury panel:)

7              THE CLERK:  This is Mike Brown, B-R-O-W-N.

8              THE COURT:  Yes, Mr. Brown, how can I help you?

9              A PROSPECTIVE JUROR:  Two issues.  One, I will not

10   be in the country next week.

11             THE COURT:  Okay.

12             A PROSPECTIVE JUROR:  So that's one issue.

13             THE COURT:  You already have those plans?

14             A PROSPECTIVE JUROR:  What's that?

15             THE COURT:  You already have those travel plans?

16             A PROSPECTIVE JUROR:  Yes.

17             THE COURT:  Any objection?

18             MS. PARK:  No.

19             MR. HERLICH:  No.

20             THE COURT:  You're excused.

21             THE CLERK:  Take this back to the fifteenth floor

22   jury room.

23             (Whereupon, the prospective juror exited the

24   courtroom.)

25             THE CLERK:  This is Mark Love, L-O-V-E.

Joanne Fleming

A218

```
 1              THE COURT:  Yes, sir, how can I help you?

 2              A PROSPECTIVE JUROR:  Yes.  My father is a retired

 3   police captain and my sister is a victims advocate for the

 4   Denver District Attorney's Office.  So, I've heard of cases

 5   like this before.

 6              THE COURT:  Okay.

 7              If you were to be selected as a juror, could you

 8   be fair and impartial?

 9              A PROSPECTIVE JUROR:  I would like to be, but I

10   don't think I could be.

11              THE COURT:  Any objections?

12              MS. PARK:  No.

13              MR. HERLICH:  No.

14              THE COURT:  You're excused.

15              THE CLERK:  Follow the instructions of the Court

16   officer.

17              (Whereupon, the prospective juror exited the

18   courtroom.)

19              THE CLERK:  This is Michael Bagliebeter, last name

20   B-A-G-L-I-E-B-E-T-E-R.

21              THE COURT:  Yes, how can I help you?

22              A PROSPECTIVE JUROR:  Me and my wife have a trip

23   to Europe on this Friday.

24              THE COURT:  This Friday?

25              A PROSPECTIVE JUROR:  Yes.
```

Joanne Fleming

A219

```
 1                    THE COURT:  Any objections?

 2                    MR. HERLICH:  No.

 3                    MS. PARK:  No.

 4                    THE COURT:  You're excused.

 5                    THE CLERK:  Follow the directions of the court

 6      officer.

 7                    (Whereupon, the prospective juror exited the

 8      courtroom.)

 9                    THE CLERK:  Nyoka Gumbs.  Last name, G-U-M-B-S,

10      first name, N-Y-O-K-A.

11                    THE COURT:  Yes, ma'am?

12                    A PROSPECTIVE JUROR:  I'm traveling next Thursday.

13      So I wasn't sure --

14                    THE COURT:  What date is that?

15                    A PROSPECTIVE JUROR:  The eighth.

16                    THE COURT:  We will excuse you.

17                    A PROSPECTIVE JUROR:  The evening of the eighth.

18                    THE CLERK:  Follow the instructions of the court

19      officer.

20                    (Whereupon, the prospective juror exited the

21      courtroom.)

22                    THE CLERK:  This is Lisa Gruson, G-R-U-S-O-N.

23                    THE COURT:  Hi.  How can I help you?

24                    A PROSPECTIVE JUROR:  I have two young kids.

25                    THE COURT:  I can't hear.
```

1          A PROSPECTIVE JUROR:  I full-time and this week

2     and early next week, but if it goes beyond that, I have no

3     one to pick them up, no one to do anything.  I can't stay

4     really more than eight days.  Then I just can't.

5          THE COURT:  Okay, that's fine.  You will have to

6     serve eventually.

7          A PROSPECTIVE JUROR:  Yeah, I know.  I was on a

8     four-day trial seven years ago.

9          THE COURT:  Any objection?

10         MR. HERLICH:  No.

11         MS. PARK:  No.

12         THE COURT:  You're excused.

13         THE CLERK:  Follow the instructions of the court

14     officer.

15         (Whereupon, the prospective juror exited the

16     courtroom.)

17         THE CLERK:  Gerard Gannon, last name G-A-N-N-O-N.

18     First name Gerard, G-E-R-A-R-D.

19         THE COURT:  Yes, sir, how can I help you?

20         A PROSPECTIVE JUROR:  Yes, sir.  I have had a

21     sweeper dealership, selling sweepers in the area for

22     thirty-nine years.  It went out of business.  The franchise

23     was canceled on me by the sweeper people.

24         THE COURT:  Okay.

25         A PROSPECTIVE JUROR:  Now I was out of work for

Joanne Fleming

A221

1    six months and now, just a week and a half ago, I picked up

2    work working for another sweeper dealer.

3                THE COURT:  Any objection?

4                MR. HERLICH:  No.

5                MS. PARK:  No.

6                THE COURT:  You're excused.

7                A PROSPECTIVE JUROR:  Thank you.

8                THE CLERK:  Follow the instructions of the

9    officer.

10               (Whereupon, the prospective juror exited the

11   courtroom.)

12               A PROSPECTIVE JUROR:  Good morning, your Honor.

13               THE COURT:  Good morning, sir.

14               THE CLERK:  Peter Carparelli, last name

15   C-A-R-P-A-R-E-L-L-I.  First name is Peter.

16               THE COURT:  Yes, sir?

17               A PROSPECTIVE JUROR:  Good morning, your Honor.

18               THE COURT:  Good morning.

19               A PROSPECTIVE JUROR:  Judge, two reasons.  One is,

20   I'm getting older, I was very liberal.  I'm finding it

21   difficult when I see a defendant of his age and a

22   fifteen-year old and it -- it's repugnant to me.  The mere

23   fact that he is associated with a fifteen-year old disturbs

24   me.  As I get older, I find I'm less tolerant.

25               Second issue, Judge, I am an attorney.  I have tax

1   certificate issues, and I represent the community up in

2   Westchester, this is our most busy season, September 15th

3   through October 15th filing.  And you said work is not the

4   only reason.  That really disturbs me.

5           THE COURT:  Okay, I can appreciate it disturbs

6   you.  Most people would say those allegations are repugnant.

7   You know as an attorney they're mere allegations.

8           A PROSPECTIVE JUROR:  I know that.  I've tried

9   cases with juries when I was younger.  I'm 67, and I find as

10  I get older, where there's smoke, there's fire.  That's

11  become my attitude.  I am less liberal than I used to be.

12          THE COURT:  So you don't think you could be fair

13  and impartial if you were selected?

14          A PROSPECTIVE JUROR:  You know, the problem is,

15  Judge, I see somebody that age, it's almost as if I feel the

16  proof is flipped.

17          THE COURT:  Okay.

18          A PROSPECTIVE JUROR:  What are you do with that

19  person?

20          THE COURT:  Any objections?

21          MR. HERLICH:  No.

22          MS. PARK:  No.

23          THE COURT:  You're excused, sir.

24          A PROSPECTIVE JUROR:  Thank you, Judge.

25          THE CLERK:  Follow the instructions of the court

Joanne Fleming

A223

Voir Dire - The Court                    216

1   officer.

2           (Whereupon, the prospective juror exited the

3   courtroom.)

4           THE CLERK:  Last name Hickey, H-I-C-K-E-Y, Robert.

5           THE COURT:  Yes, Mr. Hickey?

6           A PROSPECTIVE JUROR:  I'm going to be out of the

7   country to teach a class a week from Thursday, which is the

8   eighth.

9           THE COURT:  Any objections?

10          MR. HERLICH:  No.

11          MS. PARK:  No.

12          THE COURT:  You're excused.

13          THE CLERK:  Follow the instructions of the

14  officer.

15          (Whereupon, the prospective juror exited the

16  courtroom.)

17          THE CLERK:  Larson, last name is L-A-R-S-O-N,

18  David.

19          A PROSPECTIVE JUROR:  Correct.

20          THE COURT:  Yes, Mr. Larson?

21          A PROSPECTIVE JUROR:  Due to the nature of my

22  work, I can't stay for two weeks.  I travel quite a bit.  I

23  have a flight from Connecticut to Atlanta, Georgia.  The

24  flight arrangements are made, tickets purchased.

25          THE COURT:  Any objections?

Joanne Fleming

A224

Voir Dire - The Court

1           MR. HERLICH:  No.

2           MS. PARK:  No.

3           THE COURT:  You're excused.

4           THE CLERK:  Follow the instructions of the

5     officer.

6           (Whereupon, the prospective juror exited the

7     courtroom.)

8           THE CLERK:  Blake Pfeil, last name P-F-E-I-L,

9     first name is Blake.

10           THE COURT:  Yes, sir, how could I help you?

11           A PROSPECTIVE JUROR:  I was molested when I was

12     thirteen.  I don't think that I should probably serve

13     because of that.

14           THE COURT:  You don't think you can be fair and

15     impartial?

16           A PROSPECTIVE JUROR:  I don't think so.

17           THE COURT:  Any objection?

18           MS. PARK:  No.

19           MR. HERLICH:  No.

20           THE COURT:  You're excused.

21           THE CLERK:  Follow the instructions of the court

22     officer.

23           (Whereupon, the prospective juror exited the

24     courtroom.)

25           THE CLERK:  Nancy Shayne, last name, S-H-A-Y-N-E,

Joanne Fleming

A225

Voir Dire - The Court

```
 1   Nancy.
 2              THE COURT:  Yes, Ms. Shayne, how can I help you?
 3              A PROSPECTIVE JUROR:  This is, like, impossible
 4   for myself.  My father was a pedophile, sexual abuser and a
 5   rapist, and this is probably the only issue in my life I
 6   don't think I have enough --
 7              THE COURT:  I understand.
 8              Any objections?
 9              MR. HERLICH:  No.
10              MS. PARK:  No.
11              THE COURT:  You're excused.
12              A PROSPECTIVE JUROR:  Go down -- what do I do now?
13              THE COURT:  Go down to the fifteenth floor jury
14   room.
15              (Whereupon, the prospective juror exited the
16   courtroom.)
17              THE CLERK:  Last name Garcia, G-A-R-C-I-A, slash
18   D-E-J-E-S-U-S, Raquel, R-A-Q-U-E-L.
19              THE COURT:  Hi, how can I help you?
20              A PROSPECTIVE JUROR:  I need somebody translate
21   me.  I don't speak.
22              THE COURT:  You don't speak English?
23              A PROSPECTIVE JUROR:  No.
24              THE COURT:  Any objection?
25              MR. HERLICH:  No.
```

Joanne Fleming

1          MS. PARK:  No.

2          THE COURT:  You're excused, ma'am.

3          THE CLERK:  Step out, follow the instructions of

4    the officer.

5               (Whereupon, the prospective juror exited the

6    courtroom.)

7          THE CLERK:  Last name is

8    F-L-E-I-S-C-H-H-A-C-K-E-R, Jean, J-E-A-N.

9          THE COURT:  Yes, ma'am, how could I help you?

10         A PROSPECTIVE JUROR:  I'm leaving the country

11   October 6th for business.  I can't do two weeks.

12         THE COURT:  Any objection?

13         MR. HERLICH:  No.

14         MS. PARK:  No.

15         THE COURT:  You're excused.

16         THE CLERK:  Follow the instructions of the court

17   officer.

18              (Whereupon, the prospective juror exited the

19   courtroom.)

20         THE CLERK:  Last name A-D-A-N.  First name Daniel.

21         THE COURT:  Yes, sir, how can I help you?

22         A PROSPECTIVE JUROR:  When I was in college, my

23   roommate was accused of rape, I believe wrongly.  He was

24   ultimately expelled.  My personal belief, based on that

25   experience, I think the first-hand experience, that it's all

1     about hearsay.  So I just find that these cases are

2     ultimately hard to try.  That is my own personal belief.

3              THE COURT:  Well, they are difficult to try, but

4     if you were to be selected as a juror, could you be fair and

5     impartial?

6              A PROSPECTIVE JUROR:  I mean, I personally don't

7     think so.  I think that everything is based on hearsay.

8              THE COURT:  What do you know about this case?

9              A PROSPECTIVE JUROR:  I don't know anything so

10    far.

11             THE COURT:  Yeah.

12             A PROSPECTIVE JUROR:  Especially my own personal

13    beliefs it's one person's word against the other.

14             THE COURT:  Any objections?

15             MR. HERLICH:  No.

16             MS. PARK:  No.

17             THE COURT:  You're excused.

18             THE CLERK:  Follow the instructions of the

19    officer, please.

20             (Whereupon, the prospective juror exited the

21    courtroom.)

22             THE CLERK:  Last name L-I-U, first name

23    S-H-I-T-A-O.

24             THE COURT:  Yes, sir, how can I help you?

25             A PROSPECTIVE JUROR:  English.

Joanne Fleming

Voir Dire - The Court

```
1              THE COURT:  You don't speak English?

2              A PROSPECTIVE JUROR:  Yes.

3              THE COURT:  Any objection?

4              MR. HERLICH:  No.

5              MS. PARK:  No.

6              THE COURT:  You're excused.

7              THE CLERK:  Follow the instructions of the

8    officer.

9                   (Whereupon, the prospective juror exited the

10   courtroom.)

11             THE CLERK:  Last name M-A.  First name is

12   K-W-O-N-G, C-H-U-N-G.

13             A PROSPECTIVE JUROR:  Yeah.

14             THE COURT:  Yes, sir?

15             A PROSPECTIVE JUROR:  Yeah.  I can't understand

16   what you were saying.

17             THE COURT:  Okay.

18             He doesn't speak English.  Any objections?

19             MR. HERLICH:  No.

20             MS. PARK:  No.

21             A PROSPECTIVE JUROR:  Little bit.

22             THE COURT:  You're excused.

23             THE CLERK:  Sir, follow the instructions of the

24   officer.

25                  (Whereupon, the prospective juror exited the
```

Joanne Fleming

```
 1              courtroom.)
 2                        THE CLERK:  G-U-I-C-H-A-R-D-O, first name Y-A-E-L.
 3                        THE COURT:  Yes, sir, how could I help you?
 4                        A PROSPECTIVE JUROR:  I had a good friend who was
 5              raped and the perpetrator was never caught.  I don't think
 6              I'm going to be impartial.
 7                        THE COURT:  Any objections?
 8                        MR. HERLICH:  No.
 9                        MS. PARK:  No.
10                        THE COURT:  You're excused.
11                        THE CLERK:  Okay, ma'am, follow the instructions
12              of the officer.
13                        A PROSPECTIVE JUROR:  Thank you.
14                        (Whereupon, the prospective juror exited the
15              courtroom.)
16                        A PROSPECTIVE JUROR:  Good morning.
17                        THE CLERK:  H-O-R-N-E-F-F, first names Francis.
18                        THE COURT:  Yes, sir?
19                        A PROSPECTIVE JUROR:  It's up to you.  I'm on
20              Zoloft and Klonopin, I have social anxiety, but I also, as a
21              result of that, I pee a lot.  So if you can give me breaks
22              every two hours to pee and stuff.
23                        THE COURT:  We can do that.
24                        A PROSPECTIVE JUROR:  And you don't mind me taking
25              the medication?
```

Joanne Fleming

A230

Voir Dire - The Court

```
 1              THE COURT:  Would the medications affect your
 2    ability to understand what's happening here?
 3              A PROSPECTIVE JUROR:  I don't think so.
 4              THE COURT:  Okay.
 5              A PROSPECTIVE JUROR:  They haven't yet.
 6              THE COURT:  Okay, good.
 7              You can be fair and impartial in this case?
 8              A PROSPECTIVE JUROR:  I think so.
 9              THE COURT:  Okay, great.  You can go back to your
10    seat.
11              A PROSPECTIVE JUROR:  Great, thank you.
12              THE CLERK:  Have a seat.
13              (Prospective juror complies.)
14              THE CLERK:  Ma'am, step forward, please.
15              Last name H-A-L-P-E-R-I-N, first name R-O-R-Y.
16              THE COURT:  Hi.
17              A PROSPECTIVE JUROR:  Hi.
18              I am worried about the time of the case.  I have a
19    vacation Tuesday to Wednesday next Wednesday.
20              THE COURT:  What is the date?
21              A PROSPECTIVE JUROR:  The date is the sixth.
22              THE COURT:  Any objections?
23              MR. HERLICH:  No.
24              MS. PARK:  No.
25              THE COURT:  You're excused.
```

Joanne Fleming

1          A PROSPECTIVE JUROR:  Thank you.

2          THE CLERK:  Follow the instructions of the court

3     officer.

4          (Whereupon, the prospective juror exited the

5     courtroom.)

6          THE CLERK:  Last name G-O-R-E-L-I-C-K, first name

7     E-L-A-N-A.

8          THE COURT:  Hi, how can I help you?

9          A PROSPECTIVE JUROR:  I have personal bias against

10    a case about sexual assault.

11         THE COURT:  Okay.

12         If you would like to be excused, I need to know a

13    little bit more about it.

14         A PROSPECTIVE JUROR:  I personally have

15    experienced some things.

16         THE COURT:  Any objections?

17         MR. HERLICH:  No.

18         MS. PARK:  No.

19         THE COURT:  You're excused.

20         A PROSPECTIVE JUROR:  Okay.

21         THE CLERK:  Follow the instructions of the court

22    officer.

23         (Whereupon the prospective juror exited the

24    courtroom.)

25         THE CLERK:  Last name J-A-N-C-E, first name

1    Z-A-M-I-R-A.

2                THE COURT:  Hi, how can I help you?

3                A PROSPECTIVE JUROR:  I have no very good English.

4                THE COURT:  What is your language?

5                A PROSPECTIVE JUROR:  Albanian.

6                THE COURT:  Any objections?

7                MS. PARK:  No.

8                MR. HERLICH:  No.

9                THE COURT:  You're excused.

10               A PROSPECTIVE JUROR:  Thank you.

11               THE CLERK:  Okay, follow the instructions of the

12   court officer.

13               (Whereupon, the prospective juror exited the

14   courtroom.)

15               THE CLERK:  Last name M-I-L-N-E-R, first name

16   Stephanie.

17               THE COURT:  Hi, Ms. Milner, how can I help you?

18               A PROSPECTIVE JUROR:  I know you said it will last

19   two weeks.  I have an itinerary.  I'm away from the

20   fifteenth to the 22nd of October.

21               THE COURT:  That's not a problem.  You can go back

22   to your seat.

23               (Prospective juror complies.)

24               THE CLERK:  Sir, step forward.

25               Last name M-A-I-N-E, first name Aaron, A-A-R-O-N.

```
 1              THE COURT:  Yes, sir, how can I help you?

 2              A PROSPECTIVE JUROR:  I'm just having these panic

 3    attacks all morning.  I feel like I shouldn't even --

 4              THE COURT:  Have you had panic attacks before?

 5              A PROSPECTIVE JUROR:  Last year and, like, the

 6    past month.

 7              THE COURT:  Are you being treated for this?

 8              A PROSPECTIVE JUROR:  Not yet.

 9         But it's just, like, this whole morning I just

10    kind of been fighting off totally.

11              THE COURT:  Any follow-up questions?

12              MR. HERLICH:  No.

13              MS. PARK:  (Indicating.)

14              THE COURT:  You're excused.

15              A PROSPECTIVE JUROR:  Is there a way to, like, get

16    a medical leave, like?

17              THE COURT:  You have to go down to the fifteenth

18    floor.

19              THE CLERK:  Sir, you're dismissed.  Follow the

20    instructions of the officer.

21         (Whereupon, the prospective juror exited the

22    courtroom.)

23              THE CLERK:  Last name is L-I-T-V-I-K, first name

24    V-A-D-I-M.

25              THE COURT:  Yes, sir?
```

Joanne Fleming

A234

```
1              A PROSPECTIVE JUROR:  So, I'm starting a new job
2    on Monday.
3              THE COURT:  This coming Monday?
4              A PROSPECTIVE JUROR:  This coming Monday, and I
5    don't want to cause an issue.
6              THE COURT:  Any objections?
7              MR. HERLICH:  No.
8              MS. PARK:  No.
9              THE COURT:  You're excused.
10             THE CLERK:  Sir, you're dismissed.  Follow the
11   instructions of the officer.
12             (Whereupon, the prospective juror exited the
13   courtroom.)
14             THE CLERK:  Last name H-E-U-M-A-N, first name
15   Susan.
16             THE COURT:  Yes, ma'am, how can I help you?
17             A PROSPECTIVE JUROR:  I actually am a rape
18   survivor.  I don't want to do this.
19             THE COURT:  Okay.
20             A PROSPECTIVE JUROR:  I don't want to relive it.
21             THE COURT:  Sure.
22             Any objections?
23             MS. PARK:  No.
24             MR. HERLICH:  No.
25             THE COURT:  You're excused.
```

```
 1                THE CLERK:  Ma'am, you're dismissed.  Take this
 2    and follow the instructions of the officer.
 3                (Whereupon, the prospective juror exited the
 4    courtroom.)
 5                THE CLERK:  Last name Jackson, J-A-C-K-S-O-N.
 6    Ellen.
 7                THE COURT:  Hi, Ms. Jackson, how can I help you?
 8                A PROSPECTIVE JUROR:  I don't think I will be
 9    impartial.  I have a fifteen-year old granddaughter and it
10    horrifies me.
11                THE COURT:  Any objections?
12                MR. HERLICH:  No.
13                MS. PARK:  No.
14                THE COURT:  You're excused.
15                THE CLERK:  You're dismissed, ma'am.  Follow the
16    instructions of the officer, please.
17                (Whereupon, the prospective juror exited the
18    courtroom.)
19                THE CLERK:  Last name G-O-R-D-O-N, first name
20    Florence.
21                THE COURT:  Yes, Ms. Gordon, how can I help you?
22                A PROSPECTIVE JUROR:  I feel very sorry for the
23    young girl.  I don't think I can be fair.
24                THE COURT:  Any objections?
25                MR. HERLICH:  No.
```

1          MS. PARK:  No.

2          THE COURT:  You're excused.

3          THE CLERK:  You're dismissed, ma'am.  Follow the

4     instructions of the officer, please.

5          (Whereupon, the prospective juror exited the

6     courtroom.)

7          THE COURT:  Lost on the record is that that juror

8     was crying.

9          THE CLERK:  Last name Heubeck, H-E-U-B-E-C-K,

10    first name Tiffany.

11         THE COURT:  Yes, ma'am, how can I help you?

12         A PROSPECTIVE JUROR:  Yeah, next Thursday -- I

13    work for a marketing and branding firm.  Next Thursday our

14    entire firm dedicates the day to nonprofits and I'm

15    facilitating a grant for children's charity.

16         THE COURT:  Any objections?

17         MR. HERLICH:  No.

18         MS. PARK:  No.

19         THE COURT:  You're excused.

20         A PROSPECTIVE JUROR:  Thank you.

21         THE CLERK:  You're dismissed.  Just follow the

22    instructions of the officers.

23         (Whereupon, the prospective juror exited the

24    courtroom.)

25         THE CLERK:  V-O-N-S-T-A-D-E, the third, first name

Joanne Fleming

1    Francis.

2              THE COURT:  Yes, sir, how can I help you?

3              A PROSPECTIVE JUROR:  I've got a small company.

4    We are on the verge of financial collapse.  I have

5    twenty-five years.  For me to be out two weeks is brutal.

6              I've deferred five times.  It's not I want to

7    defer this time, I would love to sit on the trial.  I just

8    cannot.  It is a very tough time.

9              THE COURT:  You will have to serve eventually.

10             Any objections?

11             MR. HERLICH:  No.

12             MS. PARK:  No, no.

13             THE COURT:  You're excused.

14             A PROSPECTIVE JUROR:  Thank you.

15             THE CLERK:  Follow the instructions of the

16   officer.  You're dismissed.

17             (Whereupon, the prospective juror exited the

18   courtroom.)

19             THE CLERK:  K-I-M-B-A-L-L, first name Tyler.

20             THE COURT:  Yes, sir?

21             A PROSPECTIVE JUROR:  I actually have wedding

22   party plans.  I am in a wedding party.  I'm here to ask --

23             THE COURT:  Are you away just for the weekend?

24             A PROSPECTIVE JUROR:  It's end of next week

25   through the weekend, that's it.  So Friday, Saturday,

```
 1    Sunday.  I don't know, I was told to ask.
 2                THE COURT:  What time do you leave on Friday?
 3                A PROSPECTIVE JUROR:  11:00 a.m.
 4                THE COURT:  Any objections?
 5                MR. HERLICH:  No.
 6                MS. PARK:  No.
 7                THE COURT:  You're excused.
 8                THE CLERK:  You're dismissed.  Follow the
 9    instructions of the officer, please.
10                (Whereupon, the prospective juror exited the
11    courtroom.)
12                THE CLERK:  Last name Mukani, M-U-K-A-N-I, first
13    name V-I-N-O-D.
14                THE COURT:  Yes, sir, how can I help you?
15                A PROSPECTIVE JUROR:  Hi, your Honor.
16          I'm struggling to not get angry.  Just, I know
17    from what my friend has gone through, something like that.
18    I feel a little bit biased --
19                THE COURT:  Okay.
20                A PROSPECTIVE JUROR:  -- towards --
21                THE COURT:  Any follow-up questions?
22                MR. HERLICH:  No.
23                MS. PARK:  No.
24                THE COURT:  You're excused.
25                THE CLERK:  Sir, you're dismissed.  Follow the
```

Joanne Fleming

1      instructions of the officer.

2                    (Whereupon, the prospective juror exited the

3      courtroom.)

4                    THE CLERK:  Last name is K-A-T-E-L-L-I-E-R-C --

5                    A PROSPECTIVE JUROR:  C, right.

6                    THE CLERK:  -- C-A-T-T.  First name is Andrea.

7                    THE COURT:  Yes, ma'am, how could I help you?

8                    A PROSPECTIVE JUROR:  I'm traveling for work next

9      week.

10                   THE COURT:  What date?

11                   A PROSPECTIVE JUROR:  I leave on Monday, all week.

12                   THE COURT:  What date is it?

13                   A PROSPECTIVE JUROR:  The fifth, October 5th.

14                   THE COURT:  You're excused.

15                   A PROSPECTIVE JUROR:  Thanks.

16                   THE CLERK:  You're dismissed.  Follow the

17     instructions of the officer, please.

18                   (Whereupon, the prospective juror exited the

19     courtroom.)

20                   THE CLERK:  Last name Hicks, H-I-C-K-S, first name

21     Tiffany.

22                   THE COURT:  Yes, ma'am, how can I help you?

23                   A PROSPECTIVE JUROR:  I cannot be unbiased on this

24     case since myself I am a survivor of sexual assault.  I

25     cannot be impartial.

Voir Dire - The Court

1            THE COURT:  Any objections?

2            MR. HERLICH:  No.

3            MS. PARK:  No.

4            THE COURT:  You're excused.

5            A PROSPECTIVE JUROR:  Thank you.

6            THE CLERK:  You're dismissed.  Follow the

7    instructions of the court officer.

8            (Whereupon, the prospective juror exited the

9    courtroom.)

10           THE CLERK:  Last name Kane, K-A-N-E, first name

11   Charles.

12           THE COURT:  Yes, sir?

13           A PROSPECTIVE JUROR:  Good morning, your Honor.

14   My sister was sexually abused as a child and I

15   don't feel that I will be able to be fair in this case.

16           THE COURT:  Any objections?

17           MS. PARK:  No.

18           MR. HERLICH:  No.

19           THE COURT:  You're excused.

20           THE CLERK:  Mr. Kane, you're dismissed.  Just

21   follow the instructions of the court officer, please.

22           (Whereupon, the prospective juror exited the

23   courtroom.)

24           THE CLERK:  Last name is Lerner, L-E-R-N-E-R,

25   first name Bradley.

Joanne Fleming

A241

1          THE COURT:  Yes, sir, how can I help you?

2          A PROSPECTIVE JUROR:  My issue is timing.  Being

3   self-employed, two weeks is a pretty long time.

4          THE COURT:  What do you do for a living?

5          A PROSPECTIVE JUROR:  I am a dog trainer.  Next

6   week, on the Thursday, the 8th, I have a vacation planned

7   with my family.

8          THE COURT:  Any objections?

9          MS. PARK:  No.

10         MR. HERLICH:  No.

11         THE CLERK:  Is he excused, Judge?

12         THE COURT:  Yes.

13         THE CLERK:  Sir, you're dismissed.  Follow the

14  officers, they will give you instructions.

15         (Whereupon, the prospective juror exited the

16  courtroom.)

17         THE CLERK:  Last name is Lyons, L-Y-O-N-S, first

18  name Michael.

19         THE COURT:  Yes, sir, Mr. Lyons, how can I help

20  you?

21         A PROSPECTIVE JUROR:  I am working on a project

22  with another company.  So we have to get it done by -- in

23  four weeks.  If this is two weeks, I will not have time to

24  finish it.

25         THE COURT:  Any objections?

Joanne Fleming

1          MR. HERLICH:  No.

2          MS. PARK:  No.

3          THE COURT:  You're excused.

4          THE CLERK:  Sir, you're dismissed.  Just take

5     this, follow the instructions of the officer, please.

6          A PROSPECTIVE JUROR:  Thank you.

7          (Whereupon, the prospective juror exited the

8     courtroom.)

9          THE CLERK:  Last name A-L-H-A-Y-A-N-Y, first name

10    A-B-D-O.

11         THE COURT:  Yes, sir, how can I help you?

12         A PROSPECTIVE JUROR:  I don't understand too much

13    English.

14         THE COURT:  Any objections?

15         MS. PARK:  No.

16         MR. HERLICH:  No.

17         THE COURT:  You're excused.

18         THE CLERK:  You're dismissed, sir.  Follow the

19    instructions of the court officer.

20         (Whereupon, the prospective juror exited the

21    courtroom.)

22         THE CLERK:  Last name H-A-L-P-E-R-N, first name

23    Audrey.

24         THE COURT:  Yes, Ms. Halpern, how could I help

25    you?

Joanne Fleming

A243

1              A PROSPECTIVE JUROR:  I was the victim of a sexual

2      assault.

3              THE COURT:  Any objections?

4              MR. HERLICH:  No.

5              MS. PARK:  No.

6              THE COURT:  You're excused, ma'am.

7              A PROSPECTIVE JUROR:  Thank you.

8              THE CLERK:  Ma'am, you're dismissed.  Follow the

9      instructions of the officer, please.

10             (Whereupon, the prospective juror exited the

11     courtroom.)

12             THE CLERK:  Last name M-E-R-Y-M-A-N, first name

13     Elizabeth.

14             THE COURT:  Yes, ma'am, how can I help you?

15             A PROSPECTIVE JUROR:  I feel that I cannot be a

16     fair juror because of the nature of the crime and because of

17     some personal experiences in my family.

18             THE COURT:  Any objections?

19             MS. PARK:  No.

20             MR. HERLICH:  No.

21             THE COURT:  You're excused.

22             THE CLERK:  You're dismissed.  Just follow the

23     instructions of the court officers.

24             (Whereupon, the prospective juror exited the

25     courtroom.)

 1              THE CLERK:  Last name is K-E-I-T-A, first name

 2    O-U-S-M-A-N-E.

 3              THE COURT:  Yes, sir, how can I help you?

 4              A PROSPECTIVE JUROR:  Yes.  I'm not sure, I have

 5    another court date coming October 5th.

 6              THE COURT:  You have a what date?

 7              A PROSPECTIVE JUROR:  Court date.

 8              THE COURT:  Is that personal?

 9              A PROSPECTIVE JUROR:  Yeah.

10              THE COURT:  I see.

11              Any objections?

12              MR. HERLICH:  No.

13              MS. PARK:  (Indicating.)

14              THE COURT:  You're excused.

15              THE CLERK:  Sir, you're dismissed.  Just follow

16    the instructions of the officer.

17              (Whereupon, the prospective juror exited the

18    courtroom.)

19              THE CLERK:  Last name A-L-T-E-R-B-A-U-M, first

20    name Daniel.

21              THE COURT:  Hi, how can I help you?

22              A PROSPECTIVE JUROR:  I apologize.  Thursday I'm

23    leaving, I have a wedding in Charleston, North Carolina.  I

24    will be back Monday.

25              THE COURT:  This coming Thursday?

1          A PROSPECTIVE JUROR:  Yes.

2          THE COURT:  Any objections?

3          MS. PARK:  No.

4          MR. HERLICH:  No.

5          THE COURT:  You're excused.

6          THE CLERK:  You're dismissed, sir.  Follow the

7     instructions of the officer.

8          (Whereupon, the prospective jury exited the

9     courtroom.)

10          THE CLERK:  Last name is L-E-I-G-H, first name

11     T-U-V-I-A.

12          THE COURT:  Yes, sir?

13          A PROSPECTIVE JUROR:  Good morning, sir.

14     Based on personal childhood experience, I don't

15     think I can stomach this.

16          THE COURT:  Any objections?

17          MR. HERLICH:  No objection.

18          MS. PARK:  No.

19          THE COURT:  You're excused.

20          A PROSPECTIVE JUROR:  Thank you.

21          THE CLERK:  Sir, you're dismissed.  Just follow

22     the instructions of the officer.

23          (Whereupon, the prospective juror exited the

24     courtroom.)

25          (Whereupon, the following proceedings took place

1    on the record and in the presence of the prospective jury

2    panel:)

3            THE COURT:  Jurors, at this time the clerk of the

4    court is going to call, at random, excuse me, eighteen

5    names.  If your name is called, please come up with your

6    belongings and the court officer will show you where to sit

7    in the jury box.

8            You will also be handed a questionnaire.  Please

9    take a look at the questions so you can answer the questions

10   when we get to you.  You can just answer the questions in

11   narrative form.  There is no need for you to read the

12   questions yourselves.

13           At this time, please listen for your name.

14           THE CLERK:  Seat number one, Stephanie Oster,

15   O-S-T-E-R.

16           Seat number two, Eric Anderson, A-N-D-E-R-S-O-N.

17           Seat number three, Lydia Zamm, Z-A-M-M, first name

18   L-Y-D-I-A.

19           Seat number four, Caleb Hill, H-I-L-L, C-A-L-E-B,

20   first name.

21           Seat number five, Colin Hunter, H-U-N-T-E-R, first

22   name C-O-L-I-N.

23           Seat number six, Bose, B-O-S-E, first name

24   K-U-M-A-L.

25           THE COURT:  No response.

1          A PROSPECTIVE JUROR:  Can I take that seat?

2          THE COURT:  No, sir, you have to wait for your

3     name to be called.

4          A PROSPECTIVE JUROR:  Seat number six, Francis

5     Horneff, H-O-R-N-E-F-F, first name F-R-A-N-C-I-S.

6          Seat number seven, Joseph Mazitto, last name

7     M-A-Z-I-T-T-O.

8          Seat number eight, Clifford Cohen, C-O-H-E-N.

9          Seat number nine, Jenny Joseph, J-O-S-E-P-H,

10     J-E-N-N-Y, first name.

11          Seat number ten, Marcus Hargett, H-A-R-G-E-T-T,

12     first name M-A-R-C-U-S.

13          Seat number eleven, Malu Dee, D-E-E, first name

14     M-A-L-U.

15          Seat number twelve, Brittany Frenkel,

16     F-R-E-N-K-E-L, first name B-R-I-T-T-A-N-Y.

17          Seat number thirteen, Evan Grove, G-R-O-V-E, first

18     name E-V-A-N.

19          Seat number fourteen, Rosa Garcia, G-A-R-C-I-A,

20     first name R-O-S-A.

21          Seat number fifteen, Joshua Kigel, K-I-G-E-L.

22          Seat number sixteen, Kevin McCabe, M-C-C-A-B-E.

23          Seat number seventeen, Dane Nickerson,

24     N-I-C-K-E-R-S-O-N, first name D-A-N-E.

25          Seat number eighteen, Terrance Downing,

1      D-O-W-N-I-N-G, first name T-E-R-R-A-N-C-E.

2                  THE COURT:  Good morning, Ms. Oster.  We will

3      start with you, ma'am.

4                  A PROSPECTIVE JUROR:  Okay.

5                  I've lived at my present address for sixteen

6      years.

7                  I live on the Lower East Side.

8                  I am a native New Yorker.

9                  I work as a professional fund raiser for a

10     non-profit organization.  I've been at this position for

11     eleven years.

12                 I have a bachelor's degree.

13                 I am married.

14                 We have five stepchildren.

15                 My husband is a teacher.

16                 His kids are two in college, one -- two teachers,

17     one in business.

18                 My hobbies are, I am a musician.

19                 And I've never served on a jury before.

20                 And none of my relatives have ever been victims of

21     any crime.

22                 THE COURT:  How about the questions on the other

23     side?

24                 A PROSPECTIVE JUROR:  Sorry, I didn't see those.

25                 Okay, no, nobody -- no relative of mine is in

1    either one of -- okay, no, that's not true.  My husband is

2    -- used to be a deputy sheriff in another state.

3              THE COURT:  Okay.

4              A PROSPECTIVE JUROR:  Nobody I know has been in

5    conflict with the law.

6              No moral or intellectual or religious beliefs

7    should conflict with any of the law.

8              No health problems.

9              No, I do not work at night.

10             My religion will not prevent me from sitting as a

11   juror during the week or during a weekday night.

12             And there's no reason why I can't serve during the

13   evening --

14             THE COURT:  Okay, thank you, Ms. Oster.

15             A PROSPECTIVE JUROR:  -- if necessary.

16             THE COURT:  Good afternoon, Mr. Anderson.

17             A PROSPECTIVE JUROR:  Hello.

18             THE COURT:  Hi.

19             A PROSPECTIVE JUROR:  Let's see, I live in the

20   Upper East.  It's on Eighty-Second Street.

21             THE COURT:  You don't need to give your address,

22   just the Upper East Side.

23             A PROSPECTIVE JUROR:  Yes.

24             THE COURT:  Okay.

25             A PROSPECTIVE JUROR:  I am not a native New

1    Yorker.  I originally come from Washington State.

2              I am an animator.  I've been an animator for ten

3    years.

4              I have a bachelor's degree.

5              I'm not married.  I was married.

6              And I don't have any children.

7              I live with another adult.  She is a

8    neurobiologist.

9              Interests, hobbies, video games, watch football,

10   go out, play guitar, sports.

11             Never served on jury duty or served in a jury

12   before.

13             So, under victim of a crime, is that one that's

14   been convicted?

15             THE COURT:  No, it doesn't have to be a

16   conviction.

17             A PROSPECTIVE JUROR:  I mean, it can just be --

18   like, I've been in a fight before.

19             THE COURT:  You were assaulted?  You were the

20   victim of a crime?

21             A PROSPECTIVE JUROR:  Yeah, yeah, so I was

22   assaulted.

23             THE COURT:  Okay.

24             A PROSPECTIVE JUROR:  I have a young cousin who --

25   an older man, care worker, exposed himself to her when she

Voir Dire - The Court

1   was taking care of him.

2              THE COURT:  Okay.

3              Would anything about either one of those

4   situations affect your ability to be fair and impartial in

5   this case?

6              A PROSPECTIVE JUROR:  I don't think so.

7              THE COURT:  Okay.

8              A PROSPECTIVE JUROR:  Not employment of law

9   enforcement agency or an attorney.

10             I guess I have had a conflict with the law of

11  sorts.

12             THE COURT:  Anything about that conflict that

13  would affect your ability to be fair and impartial?

14             A PROSPECTIVE JUROR:  No.

15             THE COURT:  Okay.

16             A PROSPECTIVE JUROR:  No to the moral,

17  intellectual or religious belief thing.

18             No health problems.

19             No to the work at night.

20             Not to the religious practices.

21             And no to number fifteen as well.

22             THE COURT:  Okay, thank you.

23             Good afternoon, Ms. Zamm.

24             A PROSPECTIVE JUROR:  Good afternoon.

25             I live in the East Village for twenty-five years.

Joanne Fleming

A252

Voir Dire - The Court

1        I'm from upstate New York originally.

2        And I am a copy editor and proofreader.

3        I went to -- I finished college.

4        I'm not married.

5        I don't have children.

6        I don't live with anybody.

7        And I do play music and read, watch films.

8        And I was on a criminal jury before.  I don't know

9   if it was a grand jury.  And I think it was just settled.

10       And, recently, my father was -- he was a victim of

11  virtual kidnapping, thinking that I was being kidnapped and

12  he was extorted money and -- but he didn't report that.

13       THE COURT:  Would anything about that situation

14  affect your ability to be fair here?

15       A PROSPECTIVE JUROR:  Not at all.

16       And never had a relative or close friend employed

17  by law enforcement, employed -- number nine, no.

18       And ten through fifteen, no.

19       THE COURT:  Thank you.

20       Good afternoon, Mr. Hill.

21       A PROSPECTIVE JUROR:  Good afternoon, your Honor.

22       I've lived at my current address a little over two

23  years.  Upper West Side.

24       I am not a native New Yorker.  I grew up in Ohio

25  and moved here a little over two years ago.

Joanne Fleming

A253

1          I am doing financial planning for a small tech

2     start-up.  I've been at that company nine months.

3          Bachelor's degree.

4          Not married.  Never been married.

5          No children.

6          I'm not living with anyone, only roommates.

7          Spare time, I race, bicycle.

8          I've never served on a jury before.

9          I was the victim of a theft.  My car was broken

10    into when I was sixteen and the stereo was stolen.  That was

11    the only -- that was the only crime.

12          No relatives in ARB or close friends.

13          I have had a small conflict with the law before.

14          THE COURT:  Would that affect your ability here to

15    be fair and impartial?

16          A PROSPECTIVE JUROR:  No.

17          THE COURT:  Okay.

18          A PROSPECTIVE JUROR:  I have no moral or religious

19    conflicts with the law here.

20          And eleven, no mental health problems or other

21    health problems that would conflict.

22          For thirteen, for work, I would mostly be working

23    nights and the weekends during the duration of jury service.

24          And no to number fourteen.

25          And no to number fifteen.


Joanne Fleming

A254

Voir Dire - The Court

1              THE COURT:  Okay, thank you.

2              Good afternoon, Mr. Hunter.

3              A PROSPECTIVE JUROR:  Hello.

4              I've lived at my address for about just over a

5    year.  I live in Chelsea.

6              I'm not a native New Yorker.  I'm from California.

7              For a living, I work in pharmaceutical

8    advertising.

9              I have a college degree.

10             I am not married.  I have never been married.

11             And I don't have children.

12             I live with my girlfriend.  She's also in

13   pharmaceutical advertising.

14             Spare time, just play music, play video games, not

15   much excitement.

16             I have not served on a jury before.

17             I don't believe me or any relatives have been the

18   victim of a crime.

19             No one, relative or close friends, ever been ARB

20   for the law enforcement or attorney.

21             For question ten, it -- I have had a conflict with

22   the law.

23             THE COURT:  Okay.

24             Would you put it aside and not allow it to affect

25   you?

```
 1                    A PROSPECTIVE JUROR:  Yes.

 2              And for the rest of them, no.

 3              THE COURT:  Thank you.

 4              Good afternoon, Mr. Horneff.

 5              A PROSPECTIVE JUROR:  Present address, I've been

 6    there for over twenty-seven years, midtown.

 7              Not a native New Yorker.  Grew up in South Jersey.

 8              I am a private client asset manager and been doing

 9    that for twenty years.

10              B.A. from college is my education.

11              I am married.

12              I do have children.

13              My wife is a casting director.  My daughter works

14    for an event planner.

15              In my spare time, I play guitar and golf.

16              I've never been on a jury either way.

17              I do have a relative who's been the victim of a

18    crime, my wife's aunt, stabbed to death by her son.

19              THE COURT:  Will you be able to set it aside and

20    not allow it to affect you here?

21              A PROSPECTIVE JUROR:  Yes.  It's kind of one of

22    those things that you just sort of --

23              THE COURT:  Okay.

24              A PROSPECTIVE JUROR:  They were old.  It was a

25    strange story.
```

1          Yeah, I don't think that will influence me.

2          Yeah, my brother was -- first started at the

3    Corrections Department in Rahway and then went on to be an

4    officer at Hasbrouck Heights in New Jersey.  He has an early

5    retirement.  Now he's running jewelry for the Philadelphia

6    jewelers.

7          My best friend from high school is a defense

8    attorney, notoriously known for representing most of the mob

9    in South Jersey.  Not that the mob exists or anything.  I

10   don't want you to get the wrong idea.

11         Yeah, conflict with the law, that -- my wife's

12   cousin who stabbed his mother to death, that conflict.

13         No moral issues, problems.

14         Religion doesn't affect me.

15         The health problems, we've discussed.

16   THE COURT:  Okay.

17   A PROSPECTIVE JUROR:  So we'll just leave that one

18   at that.

19         And my occupation requires me to work at all hours

20   day and night, but if I'm here, I'm here.

21         Do you practice -- no, no religion.

22         And other than my wife being pissed off, I don't

23   see any reason I couldn't be here at night.

24   THE COURT:  Okay, thank you.

25         Good afternoon.

Joanne Fleming

A257

1    A PROSPECTIVE JUROR:   Good afternoon.

2    I've lived in Battery Park for the past two years.

3    I've been running a company for about twenty-five

4    years, selling tickets for entertainment events, concerts,

5    sports, theatre.

6    I graduated college.

7    I'm married with a six-year old child.

8    Spare time, I bike, I play guitar.

9    Never served on a jury before.

10   Victim of a crime, no.

11   I have several friends in law enforcement.   One

12   actually just married somebody who's in the Secret Service

13   recently.

14   And no close friends -- conflict with the law

15   enforcement, no, no, but my company is part of a New York

16   State Attorney General investigation regarding buying and

17   selling tickets.

18   And regarding health, I do have -- I'm being

19   treated twice a week for a compressed nerve that's giving me

20   trouble getting around.

21   THE COURT:   Okay.

22   If you were selected as a juror, could you sit as

23   a juror on this case?

24   A PROSPECTIVE JUROR:   I didn't think about that.

25   If I'm not getting my physical therapy for two weeks, if

Joanne Fleming

A258

1    that's the case, I don't know how it would affect me.   I

2    have to ask my doctor.

3              THE COURT:   Okay.

4              Maybe when we take the break you can call your

5    doctor and ask.

6              A PROSPECTIVE JUROR:   Sure.

7              THE COURT:   Thank you.

8              Good afternoon.

9              A PROSPECTIVE JUROR:   Yes.

10             I've lived on the Upper East Side for the past

11   fourteen years.

12             I'm originally from Long Island.

13             I am a salesman for a management consulting firm.

14             I have a master's degree.

15             Never been married.

16             No children.

17             Read in my spare time.

18             I've served on a jury before in the Supreme Court.

19   It was a rape trial.   It went to -- after opening

20   deliberations, the defendant pled guilty.

21             THE COURT:   Okay.

22             A PROSPECTIVE JUROR:   It was about six years ago.

23             Never been a victim of a crime.

24             No one's in law enforcement.

25             I have had a conflict with the law.

1          THE COURT:  Anything about that that would affect

2   your ability to sit here as a juror?

3          A PROSPECTIVE JUROR:  No, I don't.

4          THE COURT:  No?

5          A PROSPECTIVE JUROR:  No.

6          No through fifteen.

7          THE COURT:  Thank you.

8          Good afternoon, Ms. Joseph.

9          A PROSPECTIVE JUROR:  Good afternoon.

10         I live on Upper East Side.  I've been there for

11  about four, five years.

12         I have a doctor of medicine, graduate degree.

13         Single.

14         No children.

15         I live with another adult.

16         Spare time, I like to travel.

17         Never been on a jury before.

18         Never had a relative as a victim of a crime.

19         And no relative or close friend employed by law

20  enforcement.

21         And no for ten to fifteen.

22         THE COURT:  Okay.

23         Let's continue with Mr. Hargett.

24         A PROSPECTIVE JUROR:  Hargett.

25         THE COURT:  Good afternoon.

1        A PROSPECTIVE JUROR:  Good afternoon.

2        Marcus Hargett.

3        So, I live in the East Village.  Been there for

4   two years.

5        I am not a native New Yorker, originally from

6   North Carolina and most recently I was in D.C. for about

7   seven years.

8        I've a graduate degree.

9        Married.

10        No children.

11        My wife works at an art gallery.

12        Spare time, I ride bikes.

13        Never been on a jury before.

14        No relative has been the victim of a crime.

15        I have a couple of close friends who are in law

16   enforcement.

17        And no to ten through fifteen.

18        THE COURT:  Thank you.

19        Good afternoon, Ms. Dee.

20        A PROSPECTIVE JUROR:  Hi.

21        I've lived in Harlem for the past five years.

22        I'm not a native New Yorker.  I grew up all over,

23   but mostly Maryland.

24        I work in retail planning currently for the last

25   six months, but before that I worked in a charter school.

1        I have a college degree.

2        Not married.  Never been married.

3        No children.

4        I live with a boyfriend who works for the

5   Department of Education.

6        In my spare time, I like to read and go running.

7        And I've never served on a jury.

8        None of my relatives or me have been the victim of

9   a crime.

10        Don't know anyone who works in law enforcement.

11        And then some of my uncles have been in jail, but

12   otherwise no conflicts with the law.

13        And then no for the rest of the questions.

14        THE COURT:  The situations with your uncles, would

15   that affect you in any way if you were selected as a juror?

16        A PROSPECTIVE JUROR:  No.

17        THE COURT:  Thank you.

18        Good afternoon, Ms. Frenkel.

19        A PROSPECTIVE JUROR:  Good afternoon.

20        I live in the Upper West Side.  I've been in that

21   apartment for about three years now.  In several other

22   locations in the city before that.

23        I am originally from Bergen County, New Jersey.

24        I work as a production manager for the NBA.

25        I graduated from college.

1          I am not married.  I've never been married.

2          I don't have children.

3          I am living with my fiancé and he works for

4    another sports league.

5          In my spare time, I like to run a lot, spend time

6    with family and friends.

7          I've never been on a jury before.

8          No relative has ever been victim of a crime.

9          I have been employed by an attorney in criminal

10   defense work.  When I was working for a smaller production

11   agency, we teamed up with Joe Tacopina who was also talent

12   representation as well for our company.  So we worked in his

13   office and sometimes I would do a few things when the law

14   firm side of the business needed help.

15         And no for answers ten through fifteen.

16         THE COURT:  Thank you.

17         Good afternoon Mr. Grove.

18         A PROSPECTIVE JUROR:  Hi, good afternoon.

19         I live in the Washington Heights area, Hudson

20   Heights.  I've been there for three years now.

21         I was born in Philadelphia originally.

22         I currently work for a company that imports hot

23   sauces and other products from the Caribbean.

24         I went to high school, college and law school,

25   passed the bar in New Jersey but don't currently practice.

1              I am married.

2              I have one child.  She's two years old.

3              My wife works for a non-profit organization.

4              I play guitar and do visual design in my spare

5      time.

6              I have never served on a jury.

7              I was the victim of sexual touching in high school

8      by a good friend but never pressed charges.

9              THE COURT:  Would that affect your ability to be

10     fair and impartial here?

11             A PROSPECTIVE JUROR:  I don't think so, which was

12     why I didn't come up earlier to say it.

13             THE COURT:  Okay, thank you.

14             A PROSPECTIVE JUROR:  I have a friend from law

15     school who works for the Brooklyn D.A.'s Office.

16             As for ten through fifteen, I had a minor conflict

17     with the law but it wouldn't impact me.

18             I personally don't agree with the phrase that's

19     behind you, but I have no issue with people that do.

20             My occupation require me to work at night.

21             No other religious concerns.

22             And no to the last one.

23             THE COURT:  Thank you.

24             Good afternoon, Ms. Garcia.

25             A PROSPECTIVE JUROR:  Good afternoon.

Joanne Fleming

A264

1          I live at my current address for over fifteen

2    years.

3          I am not a native New Yorker.  I was born in the

4    Dominican Republic.

5          I am an ad man and I work from home.

6          I graduated high school and I have some college

7    education.

8          I'm not married.

9          I do have two children.

10          I currently live with just my kids, though, in the

11    apartment.

12          And what I do for spare time, I just spend time

13    with my kids.

14          I've never served in a jury before.

15          I don't have any relatives that have been victim

16    of crime.

17          I do have friends and relatives that are police

18    officers.

19          Number ten, no.

20          Eleven, no.

21          For number twelve, I suffer from chronic migraines

22    so I do take medications.  I tend to get sleepy throughout

23    the day.

24          THE COURT:  Does your condition affect your

25    ability to comprehend and appreciate what's going on in the

Joanne Fleming

A265

1     apartment?

2                    A PROSPECTIVE JUROR:  Depending on the focus.  If

3     I take certain dose, it might make me really sleepy.

4                    THE COURT:  So you take the medication only --

5                    A PROSPECTIVE JUROR:  No, I take them every night.

6                    THE COURT:  You take it every night?

7                    A PROSPECTIVE JUROR:  Yeah.

8                    THE COURT:  The next day you might be sleepy?

9                    A PROSPECTIVE JUROR:  Yeah, from time to time.

10                   THE COURT:  Okay.

11                   Are there any objections?

12                   MS. PARK:  (Indicating.)

13                   MR. HERLICH:  No.

14                   THE COURT:  We're going to have to excuse you,

15    ma'am.  You can step down.

16                   A COURT OFFICER:  Just wait for me right outside,

17    please.

18                   A PROSPECTIVE JUROR:  Okay.

19                   (Whereupon, the prospective juror exited the

20    courtroom.)

21                   THE CLERK:  What number was that, Judge?

22                   THE COURT:  Fourteen.

23                   THE CLERK:  Seat number fourteen, Karen

24    B-O-W-M-A-N.  First name K-A-R-E-N.

25                   THE COURT:  Good afternoon, ma'am.

Joanne Fleming

A266

Voir Dire - The Court

1            A PROSPECTIVE JUROR:  Good afternoon.

2            THE COURT:  You can get started as soon as you're

3      ready.

4            A PROSPECTIVE JUROR:  Okay.

5            Okay, I've lived at my present address for the

6      past, well, twelve years.  I was born and raised in Harlem

7      and I left there when I got married and moved to the Bronx.

8      After my divorce, I went back to live with him because he's

9      getting older.

10           I am a secretary for the past twelve years at

11     Maimonides Medical Center.

12           I did graduate from high school.  I didn't attend

13     college.

14           I am now divorced, one child and two grandchildren

15     and I'm only living at the home at the time -- at this time.

16           I like to travel.  Travel, period.

17           I have served on a jury before, but I don't

18     remember -- I think it was a criminal case, but I don't

19     know -- you know, that's all I remember.

20           And no, I've been the victim of a crime.  I've

21     been robbed from my apartment a couple of times.

22           THE COURT:  Okay.

23           Would that affect you in any way?

24           A PROSPECTIVE JUROR:  No.

25           Ten, no.


Joanne Fleming

A267

1          Eleven, no.

2          Twelve, no.

3          I do work at night.  My hours are from twelve to

4   eight but at the hospital.

5          Fourteen, no.

6          And fifteen, no.

7          THE COURT:  Thank you.

8          Good afternoon, sir.

9          A PROSPECTIVE JUROR:  Hi.

10          I've been at my present address for four years.

11          I've lived on the Upper East Side for the last

12   fifteen years.

13          I am a native New Yorker.  I grew up on Staten

14   Island.

15          I'm an administrator at a private school, but I've

16   been in education.  I've been teaching for seventeen years.

17          I have a master's degree.

18          I am married.

19          I have two small children, three-year old daughter

20   and one-year old son.

21          My wife is a physician.

22          I don't have a whole lot of spare time with small

23   children, so I don't do much else.

24          I've been on a grand jury before in 1998, but I

25   moved suddenly halfway through that, so I was excused

1    because I moved from Staten Island to Brooklyn.

2              I've never been the victim of a crime.

3              One of my good friends from childhood is a

4    sergeant in the NYPD, and I have two other friends, one is a

5    retired prosecutor and one is a retired, or moved down onto

6    a different career, public defender, and my brother-in-law

7    is a retired sherif, a deputy in Indiana.

8              I have never had a conflict with the law.

9              I have no moral, intellectual or religious

10   objections or problems.

11             No health problems.

12             I do a lot of work at nights and on weekends.  So

13   I would anticipate having to do some work at night.

14             Then no fourteen and fifteen.

15             THE COURT:  Thank you.

16             Good afternoon.

17             A PROSPECTIVE JUROR:  Good afternoon.

18             I've lived in Chelsea for eighteen years.

19             I am a native New Yorker.

20             I have some college.

21             I'm a massage therapist.

22             I'm not married.

23             I have no children but myself.

24             I do Tai Chi and study my practice.

25             I've never served on a jury before.

1              No to number eight.

2              I did work for the New York City Police Department

3     for -- about eight years ago.

4              THE COURT:  What did you do for them?

5              A PROSPECTIVE JUROR:  I was a civilian employee

6     for them.

7              THE COURT:  Okay.

8              A PROSPECTIVE JUROR:  And I have a cousin who's a

9     judge and a brother who is a major with the state police.

10             No to number eleven.

11             No to twelve.

12             I do see clients in the evening.

13             THE COURT:  Mm-hmm.

14             A PROSPECTIVE JUROR:  And no to fourteen.

15             And that's it.

16             THE COURT:  Thank you.

17             Good afternoon.

18             A PROSPECTIVE JUROR:  Hello.

19             I've lived at my current address for just over two

20    years in Midtown West.

21             I am not a native New Yorker.  I am a native of

22    Oregon.

23             I work as a financial analyst for a financial

24    services firm here in the city.

25             I have an undergraduate degree from the university

1       here in New York.

2                       I am not married.

3                       Do not have children.

4                       And I am currently living on my own.

5                       In my spare time, I like to be active outside.  I

6       like to read, run.

7                       I've never served on a jury before.

8                       I do have a relative who is a victim of a crime.

9       This happened very recently.  I had a cousin who was

10      murdered in the State of Oregon, and I didn't initially

11      bring this forth to you, but in the back of my mind, I think

12      I should have.  I don't believe that I will be able to be

13      impartial given the recent happenings.

14                      THE COURT:  Any objections?

15                      MR. HERLICH:  No.

16                      MS. PARK:  (Indicating.)

17                      THE COURT:  We're going to excuse you,

18      Mr. Nickerson.  You can step down.

19                      Let's refill the seat, please.

20                      THE CLERK:  Olivia Merrick, M-E-R-R-I-C-K.

21                      A COURT OFFICER:  Just wait for me outside,

22      please.

23                      (Whereupon, the prospective juror exited the

24      courtroom.)

25                      THE COURT:  Now, Ms. Merrick, you can start

1          whenever you're ready.

2                    A PROSPECTIVE JUROR:  Okay.

3                    I am a native New Yorker.

4                    I've lived on the Upper West Side for two years

5          now.

6                    I am a licensed social worker.

7                    I have a graduate degree.

8                    I am married.

9                    No children.

10                   I do yoga, take walks, read, spend time with

11         family.

12                   Never served on a jury before.

13                   I have been the victim of a burglary in another

14         country.  My sister was a victim of a sexual assault many,

15         many years ago.

16                   My brother is an NYPD officer.

17                   My family has not had any conflict with the law.

18                   No moral, intellectual or religious beliefs.

19                   No health problems.

20                   No night issues.

21                   No religious issues.

22                   No to fifteen.

23                   THE COURT:  Okay, thank you.

24                   Good afternoon.

25                   A PROSPECTIVE JUROR:  Good afternoon.

Joanne Fleming

A272

1          I live in the Upper West Side for three years now.

2          I am a waiter at a restaurant.  I'm also coach of

3    a Little League flag football team.  Been doing both for

4    three years.

5          I graduated high school.  I have some college

6    education.

7          I am married.

8          I don't have any children.

9          My spouse, she works for the city, NCCID.

10         In spare time, I do play sports, hobbies, I write

11   songs.

12         I never served on the grand jury before.

13         Relative have been victim, no.

14         I don't have any friends or close relatives

15   working for the police department or law enforcement, sorry.

16         Ten, eleven, twelve and fourteen, no.

17         Twelve -- I mean, thirteen and fifteen, I do work

18   from eleven to eleven.

19         THE COURT:  Okay, thank you.

20         Jurors, please pass the questionnaires to your

21   right.

22         Now, what normally happens at this time is that

23   the attorneys have an opportunity to speak to you, but we're

24   going to take our lunch recess now and I would ask you

25   please be back at two o'clock sharp.

Joanne Fleming

1    When you come back, please do not enter the

2    courtroom.  Just wait outside the courtroom, one of the

3    court officers will go outside and invite you in when we're

4    ready for you.

5    I ask you to not discuss the case among yourselves

6    or with anyone else.

7    Please continue to keep an open mind as to the

8    defendant's guilt or innocence.

9    Please do not form or express an opinion as to the

10   defendant's guilt or innocence.

11   If you happen to see me or the attorneys or the

12   defendant out in the public spaces and we don't talk to you,

13   I ask you to please not be offended by that.  We're

14   prohibited from engaging you during the course of the trial

15   in an excess of caution to avoid even the appearance of

16   impropriety or perhaps talking to you or perhaps greeting

17   you.  Basically put this case out of your mind and I will

18   see you at two o'clock sharp.

19   The eighteen in the box, I ask you to please

20   remember the seat that you're in.  That will be the seat

21   that you have to take when you come back.

22   And I ask you please be on time.  We can't start

23   this afternoon until all eighteen are here.

24   Thank you.

25   (Whereupon, the prospective jurors in the box

1      exited the courtroom.)

2              THE SERGEANT:  Jurors, you can step out.

3              (Whereupon, the prospective jury panel exited the

4      courtroom.)

5              THE COURT:  Alright, so we have fifteen left in

6      the audience.

7              I will see you at two o'clock.  Thank you.

8                  (Luncheon recess held.)

9          * * * A F T E R N O O N    S E S S I O N * * *

10             THE CLERK:  Continuing case on trial, 4258 of '14,

11     Lonnie Harrell.

12             THE COURT:  Good afternoon, everyone.

13             Sergeant, as soon as you're ready, we can get the

14     jurors.

15             THE SERGEANT:  Sure, Judge.

16             A COURT OFFICER:  Panel entering.

17             (Whereupon, the prospective trial jurors entered

18     the courtroom.)

19             (Whereupon, the prospective jurors in the box

20     entered the courtroom.)

21             THE COURT:  Welcome, jurors.

22             At this time, jurors, the attorneys will address

23     you in the jury box for about fifteen minutes each.  The law

24     requires that the assistant district attorney speak to you

25     first.

Joanne Fleming

A275

1          Please remember that whatever the lawyers say to

2    you at any time is not evidence.  So what the lawyers are

3    about to say to you now is not evidence.

4          Ms. Park.

5          MS. PARK:  Good afternoon.

6          I hope you all had a good lunch break.

7          I just want to say that this is really our only

8    opportunity to speak to you and your only opportunity to

9    speak to us.  So we ask you to be as honest with us as

10   possible, you know, in helping us pick a fair and impartial

11   jury for this trial, and only you can decide what you are

12   thinking, how you're feeling at this time.

13         Before I -- before I start, I just want to follow

14   up with some of the questions on the questionnaire earlier

15   and it could be my fault.

16         Mr. Hargett?

17         A PROSPECTIVE JUROR:  Yes.

18         MS. PARK:  Did I say your name correctly?

19         A PROSPECTIVE JUROR:  Yeah.

20         MS. PARK:  I didn't catch what you did for a

21   living.

22         A PROSPECTIVE JUROR:  I apologize.  I should have

23   wore my reading glasses when reading.

24         I work for Con Edison.

25         MS. PARK:  What do you do for Con Ed?

1        A PROSPECTIVE JUROR:  Regulatory issues and energy

2   policy issues.

3        THE COURT:  Jurors, although Ms. Park is obviously

4   standing in front you, I ask you to please project your

5   voice so the court reporter can hear everything that's being

6   said.

7        You're fine.

8        We will try to do it without the microphone, which

9   takes a little longer.

10        MS. PARK:  And, Mr. Anderson, you mentioned that

11   you were a victim of an assault and that you had a conflict

12   with the law?

13        A PROSPECTIVE JUROR:  Uh-huh.

14        MS. PARK:  Does the conflict with the law arise

15   out of that same incident or is that something separate?

16        A PROSPECTIVE JUROR:  Separate incidents.

17        MS. PARK:  And for both incidents, did both

18   involve courts, anything like that?

19        A PROSPECTIVE JUROR:  Yes.  Yes, to both.

20        MS. PARK:  About how long ago were these

21   incidents?

22        A PROSPECTIVE JUROR:  The assault incident was

23   maybe fifteen years ago and the conflict with the law

24   incident was just a couple of weeks ago.

25        MS. PARK:  Do you still have a pending case

1 regarding that conflict with the law?

2    A PROSPECTIVE JUROR:  No.

3    MS. PARK:  Do you think you were treated fairly

4 or --

5    A PROSPECTIVE JUROR:  No.

6    MS. PARK:  -- not fairly?

7    A PROSPECTIVE JUROR:  No.

8    THE COURT:  I'm sorry, I can't hear.

9    A PROSPECTIVE JUROR:  I'm sorry.

10   I didn't feel like I was treated fairly.

11    MS. PARK:  And do you think you would hold that

12 against the prosecution, for example?

13    A PROSPECTIVE JUROR:  No.

14    MS. PARK:  And, Mr. Hill, you also mentioned you

15 had a conflict with the law?

16    A PROSPECTIVE JUROR:  Mm-hmm.

17    MS. PARK:  About how long ago was that?

18    A PROSPECTIVE JUROR:  Five years.

19    MS. PARK:  Do you think you were treated fairly

20 regarding that?

21    A PROSPECTIVE JUROR:  I think I was treated

22 fairly.

23    MS. PARK:  Anything about that experience that's

24 going to spill over onto this case?

25    A PROSPECTIVE JUROR:  Not onto this case, no.

Joanne Fleming

A278

```
 1                    MS. PARK:  And, Mr. Hunter, same thing?

 2             A PROSPECTIVE JUROR:  Yeah.

 3                    MS. PARK:  About how long ago was your incident?

 4             A PROSPECTIVE JUROR:  Probably ten years ago.

 5                    MS. PARK:  Anything about that that's --

 6             A PROSPECTIVE JUROR:  No, just college things.

 7                    MS. PARK:  And, Mr. Cohen, I believe you also

 8      mentioned you had a conflict with the law.  About how long

 9      ago was that?

10             A PROSPECTIVE JUROR:  Thirteen years ago.

11                    MS. PARK:  And did you think you were treated

12      fairly, unfairly?  Thinking about that experience, is it

13      going to spill over to this case?

14             A PROSPECTIVE JUROR:  No, I was treated fairly.

15                    MS. PARK:  And, Mr. McCabe, you mentioned that you

16      work for NYPD as a civilian?

17             A PROSPECTIVE JUROR:  Yes.

18                    MS. PARK:  Can you explain what you did just

19      briefly?

20             A PROSPECTIVE JUROR:  I was a blacksmith.

21                    MS. PARK:  Blacksmith?

22             A PROSPECTIVE JUROR:  Yes.

23                    MS. PARK:  Is that making keys or --

24             A PROSPECTIVE JUROR:  It's making horseshoes and

25      things like that.
```

```
 1              MS. PARK:  And you are currently a massage
 2    therapist?
 3              A PROSPECTIVE JUROR:  Yes.
 4              MS. PARK:  Do you work for a spa or have your own
 5    practice?
 6              A PROSPECTIVE JUROR:  I have my own practice.
 7              MS. PARK:  And, Ms. Merrick, you mentioned that
 8    you are a licensed social worker?
 9              A PROSPECTIVE JUROR:  Yes.
10              MS. PARK:  What population do you work with?
11              A PROSPECTIVE JUROR:  So yeah, I work with sixteen
12    to twenty-four year old men involved in the justice system,
13    and many of them have cases in this court, not on this
14    floor, but I come here often.  So I'm -- I don't know.
15              MS. PARK:  Are you like an advocate?
16              A PROSPECTIVE JUROR:  Yeah, I do a lot of court
17    advocacy.  I am principally in East Harlem and do a lot of
18    educational/vocational work, primarily in this courthouse.
19              MS. PARK:  Meaning that your clients tell you
20    about their experience with the court system, the police?
21              A PROSPECTIVE JUROR:  Yeah -- well, yeah.
22              My brother is also a police officer.  I sort of
23    hear both sides.
24              MS. PARK:  So, anything about either experience
25    that you think will spill over onto this case, either for
```

1          the defense or for the prosecution?

2                    A PROSPECTIVE JUROR:  Yeah, I'm trying to figure

3          it out.

4                    I think I have a lot of issues with the criminal

5          justice system and the way the police officers work, but at

6          the same time, when you commit a crime, there should be some

7          sort of, you know, consequence.  So, I don't know, to be

8          honest with you.

9                    THE COURT:  I guess what we're asking, as you come

10         into this process --

11                   A PROSPECTIVE JUROR:  Yeah.

12                   THE COURT:  -- can you come into this with an open

13         mind?

14                   A PROSPECTIVE JUROR:  Yeah.

15                   THE COURT:  And not pass judgment on anybody's

16         credibility until after you see them and hear them?

17                   A PROSPECTIVE JUROR:  Absolutely.

18                   THE COURT:  You can do that?

19                   A PROSPECTIVE JUROR:  Mm-hmm.

20                   THE COURT:  And what's the name -- do you work for

21         an agency?

22                   A PROSPECTIVE JUROR:  Yes, I work with Getting Out

23         and Staying Out.

24                   THE COURT:  Okay.

25                   MS. PARK:  Ms. Dee, you mentioned that your uncle

1    spent some time in jail?

2                A PROSPECTIVE JUROR:  (Indicating.)

3                MS. PARK:  How long ago was that?

4                A PROSPECTIVE JUROR:  I think it was six years

5    ago.

6                MS. PARK:  Were you close with that uncle?

7                A PROSPECTIVE JUROR:  No.

8                MS. PARK:  Were you involved in that process at

9    all?

10               A PROSPECTIVE JUROR:  No.

11               MS. PARK:  Anything about that experience that's

12   going to spill over onto this case?

13               A PROSPECTIVE JUROR:  No.

14               MS. PARK:  And, Mr. Grove, you mentioned you had a

15   conflict with the law.  About how long ago was that?

16               A PROSPECTIVE JUROR:  It's fifteen years ago.

17               MS. PARK:  And did you think you were treated

18   fairly, unfairly or any feelings about how you were treated?

19               A PROSPECTIVE JUROR:  No, nothing that would

20   impact with me dealing with the case.

21               MS. PARK:  So you all know basically what the

22   allegations are here, that it's about a sexual assault of a

23   young girl, a young girl who was fifteen-years old.

24               And we have two theories of sexual assault.  One

25   is that it was not consensual because some type of force was

Joanne Fleming

A282

1   used, and second, that it wasn't consensual just by the fact

2   that she was under the age of sixteen.  So, we do have to

3   prove two separate theories, but they are two very different

4   types of crimes.

5           And I want to talk to you about what you might all

6   know commonly as statutory rape.  Is there anyone here who

7   has trouble accepting that law?

8           Our law says that if you're under sixteen,

9   regardless of whether that, you know, the minor was a

10  willing participate or not, you were incapable of consent.

11          Is there anyone who has trouble accepting that

12  law?

13          A PROSPECTIVE JUROR:  I do.

14          MS. PARK:  That's --

15          A PROSPECTIVE JUROR:  Mr. Grove.

16          MS. PARK:  Yes?

17          THE COURT:  I'm sorry, let's go back to Mr. Grove

18  for a second.

19          So, at a later time I will instruct everybody on

20  the law and the laws that apply to this case.  Would you be

21  able to follow my instructions on the law as given to you or

22  would you be unable to follow my instructions on the law?

23          A PROSPECTIVE JUROR:  I believe I will be able to

24  follow them, but I do disagree with that law.

25          THE COURT:  Well, you can certainly disagree,

Joanne Fleming

A283

1        that's fine.  You can have your opinion.

2                What we need to know, if you would be able to

3        follow my instructions on the law even if you disagree with

4        it.

5                A PROSPECTIVE JUROR:  Yes, I could follow your

6        instructions.

7                THE COURT:  Okay, thank you.

8                MS. PARK:  And, Mr. Anderson, you had your hand

9        up?

10               A PROSPECTIVE JUROR:  Yeah.

11               MS. PARK:  So, you have trouble accepting that law

12       but, as the Judge said --

13               A PROSPECTIVE JUROR:  Right.

14               MS. PARK:  -- whether you agree or disagree with

15       that law, can you follow the Judge's instruction?

16               A PROSPECTIVE JUROR:  Yeah.

17               MS. PARK:  Anyone else feel that they would have

18       trouble accepting that law?

19               And, as I said, in addition to the statutory rape,

20       there's also a forcible component here.  And some of you

21       might, you know, might have some kind of preconceived ideas

22       of what rape -- sexual assault is.  I'm sure you've all seen

23       on T.V. a woman coming home late a night, confronted by a

24       stranger, pulled in an alley by knife-point or force of some

25       sort by a stranger.

1           I will tell you right now, this is not that case.

2    I will tell you that the complaining witness here and the

3    defendant, they know each other.  They are neighbors.  And

4    they were friendly with each other.

5           Mr. Downing, would the fact -- can you accept that

6    someone can be sexually assaulted by someone that she knows?

7           A PROSPECTIVE JUROR:  Yes.

8           MS. PARK:  And, Ms. Joseph, what about you, any

9    problems with accepting that?

10          A PROSPECTIVE JUROR:  No.

11          MS. PARK:  Mr. Cohen, what about you?

12          A PROSPECTIVE JUROR:  No.

13          MS. PARK:  And, Mr. Mazitto, how about you?

14          A PROSPECTIVE JUROR:  No.

15          MS. PARK:  Someone that is known to another

16   person, they can be sexually assaulted?

17          A PROSPECTIVE JUROR:  No.

18          MS. PARK:  You might also --

19          I'm sorry, anybody else?  Have a problem accepting

20   that notion?

21          A PROSPECTIVE JUROR:  I have a question.

22          MS. PARK:  Yes?

23          A PROSPECTIVE JUROR:  Going back to the statutory

24   rape.  What if the person doesn't know --

25          THE COURT:  I'm sorry, I can't hear you.

1      A PROSPECTIVE JUROR:  What if the person doesn't

2  know that the person's underage?  The person told them they

3  were of age?  Where do you go?

4      MS. PARK:  Well, the Judge is going to instruct

5  you what the elements of the statutory rape is.  But --

6      THE COURT:  Counsel, please approach for a minute.

7      (Whereupon, the following proceedings took place

8  on the record and outside the presence of the prospective

9  jury panel:)

10      THE COURT:  Again, I feel like we're making an

11  issue that does not apply to this case.  You know, this is a

12  -- to just say to this jury that's not the case here, that's

13  not an issue that they have to concern themselves with.

14      MS. PARK:  That?

15      THE COURT:  That the defendant knew --

16      MS. PARK:  That he was --

17      THE COURT:  -- she was younger than sixteen.

18      MS. PARK:  I think he did, but I don't know for

19  sure.  I mean, I think he did.

20      MR. HERLICH:  It was a strict liability.

21      THE COURT:  Yes.  Under the state law in New York,

22  that doesn't matter.  It doesn't matter what the defendant

23  believed the victim's age to really be.

24      MS. PARK:  I'm --

25      THE COURT:  That in some cases it's a strict

Joanne Fleming

1       liability.  That is more of a civil term.

2               (Whereupon, the following proceedings took place

3       on the record and in the presence of the prospective jury

4       panel:)

5               THE COURT:  What the law says, it doesn't matter

6       what age the defendant believed the victim to be so long as

7       the victim is unable to consent by virtue of the fact that

8       they're younger than sixteen years of age.

9               Can you follow that instruction on the law?

10              A PROSPECTIVE JUROR:  It doesn't seem really fair.

11              THE COURT:  I don't know what -- if you want to

12      get into a philosophical conversation -- I'm sorry?

13              A PROSPECTIVE JUROR:  Didn't Lawrence Taylor get

14      off?

15              THE COURT:  I couldn't tell you what happened in

16      the Lawrence Taylor case.

17              A PROSPECTIVE JUROR:  She was fifteen and he

18      thought she was nineteen and they let him go.

19              THE COURT:  I don't know where that happened.

20              A PROSPECTIVE JUROR:  I'm just asking --

21              THE COURT:  For jury selection purposes, can you

22      follow the law as I give it to you?

23              A PROSPECTIVE JUROR:  I don't know.

24              THE COURT:  You're not sure?

25              A PROSPECTIVE JUROR:  Not sure.

Joanne Fleming

A287

1        THE COURT:  Okay.

2        MS. PARK:  And some of you expect a victim of a

3   sexual assault to fight back vigorously; fight back; you

4   know, if it was me, I would have fought back a lot harder.

5        And if you learn that the complainant here did not

6   fight as hard as you might expect her to fight back, would

7   that preclude, in your view, from believing her testimony?

8        I want to start with Ms. Frenkel.  Do you have any

9   thoughts on what I just stated?

10       A PROSPECTIVE JUROR:  Well, was she threatened?

11       MR. HERLICH:  I can't hear, your Honor.

12       THE COURT:  Can you speak up?

13       A PROSPECTIVE JUROR:  I'm sorry.

14       Was she threatened?

15       MS. PARK:  I guess my question is:  You don't know

16   anything about the case right now.

17       A PROSPECTIVE JUROR:  Correct.

18       MS. PARK:  Can you keep an open mind and listen to

19   her testimony and, you know, at this point since you don't

20   really know what the facts are, would you inject how what

21   you would have done in her situation and say you know what,

22   automatically I can't believe what she says?

23       A PROSPECTIVE JUROR:  No, I would have an open

24   mind.

25       MS. PARK:  And, Ms. Zamm, can you keep an open

Joanne Fleming

A288

1   mind?

2           A PROSPECTIVE JUROR:  Sure.

3           MS. PARK:  Do you have any problems with what I

4   just said?

5           A PROSPECTIVE JUROR:  No.

6           MS. PARK:  And, Ms. Zamm, you mentioned that your

7   father was a victim of virtual kidnapping, and I was kind of

8   -- I didn't really understand what happened.

9           A PROSPECTIVE JUROR:  Yes.  I didn't know what it

10  was --

11          THE COURT:  I can't hear you, I'm sorry.

12          A PROSPECTIVE JUROR:  He received a phone call

13  saying that he had -- that the person had me, his daughter.

14          MS. PARK:  Oh, I see.

15          A PROSPECTIVE JUROR:  And was going to kill me,

16  and my father heard the voice and thought it was me and it

17  wasn't, and he was instructed to go wire some money to this

18  person, and supposedly it's prevalent and it targets older

19  people, yeah.

20          MS. PARK:  Was that in New York?

21          A PROSPECTIVE JUROR:  That was in California.

22          MS. PARK:  And you said that he never reported it?

23          A PROSPECTIVE JUROR:  (Indicating.)

24          MS. PARK:  Is there any reason why he didn't

25  report it?

Joanne Fleming

A289

1          A PROSPECTIVE JUROR:  I don't know exactly.

2          MS. PARK:  Anything about that experience that you

3     think would spill over on this case?

4          A PROSPECTIVE JUROR:  No, I don't think it

5     matters.

6          MS. PARK:  And Ms. Bowman?

7          A PROSPECTIVE JUROR:  Mm-hmm.

8          MS. PARK:  When I spoke to Ms. Frenkel about

9     earlier, about the complaining witness fighting back, would

10    you have any problems with that or are you open at this

11    point?  Can you listen to the testimony?

12         A PROSPECTIVE JUROR:  Yes, I can.

13         MS. PARK:  And, Mr. Kigel, what about you, same

14    question?

15         A PROSPECTIVE JUROR:  Yes.

16         MS. PARK:  And, Mr. Kigel, would you agree with me

17    or can you accept that people react differently to traumatic

18    situations?

19         A PROSPECTIVE JUROR:  Sure.

20         MS. PARK:  For example, someone can't -- if

21    someone suffers -- you know, someone went through some kind

22    of trauma, one person can be crying a lot and another person

23    might not be crying as much, and another person might not

24    react as you would.

25         Would you agree with that?

1          A PROSPECTIVE JUROR:  Yes.

2          MS. PARK:  Mr. Horneff, can you agree that people

3    react differently to traumatic situations?

4          A PROSPECTIVE JUROR:  Yes.

5          MS. PARK:  Ms. Oster, what about you, can you

6    accept the fact that people react differently to traumatic

7    situations?

8          A PROSPECTIVE JUROR:  Yes.

9          MS. PARK:  Anyone have a problem with what I just

10   said?

11         Anyone feel like:  I don't know who actually the

12   complaining witness is -- whether she will or she won't --

13   but is there anyone here that says at this point, unless I

14   see some tears, I cannot credit her testimony?  Anyone feel

15   that way?

16         THE COURT:  Ms. Park, you're just about done.

17         MS. PARK:  Yes.

18         Thank you very much.

19         THE COURT:  Thank you, Ms. Park.

20         Mr. Herlich, would you minding pulling the podium

21   out so I can see Juror Number 1?

22         MR. HERLICH:  Sure.

23         THE COURT:  Thank you.

24         MR. HERLICH:  Ms. Oster, hi.

25         A PROSPECTIVE JUROR:  Hi.

1          MR. HERLICH:   The Judge gave everyone the

2     fundamental principles of criminal law during his initial

3     instructions to you and I just want to run them by you

4     again, by you guys.

5          Burden of proof and presumption of innocence.   The

6     accused is presumed to be innocent and the prosecution has

7     the burden of proof of proving the charges beyond a

8     reasonable doubt.

9          Any problem with that?

10         A PROSPECTIVE JUROR:   No.

11         MR. HERLICH:   Okay.

12         And if the accused, Mr. Harrell, does not elect to

13    testify in the case, you can't hold it against him.

14         Any problem with that?

15         A PROSPECTIVE JUROR:   (Indicating.)

16         MR. HERLICH:   No, thank you.

17         The fact that your husband was a deputy sheriff in

18    another state, will that have any bearing on your ability to

19    evaluate law enforcement testimony in this case?

20         A PROSPECTIVE JUROR:   No.

21         MR. HERLICH:   Okay.   Which -- okay, thank you.

22         Mr. Anderson, you are an animator?

23         A PROSPECTIVE JUROR:   Mm-hmm.

24         MR. HERLICH:   What kind of animation do you do?

25         A PROSPECTIVE JUROR:   Films.

1      MR. HERLICH:  Okay.

2          You said you had a conflict with the law that the

3  prosecutor mentioned.  If you want to discuss anything

4  privately, we can approach the bench.  Can you give me the

5  nature of what was the matter, what happened?

6          A PROSPECTIVE JUROR:  Oh, it was a violation for

7  being out in the park, water, past hours.

8          MR. HERLICH:  What water?

9          A PROSPECTIVE JUROR:  The beach.

10         MR. HERLICH:  Okay.

11         Don't worry about it.  I don't know if it's a

12  conflict with the law, maybe.

13         A PROSPECTIVE JUROR:  Sure.

14         MR. HERLICH:  What beach were you at?

15         A PROSPECTIVE JUROR:  It was Long Beach.

16         MR. HERLICH:  Okay, sure.

17         Okay, Ms. Zamm, you indicated that you're a copy

18  editor and proofreader?

19         A PROSPECTIVE JUROR:  Yes.

20         MR. HERLICH:  What exactly is a copywriter?  I've

21  seen the phrase all my life and I'm not sure what a

22  copywriter is.

23         A PROSPECTIVE JUROR:  It's proofreading, plus

24  grammar with any written word.

25         MR. HERLICH:  You suggest to the author the

Joanne Fleming

1    changes that should be made?

2            A PROSPECTIVE JUROR:  Yes, so the meaning can come

3    through and the reader won't be confused or stopped or

4    annoyed.

5            MR. HERLICH:  Thank you.

6            You said you were a criminal juror once before.

7    Without telling us the verdict, did the case go all the way

8    to the verdict?

9            A PROSPECTIVE JUROR:  I believe -- it was a long

10   time ago.  I believe it was settled, or something, in court.

11   Yeah, they came to an agreement.

12           MR. HERLICH:  Yes, thank you.

13           Mr. Hill, again, you indicated you had some small

14   conflict with the law?

15           A PROSPECTIVE JUROR:  Yeah.

16           MR. HERLICH:  Are you able to tell us what that

17   was about?

18           A PROSPECTIVE JUROR:  Yeah.

19           So, not too different.  I was swimming in an area

20   that I shouldn't have been, but someone there was hurt a

21   week earlier.  So on a day that probably wouldn't have been

22   an issue, we were arrested, or we were charged, and had to

23   go through the whole process in kind of making an example

24   out of a group to hopefully deter.

25           MR. HERLICH:  What did that happen?  What was the

Joanne Fleming

A294