1  go to bed one night when it is not raining and you wake up

2  in the morning, you look out your window, you do not see

3  rain but you see the street and sidewalk are wet and that

4  people are wearing raincoats and carrying umbrellas.

5       Under those circumstances, it may be reasonable to

6  infer, that is, conclude, that it rained during the night;

7  in other words, the fact it rained during the night is an

8  inference that might be drawn from the proven facts of the

9  presence of water on the street and sidewalk and people in

10  raincoats and carrying umbrellas.

11       An inference must only be drawn from a proven fact

12  or facts, and then only if the inference flows naturally,

13  reasonably and logically from the proven fact or facts.  Not

14  if it is speculative.

15       Therefore, in deciding whether to draw an

16  inference, you must look at and consider all the facts in

17  the light of reason, common sense and experience.

18       We now turn to the fundamental principles of our

19  law that apply in all criminal trials:  The presumption of

20  innocence, the burden of proof and the requirement of proof

21  beyond a reasonable doubt.

22       Throughout these proceedings, the defendant is

23  presumed to be innocent.  As a result, you must find the

24  defendant not guilty unless, on the evidence presented at

25  this trial, you conclude that the People have proven the

1  defendant guilty beyond a reasonable doubt.

2          In determining whether the People have satisfied

3  their burden of proving the defendant's guilt beyond a

4  reasonable doubt, you may consider all of the evidence

5  presented, whether by the People or by the defendant.  In

6  doing so, however, remember that even though the defendant

7  introduced evidence, the burden of proof remains on the

8  People.

9          The defendant is not required to prove that he is

10  not guilty.  The defendant is not required to prove or

11  disprove anything.  To the contrary.  The People have the

12  burden of proving the defendant guilty beyond a reasonable

13  doubt.  That means, before you can find the defendant guilty

14  of a crime, the People must prove beyond a reasonable doubt

15  every element of the crime, including that the defendant is

16  the person who committed that crime.

17          The burden of proof never shifts from the People

18  to the defendant.  If the People fail to satisfy their

19  burden of proof, you must find the defendant not guilty.  If

20  the People satisfy their burden of proof, you must find the

21  defendant guilty.

22          The law uses the term "proof beyond a reasonable

23  doubt" to tell you how convincing the evidence of guilt must

24  be to permit a verdict of guilty.  The law recognizes that

25  in dealing with human affairs, there are very few things in

this world that we know with absolute certainty.  Therefore, the law does not require the People to prove the defendant guilty beyond all possible doubt.

On the other hand, it is not sufficient to prove that the defendant is probably guilty.  In a criminal case, the proof of guilt must be stronger than that, it must be beyond a reasonable doubt.

A reasonable doubt is an honest doubt of the defendant's guilt for which a reason exists based upon the nature and the quality of the evidence.  It is an actual doubt, not an imaginary doubt.  It is a doubt that a reasonable person, acting in a matter of this importance, would be likely to entertain because of the evidence that was presented or because of the lack of convincing evidence.

Proof of guilt beyond a reasonable doubt is proof that leaves you so firmly convinced of the defendant's guilt that you have no reasonable doubt of the existence of any element of the crime or of the defendant's identity as the person who committed that crime.

In determining whether or not the People have proven the defendant's guilt beyond a reasonable doubt, you should be guided solely by a full and fair evaluation of the evidence.  After carefully evaluating the evidence, each of you must decide whether or not that evidence convinces you beyond a reasonable doubt of the defendant's guilt.

1        Whatever your verdict may be, it must not rest

2  upon baseless speculation, nor may it be influenced in any

3  way by bias, prejudice, sympathy or by a desire to bring an

4  end to your deliberations or to avoid an unpleasant duty.

5        If you are not convinced beyond a reasonable doubt

6  that the defendant is guilty of a charged crime, you must

7  find the defendant not guilty of that crime.  And if you are

8  convinced beyond a reasonable doubt that the defendant is

9  guilty of a charged crime, you must find the defendant

10  guilty of that crime.

11        As judges of the facts, you alone determine the

12  truthfulness and accuracy of the testimony of each witness.

13  You must decide whether a witness told the truth and was

14  accurate, or instead, testified falsely or was mistaken.

15        You must also decide what importance to give to

16  the testimony you accept as truthful and accurate.

17        It is the quality of the testimony that is

18  controlling, not the number of witnesses who testify.

19        If you find that any witness has intentionally

20  testified falsely as to any material fact, you may disregard

21  that witness' entire testimony, or, you may disregard so

22  much of it as you find was untruthful and accept so much of

23  it that has been truthfully and accurately given.

24        There is no particular formula for evaluating the

25  truthfulness and accuracy of another person's statements or

testimony.  You bring to this process all of your varied experiences.  In life, you frequently decide the truthfulness and accuracy of statements made to you by other people.  The same factors used to make those decisions should be used in this case when evaluating the testimony.

Some of the factors that you may wish to consider in evaluating the testimony of a witness are as follows:

Did the witness have an opportunity to see or hear the events about which he or he testified?

Did the witness have the ability to recall those events accurately?

Was the testimony of the witness plausible and likely to be true, or, was it implausible and not likely to be true?

Was the testimony of the witness consistent or inconsistent with other testimony or evidence in the case?

Did the manner in which the witness testified reflect upon the truthfulness of that witness' testimony?

To what extent, if any, did the witness' background, training, education or experience affect the believability of that witness' testimony?

Did the witness have a bias, hostility or some other attitude that affected the truthfulness of the witness' testimony?

You may consider whether a witness had or did not

1  have a motive to lie.

2      If a witness had a motive to lie, you may consider

3  whether and to what extent, if any, the motive affected the

4  truthfulness of that witness' testimony.

5      If a witness did not have a motive to lie, you may

6  consider that as well in evaluating the witness'

7  truthfulness.

8      You may consider whether a witness has any

9  interest in the outcome of the case, or instead, whether the

10  witness has no such interest.

11      You are not required to reject the testimony of an

12  interested witness or to accept the testimony of a witness

13  who has no interest in the outcome of the case.  You may,

14  however, consider whether an interest in the outcome of the

15  case or the lack of such interest affected the truthfulness

16  of the witness' testimony.

17      You may consider whether a witness made statements

18  at this trial that are inconsistent with each other.

19      You may also consider whether a witness made

20  previous statements that are inconsistent with his or her

21  testimony at trial.

22      You may consider whether a witness testified to a

23  fact here at trial that the witness omitted to state at a

24  prior time when it would have been reasonable and logical

25  for the witness to have stated the fact.

Joanne Fleming

1    In determining whether it would have been

2    reasonable and logical for the witness to have stated the

3    omitted fact, you may consider whether the witness'

4    attention was called to the matter and whether the witness

5    was specifically asked about it.

6    If a witness has made such inconsistent statements

7    or omissions, you may consider whether and to what extent

8    they affect the truthfulness or accuracy of the witness'

9    testimony here at this trial.

10   The contents of a prior inconsistent statement are

11   not proof of what happened.  You may use evidence of a prior

12   inconsistent statement only to evaluate the truthfulness or

13   accuracy of the witness' testimony here at trial.

14   You may consider whether a witness' testimony is

15   consistent with the testimony of other witnesses or with

16   other evidence in the case.

17   If there are inconsistencies by or among

18   witnesses, you may consider whether they were significant

19   inconsistencies related to important facts, or instead, were

20   the kind of minor inconsistencies that one might expect from

21   multiple witnesses to the same event.

22   In this case you have heard the testimony of

23   police officers.  The testimony of a witness should not be

24   believed solely and simply because the witness is a police

25   officer.  At the same time, a witness' testimony should not

1      be disbelieved solely and simply because the witness is a

2      police officer.

3              In other words, you must not believe or disbelieve

4      a police officer just because he or she is a police officer.

5      You must evaluate a police officer's testimony in the same

6      way you would evaluate the testimony of any other witness.

7              You have heard testimony about the prosecutor or a

8      lawyer or an investigator speaking to a witness about the

9      case before the witness testified at this trial.  The law

10     does not prohibit a prosecutor or a lawyer or an

11     investigator from speaking to a witness about the case

12     before the witness testifies, nor does it prohibit the

13     prosecutor or a lawyer or an investigator from reviewing

14     with the witness the questions that will be asked at trial.

15             You have also heard testimony that a witness read

16     certain materials pertaining to this case before the witness

17     testified at trial.  The law does not prohibit a witness

18     from doing so.

19             You may recall that Jeannie Tamariz and Joseph

20     Sierra testified about certain scientific, medical and

21     technical matters and gave opinions on such matters.

22             Ordinarily, a witness is limited to testifying

23     about facts and is not permitted to give an opinion.  Where,

24     however, scientific, medical, technical or other specialized

25     knowledge will help a jury understand the evidence or

1    determine a fact in issue, a witness with expertise in a

2    specialized field may render opinions about such matters.

3         You should evaluate the testimony of any such

4    witness just as you would the testimony of any other

5    witness.  You may accept or reject the testimony in whole or

6    in part just as you may with respect to the testimony of any

7    other witness.

8         In deciding whether or not to accept such

9    testimony, you should consider the following:  The

10   qualifications and believability of the witness; the facts

11   and other circumstances upon which the witness' opinion is

12   based; the accuracy or inaccuracy of any assumed or

13   hypothetical facts that the witness' opinion was based; the

14   reason given for the witness' opinion and whether the

15   witness' opinion is consistent or inconsistent with other

16   evidence in the case.

17        Brian.

18        (Court conferring with court clerk.)

19        THE COURT:  The People have the burden of proving

20   beyond a reasonable doubt not only that a charged crime was

21   committed but that the defendant is the person who committed

22   that crime.  Thus, even if you are convinced beyond a

23   reasonable doubt that a charged crime was committed by

24   someone, you cannot convict the defendant of that crime

25   unless you're also convinced beyond a reasonable doubt that

Jury Charge

1    he is the person who committed that crime.

2         I will now instruct you on the law applicable to

3    the charged offenses.  Those offenses are:  Criminal sexual

4    act in the first degree, two counts, an attempt to commit

5    the crime of rape in the first degree, sexual abuse in the

6    first degree, two counts, and criminal sexual act in the

7    third degree, two counts.

8         The first count is criminal sexual act in the

9    first degree.  Under our law, a person is guilty of criminal

10   sexual act in the first degree when he engages in oral

11   sexual conduct with another person by forcible compulsion.

12        Under our law, it is also an element of this

13   offense that the sexual act was committed without consent.

14        .  Oral sexual conduct takes place without a person's

15   consent when the lack of consent results from forcible

16   compulsion.

17        Some of the terms used in this definition have

18   their own special meaning in our law.  I will now give you

19   the meaning of the following terms:  Oral sexual conduct and

20   forcible compulsion.

21        Oral sexual conduct, under this count, means

22   conduct between persons consisting of contact between the

23   mouth and the vulva or vagina.

24        Forcible compulsion means to intentionally compel,

25   either by the use of physical force or by a threat,

Joanne Fleming

A843

expressed or implied, which places a person in fear of
immediate death or physical injury to herself or another
person.

In order for you to find the defendant guilty of
this crime under count one, the People are required to
prove, from all the evidence in the case, beyond a
reasonable doubt, both of the following two elements:

First:  That on or about July 16th, 2014, in the
County of New York, the defendant, Lonnie Harrell, engaged
in oral sexual conduct with Cypress Smith, specifically,
contact between the defendant's mouth and the vulva or
vagina of Cypress Smith;

And, two:  That the defendant did so without
Cypress Smith's consent by the use of forcible compulsion.

Therefore, if you find that the People have proven
beyond a reasonable doubt both of those elements, you must
find the defendant guilty of the crime of criminal sexual
act in the first degree as charged in the first count.

On the other hand, if you find that the People
have not proven beyond a reasonable doubt either one or both
of those elements, you must find the defendant not guilty of
the crime of criminal sexual act in the first degree as
charged in the first count.

The second count is also criminal sexual act in
the first degree.  Under our law, a person is guilty of

1      criminal sexual act in the first degree, under this theory,

2      when he engages in oral sexual conduct with another person

3      by forcible compulsion.

4              Under our law, it is also an element of this

5      offense that the sexual act was committed without consent.

6              Oral sexual conduct takes place without a person's

7      consent when the lack of consent results from forcible

8      compulsion.

9              Some of the terms used in this definition have

10     their own special meaning in our law.  I will now give you

11     the meaning of the following terms:  Oral sexual conduct and

12     forcible compulsion.

13             Oral sexual conduct, under this count, means

14     conduct between persons consisting of contact between the

15     mouth and the penis.

16             Forcible compulsion means to intentionally compel,

17     either by the use of physical force or by a threat,

18     expressed or implied, which places a person in fear of

19     immediate death or physical injury to herself or another

20     person.

21             In order for you to find the defendant guilty of

22     this crime, under count two, the People are required to

23     prove, from all the evidence in the case, beyond a

24     reasonable doubt, both of the following two elements:

25             First:  That on or about July 16th, 2014, in the

1   County of New York, the defendant, Lonnie Harrell, engaged

2   in oral sexual conduct with Cypress Smith, specifically,

3   contact between the defendant's penis and the mouth of

4   Cypress Smith;

5          And, two:  That the defendant did so without

6   Cypress Smith's consent by the use of forcible compulsion.

7          Therefore, if you find that the People have proven

8   beyond a reasonable doubt both of those elements, you must

9   find the defendant guilty of the crime of criminal sexual

10  act in the first degree as charged in the second count.

11         On the other hand, if you find that the People

12  have not proven beyond a reasonable doubt either one or both

13  of those elements, you must find the defendant not guilty of

14  the crime of criminal sexual act in the first degree as

15  charged in the second count.

16         (Court conferring with Court Clerk.)

17         THE COURT:  The third count is an attempt to

18  commit the crime of rape in the first degree.  I will

19  instruct you first on the definition of the crime of rape in

20  the first degree, then I will define for you an attempt to

21  commit a crime, and, finally, I will put both definitions

22  together and list for you the elements of an attempt to

23  commit the crime of rape in the first degree.

24         Under our law, a person is guilty of rape in the

25  first degree when he engages in sexual intercourse with

Joanne Fleming

A846

1   another person by forcible compulsion.

2           Under our law, it is also an element of this

3   offense that the sex act was committed without consent.

4           Sexual intercourse takes place without a person's

5   consent when the lack of consent results from forcible

6   compulsion.

7           Some of the terms used in this definition have

8   their own special meaning in our law.  I will now give you

9   the meaning of the following terms:  Sexual intercourse and

10  forcible compulsion.

11          Sexual intercourse means any penetration, however

12  slight, of the penis into the vaginal opening; in other

13  words, any penetration of the penis into the vaginal

14  opening, regardless of the distance of the penetration,

15  constitutes an act of sexual intercourse.  Sexual

16  intercourse does not necessarily require erection of the

17  penis, emission or orgasm.

18          Forcible compulsion means to intentionally compel,

19  either by the use of physical force or by a threat,

20  expressed or implied, which places a person in fear of

21  immediate death or physical injury to herself or another

22  person.

23          Under our law, a person is guilty of an attempt to

24  commit a crime when, with intent to commit a crime, he

25  engaged in conduct which tends to effect the commission of

1    such crime.

2              Some of the terms used in this definition of

3    attempt have their own special meaning in our law.  I will

4    now give you the meaning of the following terms:  Intent and

5    tends to effect.

6              Intent means conscious objective or purpose.

7              Thus, a person acts with intent to commit a crime

8    when his conscious objective or purpose is to commit that

9    crime.

10             Conduct which tends to effect the commission of a

11   crime means conduct which comes dangerously close -- excuse

12   me -- dangerously close or very near to the completion of

13   the intended crime.

14             If a person intends to commit a crime and engaged

15   in conduct which carries his purpose forward within

16   dangerous proximity to the completion of the intended crime,

17   he is guilty of an attempt to commit this crime.

18             It does not matter that the intended crime was not

19   actually completed.  The person's conduct must be directed

20   toward the accomplishment of the intended crime.  It must go

21   beyond planning and mere preparation but it need not be the

22   last act necessary to effect the actual commission of the

23   intended crime.  Rather, the conduct involved must go far

24   enough that it comes dangerously close or very near to the

25   completion of the intended crime.

In order for you to find the defendant guilty of an attempt to commit the crime of rape in the first degree, the People are required to prove, from all the evidence in the case, beyond a reasonable doubt, each of the following three elements:

First:  That on or about July 16th, 2014, in the County of New York, the defendant, Lonnie Harrell, intended to commit the crime of rape in the first degree;

Two:  That the defendant engaged in conduct which tended to effect the commission of that crime;

And, three:  That the defendant did so without Cypress Smith's consent by the use of forcible compulsion.

Therefore, if you find that the People have proven beyond a reasonable doubt all three of those elements, you must find the defendant guilty of the crime of an attempt to commit the crime of the rape in the first degree under the third count.

On the other hand, if you find that the People have not proven beyond a reasonable doubt any one or more of the three elements, you must find the defendant not guilty of the crime of an attempt to commit the crime of rape in the first degree under the third count.

The fourth count is sexual abuse in the first degree.  Under our law, a person is guilty of sexual abuse in the first degree when he subjects another person to

1    sexual contact by forcible compulsion.

2          Under our law, it is also an element of this

3    offense that the sexual act was committed without consent.

4          Sexual contact takes place without a person's

5    consent when the lack of consent results from forcible

6    compulsion.

7          Some of the terms used in this definition have

8    their own special meaning in our law.  I will now give you

9    the meaning of the terms sexual contact and forcible

10   compulsion.

11         Sexual contact means any touching of the sexual or

12   other intimate parts of a person for the purpose of

13   gratifying the sexual desire of either party.  It includes

14   the touching of the actor by the victim as well as the

15   touching of the victim by the actor, whether directly or

16   through clothing, as well as the emission of ejaculate by

17   the actor upon any part of the victim, clothed or unclothed.

18         Forcible compulsion means to intentionally compel,

19   either by the use of physical force or by a threat,

20   expressed or implied, which places a person in fear of

21   immediate death or physical injury to herself or another

22   person.

23         In order for you to find the defendant guilty of

24   this crime under count four, the People are required to

25   prove, from all the evidence in the case, beyond a

Jury Charge

1  reasonable doubt, both of the following two elements:

2            First:   That on or about July 16th, 2014, in the

3  County of New York, the defendant, Lonnie Harrell, subjected

4  Cypress Smith to sexual contact, specifically, contact

5  between the defendant's finger and the vagina of Cypress

6  Smith;

7            And, two:   That the defendant did so without

8  Cypress Smith's consent by the use of forcible compulsion.

9            Therefore, if you find that the People have proven

10  beyond a reasonable doubt both of those elements, you must

11  find the defendant guilty of the crime of sexual abuse in

12  the first degree as charged in the fourth count.

13            On the other hand, if you find that the People

14  have not proven beyond a reasonable doubt either one or both

15  of those elements, you must find the defendant not guilty of

16  the crime of sexual abuse in the first degree as charged in

17  the fourth count.

18            The fifth count is also sexual abuse in the first

19  degree.   Under our law, a person is guilty of sexual abuse

20  in the first degree when he subjects another person to

21  sexual contact by forcible compulsion.

22            Again, under our law, it is an element of this

23  offense that the sexual act was committed without consent.

24            Sexual contact takes place without a person's

25  consent when the lack of consent results from forcible

Joanne Fleming

1  compulsion.

2          Some of the terms used in this definition have

3  their own special meaning in our law.  I have previously

4  defined for you the terms sexual contact and forcible

5  compulsion.

6          In order for you to find the defendant guilty of

7  this crime under count five, the People are required to

8  prove, from all the evidence in the case, beyond a

9  reasonable doubt, both of the following two elements:

10         First:  That on or about July 16th, 2014, in the

11  County of New York, the defendant, Lonnie Harrell, subjected

12  Cypress Smith to sexual conduct, specifically, contact

13  between the defendant's mouth and the mouth of Cypress

14  Smith;

15         And, two:  That the defendant did so without

16  Cypress Smith's consent by use of forcible compulsion.

17         Therefore, if you find that the People have proven

18  beyond a reasonable doubt both of those elements, you must

19  find the defendant guilty of the crime of sexual abuse in

20  the first degree as charged in the fifth count.

21         On the other hand, if you find that the People

22  have not proved beyond a reasonable doubt either one or both

23  of those elements, you must find the defendant not guilty of

24  the crime of sexual abuse in the first degree as charged in

25  the fifth count.


Joanne Fleming


A852

1       The sixth count is criminal sexual act in the

2   third degree.  Under our law, a person is guilty of criminal

3   sexual act in the third degree when, being twenty-one years

4   old or more, he engaged in oral sexual conduct with a person

5   who is incapable of consent by reason of being less than

6   seventeen years of age.

7       I previously defined for you the meaning of the

8   term oral sexual conduct.  I will now define for you the

9   meaning of the term incapable of consent.

10      Under our law, a person is incapable of consenting

11  to oral sexual conduct when that person is less than

12  seventeen years of age.

13      Thus, the law deems oral sexual conduct with such

14  person without -- to be without that person's consent even

15  if in fact that person did consent.

16      It is not a defense to a charge of criminal sexual

17  act in the third degree that the actor did not know that the

18  person with whom the actor had sexual conduct was less than

19  seventeen years of age or that the actor believed that such

20  person was seventeen years of age or more on the day of the

21  crime.

22      In order for you to find the defendant guilty of

23  this crime, the People are required to prove, from all of

24  the evidence in the case, beyond a reasonable doubt, each of

25  the following three elements:

Joanne Fleming

A853

First:  That on or about July 16th, 2014, in the County of New York, the defendant, Lonnie Harrell, engaged in oral sexual conduct with Cypress Smith, specifically, contact between the defendant's mouth and the vulva of Cypress Smith;

Two:  That the defendant was twenty-one years of age or older at the time;

Three:  That Cypress Smith was incapable of consent because she was less than seventeen years of age.

Therefore, if you find that the People have proven beyond a reasonable doubt all three of those elements, you must find the defendant guilty of the crime of criminal sexual act in the third degree as charged in the sixth count.

On the other hand, if you find that the People have not proven beyond a reasonable doubt any one or more of those elements, you must find the defendant not guilty of the crime of criminal sexual act in the third degree as charged in the sixth count.

The seventh and final count is also criminal sexual act in the third degree.  Under our law, a person is guilty of criminal sexual act in the third degree when, being twenty-one years of age or older, he engages in oral sexual conduct with a person who is incapable of consent by reason of being less than seventeen years of age.

Joanne Fleming

A854

1    I previously defined for you the meaning of the

2    terms oral sexual conduct and incapable of consent.

3         In order for you to find the defendant guilty of

4    this crime, under count seven, the People are required to

5    prove, from all the evidence in the case, beyond a

6    reasonable doubt, each of the following three elements:

7         First:  That on or about July 16th, 2014, in the

8    County of New York, the defendant, Lonnie Harrell, engaged

9    in oral sexual conduct with Cypress Smith, specifically,

10   contact between the defendant's penis and the mouth of

11   Cypress Smith;

12        Two:  That the defendant was twenty-one years of

13   age or older at the time;

14        And, three:  That Cypress Smith was incapable of

15   consent because she was less than seventeen years of age at

16   the time.

17        Therefore, if you find that the People have proven

18   beyond a reasonable doubt all three of those elements, you

19   must find the defendant guilty of the crime of criminal

20   sexual act in the third degree as charged in the seventh

21   count.

22        On the other hand, if you find that the People

23   have not proven beyond a reasonable doubt any one or more of

24   those elements, you must find the defendant not guilty of

25   the crime of criminal sexual act in the third degree as

1  charged in the seventh count.

2  We have now reached that part of my charge dealing

3  with the process of deliberations.  Your verdict, on each

4  count you consider, whether guilty or not guilty, must be

5  unanimous.

6  No one expects that all jurors will have the same

7  view of the case when they first enter the jury room.  To

8  reach a unanimous verdict, you must deliberate with the

9  other jurors.  That means, you should discuss the evidence

10  and consult with each other.  Listen to each other.  Give

11  each other's views careful consideration and reason together

12  when considering the evidence.

13  And when you deliberate, you should do so with a

14  view towards reaching an agreement, if that can be done

15  without surrendering individual judgment.

16  Each of you must decide the case for yourself but

17  only after a fair and impartial consideration of the

18  evidence with the other jurors.

19  You should not surrender your honest view of the

20  evidence simply because you want the trial to end or because

21  you're outvoted.  At the same time, you should not hesitate

22  to re-examine your views and change your minds if you become

23  convinced that your position was not correct.

24  In other words, when you enter the jury room, you

25  may have individually reached certain tentative opinions and

Joanne Fleming

conclusions.  Before finalizing those opinions and conclusions, you should deliberate with the other jurors.

You must be open to reason and be willing to adhere to your opinion or conclusions if persuaded that you are correct, or to change your opinion or conclusions if persuaded that you are not correct.

In the interests of justice, please make every effort consistent with your conscious and evidence in the case.  Harmonize your views and decisions with those of your fellow jurors and make every effort to come to a unanimous agreement based on the law and the facts of the case.

To the best of your ability, I ask you to apply common sense and good judgment.  Do not let fear, favor, sympathy, bias, prejudice or consideration of a possible sentence or punishment sway your minds in any way in analyzing the testimony.  Decide this case as you have promised, fairly on the evidence and on the law, whether you agree with the law or not.

Some jurors took notes.  Any notes taken are only an aid to your memory and must not take precedence over your independent recollection.  Those jurors who chose not to take notes must rely on their own independent recollection and must not be influenced by any notes that another juror may have taken.

Any notes you took are only for your own personal

1  use in refreshing your recollection.  A juror's notes are

2  not a substitute for the recorded transcript of the

3  testimony or for any exhibit received in evidence.

4       If there is a discrepancy between a juror's

5  recollection and his or her notes regarding the evidence,

6  you should ask to have the relevant testimony read back or

7  the exhibit produced in the jury room.

8       In addition, a juror's notes are not a substitute

9  for the detailed instructions I have given you of the

10  principles of law that govern this case.  If there is a

11  discrepancy between a juror's recollection and his or her

12  notes regarding those principles, you should ask me to

13  explain those principles again and I will do so.

14       In the course of your deliberations, if your

15  recollection of any part of the testimony should fail, or if

16  you find yourselves in doubt concerning my instructions to

17  you on the law, you may request a readback.  Your foreperson

18  should write out your request, sign it and give the request

19  to the court officer to be delivered to the Court.  As soon

20  as I can determine the appropriate response to your request,

21  or the requested testimony can be located by the court

22  reporter, you will be called back to the courtroom and I

23  will respond to your request.

24       Try to tell us the portion of the testimony you

25  need, direct or cross.  Otherwise we may have to read the

1   entire testimony.   Try to be specific in your request.   It

2   does take us a little longer to find what you want, but it

3   will save you the time and the distraction of listening to

4   testimony that you don't need for your deliberations.

5          Of course, when testimony is read back, questions

6   to which an objection was sustained and material otherwise

7   struck from the record is not read back.

8          If you have a question on the law, write me a note

9   specifying what you want me to review with you.

10          Under our law, the first juror selected,

11   Mr. Alexander, is known as the foreperson.   During

12   deliberations, the foreperson's opinion and vote are not

13   entitled to any more importance than that of any other

14   juror.

15          What we ask the foreperson to do during

16   deliberations is to sign any written note that the jury

17   sends to the Court.   The foreperson does not have to write

18   the note or agree with its contents.   The foreperson's

19   signature only indicates that the writing comes from the

20   jury.   The foreperson may also chair the jury's discussions

21   during deliberations.

22          When the jury has reached a verdict, guilty or not

23   guilty, the entire jury will be asked to come into court.

24   The foreperson will be asked whether the jury has reached a

25   verdict.   If the foreperson says yes, he will then be asked

Joanne Fleming

A859

1  what the verdict is for each charged crime.  After that, the

2  entire jury will be asked whether if that is their verdict

3  and will answer yes or no.

4  Finally, upon the request of a party, each juror

5  will be asked individually whether the announced verdict is

6  the verdict of that juror, and then, upon being asked, each

7  juror will answer yes or no.

8  I will give you a form known as a verdict sheet.

9  The verdict sheet lists each count submitted for your

10  consideration and the possible verdicts.  Please use the

11  form to record your verdict with an X or checkmark in the

12  appropriate place.

13  In addition to listing the counts, I have added

14  additional information on the verdict sheet in order to

15  distinguish between the various counts.

16  Finally, there are a few remaining rules which you

17  must observe during your deliberations:

18  First:  While you are here in the courthouse

19  deliberating on the case, you will be kept together in the

20  jury room.  You may not leave the jury room without

21  permission.

22  If you have a cell phone or other electronic

23  device, please give it to a court officer to hold for you

24  while you are engaged in deliberations.

25  You must deliberate only when you're all gathered

Joanne Fleming

A860

1  together in the jury room.  You must not, for example,

2  discuss the case as you go to and from the courtroom.  It is

3  important that each juror have the opportunity to hear

4  whatever another juror has to say about the case and that,

5  by law, must only be done when you're all gathered together

6  in the jury room.  Thus, if for any reason all twelve of you

7  are not gathered together in the jury room, please stop your

8  deliberations.

9      During your deliberations, you must only discuss

10  the case amongst yourselves.  You must not discuss the case

11  with anyone else, including the court officer, or permit

12  anyone other than a fellow juror to discuss the case in your

13  presence.

14      If you have a question or request, you must

15  communicate with me by writing a note which you will give to

16  a court officer to give to me.  The law requires that you

17  communicate with me in writing, in part, to make sure there

18  are no misunderstandings.  Give the note to a court officer

19  who, in turn, will give it to me.  When the jury room door

20  is open to give the court officer the note, please stop

21  deliberating until the officer has left and the door is

22  closed.

23      In any note that you send me, do not tell me what

24  the vote of the jury is on any count.

25      I should explain that under our law, I am not

Joanne Fleming

A861

1   permitted to have a conversation about the facts of the case

2   or a possible verdict or the vote of the jury on any count

3   with any one juror or group of jurors or even the entire

4   jury.  If a juror wants to speak with me during

5   deliberations, a meeting here in the courtroom with the

6   parties will be arranged.

7        No juror, however, can tell me what is being said

8   about the facts of the case or a possible verdict or what

9   the vote of any juror or the jury is on any count.  While I

10  will, of course, listen to whatever a juror has to say, if

11  it does involve those subjects, I may not be able to respond

12  to that juror if the response involves instructions on the

13  law.  I may be required to call into court the entire jury

14  and respond by speaking to the entire jury.

15       The reason for that is that our law wants to make

16  sure each and every juror hears at exactly the same time

17  whatever I have to say about the law, and our law wants to

18  make sure that the jury hears those instructions from me and

19  not from another juror.

20       That concludes my instructions on the law.

21       Can counsel please approach?

22       (Whereupon, the following proceedings took place

23  on the record and outside the presence of the jury:)

24       THE COURT:  Are there any exceptions to the

25  charge?


Joanne Fleming

Jury Charge

```
1              MR. HERLICH:  Yes, Judge, a couple of things.

2          Do you have the verdict sheet, just may I see it

3    real quickly?

4              THE COURT:  Brian, verdict sheet.

5              THE CLERK:  (Handing.)

6              THE COURT:  For the record, the verdict sheet was

7    shown to both of you in advance and you both initialed it,

8    right?

9              MS. PARK:  I did.

10             THE CLERK:  (Handing.)

11             MR. HERLICH:  Yeah, the spreadsheet, I agree with

12   it.

13             I have two things.  One is, I thought that the

14   expert was Dean Delitta and not Joseph Sierra.

15             MS. PARK:  Yes, the expert, there was a mistake.

16             THE COURT:  There was a mistake as to the experts?

17             MS. PARK:  Yes.  It was Jeannie Tamariz.

18             MR. HERLICH:  Yes.

19             MS. PARK:  And then Dean Delitta, not Joseph

20   Sierra.

21             MR. HERLICH:  Dean Delitta was the cell phone site

22   expert.

23             THE COURT:  And not Joseph Sierra.

24             MS. PARK:  Correct.

25             And Dr. Singh was also an expert.
```

Joanne Fleming

A863

1      MR. HERLICH:  Right.

2      THE COURT:  Okay.

3      Anything else?

4      MR. HERLICH:  The only other objection or request

5  for a change is the charge as to count number one, your

6  Honor, and I'm sorry that I didn't catch it earlier, it

7  defines oral sexual conduct to mean the contact between the

8  defendant's mouth and either the vulva or vagina of the

9  complaining witness.  And the indictment indicts only as to

10  the vulva.

11      THE COURT:  Would you like me to correct that?

12      MR. HERLICH:  Please.

13      And that completely conforms to the verdict sheet

14  which I agree with.

15      THE COURT:  Okay, thank you.

16      MR. HERLICH:  Thank you.

17      THE COURT:  What do you want to do with the

18  alternates?

19      MR. HERLICH:  I would agree to discharge them.  I

20  don't believe I will substitute them.

21      THE COURT:  Okay.

22      What do you want to do with the evidence, just

23  send it in if requested?

24      MR. HERLICH:  Sure.

25      (Whereupon, the following proceedings took place

Joanne Fleming

A864

1       on the record and in the presence of the jury:)

2               THE COURT:  We have a few corrections.

3               When I identified the expert witnesses, I referred

4       to Jeannie Tamariz and Joseph Sierra.  That was a mistake.

5       It's Jeannie Tamariz and Dean -- sorry -- Dean Delitta and

6       Dr. Anjay Singh.  Those are the three experts.

7               One other correction.  Under count one when I

8       defined oral sexual conduct, I defined it as conduct between

9       persons consisting of contact between the mouth and the

10      vulva or vagina.  It should not include vagina.  It should

11      be vulva.  So, oral sexual conduct under this count which

12      means persons consisting of contact between the mouth and

13      the vulva.  Some of this will make a little bit more sense

14      once you actually see the verdict sheet and you see the

15      additional language I have included.

16              Jurors, it's about five after four.  I will allow

17      you to deliberate to four-twenty-five or so, then I will

18      call you back in and I will excuse you at about four-forty

19      and ask you to come back tomorrow at nine-thirty.

20              So, at this time you can begin your deliberations.

21              Please remember that if you have a request, just

22      send me a note, it must be signed by your foreperson.  And

23      please include the date and time on the note.

24              I will ask the four alternates jurors just please

25      step aside for one minute to allow the twelve jurors to step

1    out.

2                 MR. HERLICH:  Your Honor?

3                 THE COURT:  Sorry, one second.

4                 MR. HERLICH:  I don't know if you told them they

5    need to write a note just for physical exhibits.  You don't

6    have to tell them that, no?

7                 THE COURT:  No.

8                 Okay, you can step out.

9                 A COURT OFFICER:  This way, please.

10                (Whereupon, the jury exited the courtroom.)

11                THE COURT:  I will ask the four alternates, you

12   can have a seat in the front row, if you want.

13                Addressing the four alternate jurors, you have

14   obviously been separated from the twelve jurors at this

15   time, and, unfortunately, you will not have the opportunity

16   to deliberate with them.

17                Your jury service will come to an end at this

18   time, but I wanted to just take a minute to thank you for

19   your jury service.  Even though you actually won't get a

20   chance to deliberate, we couldn't do these trials without

21   alternate jurors.

22                I can tell you personally that I have had many

23   trials that I have used every single one of my alternate

24   jurors.  If we didn't have alternate jurors available, we

25   would have to declare a mistrial and do the whole thing over

1    again.

2         I also recognize when you give us your time you

3    disrupt your life.  And I don't take that lightly.  So at

4    this point I just want to thank you very much for your

5    service.

6         You will recall that during the course of the

7    trial I gave you certain admonitions and gave these to you

8    numerous times.  Among those was you can't discuss this case

9    amongst yourselves or with anyone else.  I just want to let

10   you know that that no longer applies.  You are free to

11   discuss the case with anyone that you would like to talk to

12   about it, but you're also free not to.  Nobody can make you

13   do anything you don't want to.

14        At this time I do excuse you with the gratitude of

15   the Court.  Thank you.

16        You can step out.

17        A COURT OFFICER:  Jurors, follow me.

18        (Whereupon, the alternate jurors exited the

19   courtroom.)

20        THE COURT:  Sergeant, if we can just, you know,

21   put him back till four-twenty-five and I will be down at

22   that time.

23        THE SERGEANT:  Sure.

24        MS. PARK:  Judge, there is something that I need

25   to address.  We do have -- we do have an agreement with most

1    of the redaction, but I'd like to renew my application for

2    the redacting of the threats that the victim had used here.

3            THE COURT:  Okay.  I had already ruled on that,

4    right?

5            MS. PARK:  Yes.

6            THE COURT:  Okay.

7            MS. PARK:  But -- well, since your Honor's ruling,

8    there was testimony from the doctor -- well, first of all,

9    it is my position that Mr. Herlich actually opened the door

10   because he crossed Cypress about the threats and he actually

11   read the part about the threats onto the record.  That's

12   one.

13           And, two, when Dr. Singh testified, she did

14   testify that she considers everything that happens regarding

15   an incident in determining treatment plans and discharge

16   plans.

17           So, my position is any verbal threats become

18   relevant here.

19           MR. HERLICH:  Judge, I did discuss this with Ms.

20   Park on Friday in her office, and only with regard to the

21   narrative in the comprehensive sexual assault form, which I

22   read to the complainant, I will consent to the one sentence

23   that says I was threatened, but the various mentions of

24   threat throughout the medical record, I would not consent to

25   being unredacted and I did not cross-examine anyone about

```
 1   those threats.  For example, the threat that said he's going
 2   to kill me and my entire family which is in part of the
 3   medical record, that, the Court has ruled on.
 4            Just to be very clear, your Honor, I'd like to
 5   hand up to the Court the --
 6            THE COURT:  That's not necessary.
 7            MR. HERLICH:   Okay.
 8            It's in the comprehensive sexual assault form, I
 9   read it to the jury, I read it to the complainant, and I
10   believe I don't think -- I did not read it to Dr. Singh
11   because she didn't take the data.
12            Originally the Court said patient was threatened
13   by neighbor would be redacted, and during my cross of the
14   complainant, when I wanted to point out that she was asked
15   by the defendant to do all these things, I sua sponte, in a
16   sense, Judge, thought it was only fair that I ask her:  But
17   you were also threatened, you also indicated that at the
18   time that the narrative was taken, and she said yes.
19            So, but anything else that I never touched on, I
20   would again renew my application to keep that redacted.
21            THE COURT:  I agree.  So, to the extent that
22   you're in agreement that that one portion can come in, and
23   that's fine, but if you agree, then I have no problem with
24   it.
25            I don't believe that anything else that transpired
```

Joanne Fleming

A869

1   during the course of the trial in any way serves to alter my

2   previous ruling on that issue.

3            Alright, I will see you in a few minutes.

4            MR. HERLICH:   Thank you.

5            THE CLERK:   Are exhibits just going in?

6            THE COURT:   They are just going in if requested.

7            (Whereupon, jury deliberations took place.)

8            THE CLERK:   Continuing case on trial, People

9   versus Lonnie Harrell.

10            THE COURT:   Sergeant, whenever you want to bring

11   them in, please.

12            Any notes, any requests?

13            A COURT OFFICER:   No.

14            THE CLERK:   Nothing.

15            A COURT OFFICER:   Jury entering.

16            (Whereupon, the jury entered the courtroom.)

17            THE CLERK:   Continuing case on trial, People

18   versus Lonnie Harrell.

19            All parties, except for the defendant, and all

20   parties and all jurors are present.

21            THE COURT:   Good afternoon.

22            Today's proceedings are now drawing to a close and

23   I'm about to read to you the admonitions that I read to you

24   throughout the trial.   I will just note that those

25   admonitions take on special significance at this point

1   because you are at a critical stage of the proceedings, you

2   are in the middle of the deliberations.

3           So, I remind you:  Please do not talk either

4   amongst yourselves or with anyone else about anything

5   related to the case.

6           Do not request, accept, agree to accept or discuss

7   with any person, the receipt or acceptance of any payment or

8   benefit in exchange for supplying any information concerning

9   the trial.

10          You must promptly report directly to me any

11  incident within your knowledge involving an attempt by any

12  person to improperly influence you or any member of the

13  jury.

14          Do not visit or view any of the locations

15  discussed in the testimony.

16          Do not read, view or listen to any accounts or

17  discussions of the case reported by newspapers, television,

18  radio, the Internet or any other news media.

19          Do not attempt to research any fact, issue or law

20  related to the case whether by discussion with others or

21  research in a library or on the Internet or any other means

22  or source.

23          I want to emphasize that in addition to not

24  talking face to face with anyone about the case, you must

25  not communicate with anyone about the case by any other

means, including by telephone, text messages, e-mail,

Internet chatrooms, blogs and social websites and the like.

You must not provide any information about the

case to anyone by any means whatsoever, and that includes

the posting of information about the case or what you are

doing on the case on any device or Internet site, including

blogs.

And you must not Google or otherwise search for

any other information about the case or the law which

applies to the case or the people involved in the case,

including the defendant, the witnesses, the lawyers or

myself.

I ask you to please be back tomorrow at

nine-thirty and the court officers will show you into the

jury room when it's time.

I do remind you that you cannot begin your

deliberations until all twelve of you are present.  So even

if you're all there early and one of you is missing, you

have to wait.  You cannot begin your deliberations, okay?

Hope you have a good night.  See you tomorrow.

A COURT OFFICER:  Leave your books on your chairs,

make sure you have all your belongings and step this way,

please.

(Whereupon, the jury exited the courtroom.)

THE COURT:  Okay, addressing the attorneys, you

1   don't need to be here at nine-thirty.  In fact, you don't

2   have to be here at all as long as we can reach you and you

3   can get here, say, within ten minutes.

4           I am going to be starting a hearing tomorrow, but

5   that shouldn't interfere with anything that we have going

6   on.

7           MR. HERLICH:  Okay.

8           THE COURT:  Okay, have a good night.

9           (Whereupon, the trial was adjourned to Tuesday,

10  October 6th, 2015.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Joanne Fleming

522

```
 1   SUPREME COURT OF THE STATE OF NEW YORK
     COUNTY OF NEW YORK:  CRIMINAL TERM:   PART 59
 2   ----------------------------------------x
 3   THE PEOPLE OF THE STATE OF NEW YORK          Indictment
                                                  No. 4258/14
 4
                    -against-                     Crim. Sex Act 1
 5
                                                  Jury Trial
 6   LONNIE HARRELL,

 7                         Defendant.

 8   ----------------------------------------x

 9                                    October 6th, 2015

10                                    100 Centre Street
                                      New York, NY  10013
11

12   B e f o r e:

13                     HONORABLE JUAN M. MERCHAN,

14                                        Justice.

15

16   Appearances:

17
                      CYRUS R. VANCE, JR., ESQ.
18                    District Attorney, New York County
                      BY:  JUNG PARK, ESQ.
19                         Assistant District Attorney

20
                      THEODORE HERLICH, ESQ.
21                    Attorney for Defendant

22

23

24
                                      Joanne Fleming
25                                    Senior Court Reporter
```

10/6/15

```
 1                    (In open court)

 2                    THE CLERK:  Continuing case on trial.

 3                    (Whereupon, jury deliberations took place.)

 4                    THE CLERK:  Calling case on trial, People versus

 5    Lonnie Harrell.

 6                    THE COURT:  Okay, good afternoon.

 7                    Your appearances, please.

 8                    MR. HERLICH:  Theodore Herlich for Lonnie Harrell.

 9                    MS. PARK:  And Jung Park for the People.

10                    Good afternoon, your Honor.

11                    THE COURT:  Okay, good afternoon.

12                    We received a note, it's been marked as Court

13    Exhibit Number III and it was signed by the jury foreperson

14    at twelve-fifteen.

15                    I noticed that the court officer gave the note to

16    both of the attorneys to review, is that correct, you had a

17    chance to read this?

18                    MR. HERLICH:  Yes.

19                    MS. PARK:  Yes.

20                    THE COURT:  I will now read it.  It says:  We, the

21    jury, request one:  Witness Cypress Smith's testimony to

22    both prosecution and defense regarding the position of

23    defendant's penis in relation to witness' vulva slash

24    vagina, including witness' statements that the defendant

25    quote moved to and that she quote asked him to stop because
```

1   it would hurt and he responded that quote it would not hurt

2   if you relaxed.

3         And, two:  The Judge's instructions regarding

4   charge number three.

5         Did I read that correctly?

6         MS. PARK:  Yes.

7         MR. HERLICH:  Yes.

8         THE COURT:  Okay.

9         How long do you think it would take you to

10  identify the relevant sections?

11        MR. HERLICH:  Not long.

12        MS. PARK:  Not long.

13        MR. HERLICH:  I think I already have it.

14        THE COURT:  So, do you want me to give you a few

15  minutes to do that?

16        MR. HERLICH:  (Indicating.)

17        THE COURT:  Okay.

18        MS. PARK:  Judge?

19        THE COURT:  Because in the alternative, what we

20  can do is, I can bring them in and excuse them for lunch.

21  It's up to you.

22        MR. HERLICH:  I mean, I know the direct on this

23  point and the cross, because it was part of my summation.

24        THE COURT:  Okay.

25        MR. HERLICH:  So...

1          THE COURT:  Okay, that's fine.

2          MS. PARK:  Judge, I just wanted to know whether we

3   should make a record about the defendant not being here.

4          THE COURT:  We are.  Yes, I apologize, I meant to

5   do that.

6          The defendant is in the holding pen right next

7   door.  Would you like to ask him if he would like to come

8   join us?

9          MR. HERLICH:  I assume it was about leg shackles.

10         THE SERGEANT:  And the cuff in the front.

11         MR. HERLICH:  Yes, he -- we can ask him to come.

12  I expect that his position will not have changed since

13  yesterday, that he won't come to court being shackled, so...

14  but yes, we should ask him.

15         THE COURT:  Sergeant, if you wouldn't mind asking

16  him, please.

17         (Sergeant complies.)

18         THE COURT:  Yes?

19         THE SERGEANT:  The defendant was asked if he would

20  like to attend his appearance, he would be in shackles as

21  well as dealing with cuffs with the belt in front, and he

22  stated he would like to come into the courtroom.

23         THE COURT:  Okay, great.  So let's bring him in.

24         Sergeant?  Can I ask you a question, sergeant?

25         THE SERGEANT:  Yes, sir.

Joanne Fleming

A877

1      (Judge conferring with Sergeant.)

2      THE SERGEANT:  Sergeant Gelormino.

3      Normally what constitute leg shackles, as we're

4  dealing with, is a D link belt.  It's fastened in the front

5  with handcuffs through a metal buckle which would stop the

6  defendant from raising his hands up and striking.

7      THE COURT:  Sure.

8      THE SERGEANT:  The testimony that was going to be

9  given would have been given with the leg shackles on in case

10  the defendant had to make any type of motion.  That way it

11  wouldn't lead to --

12      THE COURT:  Right.

13      THE SERGEANT:  -- the jury seeing that he was

14  being restrained.

15      THE COURT:  Exactly.

16      THE SERGEANT:  His presence at the table, I will

17  call down to the lieutenant and find out.  Normally,

18  protocol at the table would be the shackles, which would be

19  hidden by the bunting, as well as the D link belt and the

20  defendant is moved up close to the table where the jury

21  cannot see either of the two.

22      THE COURT:  Okay.

23      And he's already agreed to that?

24      THE SERGEANT:  He agreed to it.  Said to him:  It

25  will be shackles and a D link, okay?

1    When they go in, we'll find out for sure.  I have

2    to assume, and I hate to use that word, that the defendant

3    does understand what the D link belt is.

4              THE COURT:  Okay.

5              THE SERGEANT:  I will confer with my lieutenant.

6              A COURT OFFICER:  He's on his way up.

7              THE COURT:  He's on his way up, okay.

8              I was just wondering because, again, I bent over

9    backwards to stress that, when it comes to matters of

10   security, I defer to the sergeant and the court officers.

11             However, if it can be arranged for his hands not

12   to be in the D link belt, just so that he doesn't have to

13   worry about hiding his hands under the table or behind the

14   bunting when the jury comes in for the readback, I'd

15   appreciate that.  If you still have the concerns and the

16   lieutenant still has the concerns, I understand that.

17             THE SERGEANT:  Great.

18             We will have an answer momentarily.

19             THE COURT:  Yes, thank you.

20             MR. HERLICH:  Judge, we have found direct and --

21   direct, cross and redirect.  There is a question about

22   whether a certain question and answer should come in as

23   responsive to the --

24             THE COURT:  Okay, what question and answer is

25   that?  What page number?

Joanne Fleming

| | |
|---|---|
| 1 | MR. HERLICH:  Page 94 line 25 through page 95 line |
| 2 | 2. |
| 3 | THE COURT:  Page 94 line 25? |
| 4 | MR. HERLICH:  Yes. |
| 5 | THE COURT:  Okay. |
| 6 | Through page 95. |
| 7 | MR. HERLICH:  The redirect begins at line 18, your |
| 8 | Honor. |
| 9 | THE COURT:  Okay. |
| 10 | MR. HERLICH:  And it's my position it should end |
| 11 | at line 24 and the prosecutor would like line 25, that |
| 12 | question, continuing to page 95 line 2. |
| 13 | THE COURT:  Okay. |
| 14 | "Question:  Did he stop?  Did he stop with |
| 15 | everything at that point? |
| 16 | "Answer:  No. |
| 17 | "Question:  Did he continue? |
| 18 | "Answer:  Yes. |
| 19 | "Question:  What was the next incident after that? |
| 20 | "Answer:  He put his mouth on my vagina." |
| 21 | It seems pretty clear to me that that's responsive |
| 22 | to the jury's question. |
| 23 | MR. HERLICH:  Alright. |
| 24 | If that's your position, your Honor, then on page |
| 25 | 95, I was going to ask you read up to and including line 6. |

Joanne Fleming

1    So we know what the prosecutor was following up with after

2    the penis vagina stuff.

3              THE COURT:  That's fine.

4              MS. PARK:  That's fine.

5              THE COURT:  Okay.

6         So, do you have all of the sections now?

7              MS. PARK:  Yes, we have an agreement.

8              THE COURT:  And, approximately, just how many

9    pages are we talking about?

10              MS. PARK:  Very little.

11              MR. HERLICH:  It's page 64 lines eight through

12    eighteen.

13              THE COURT:  Right.

14              MR. HERLICH:  Do you want --

15              THE COURT:  I'm not writing it down.  I want to

16    get a sense of how many pages.

17              MR. HERLICH:  Page 90 line 24 through page 91 line

18    12.  Page 94 line 18 through page 95 line 6.

19              THE COURT:  Okay, that should be very brief.

20         And given the time of this readback, I'm not going

21    to excuse them for lunch at one.  I'm going to -- I'm going

22    to excuse them for lunch at one-thirty.  This way, after

23    they hear the readback and they hear my instructions as to

24    count three which they requested, they'll have a little time

25    to deliberate and digest it.

1              Any objection to that?

2              MR. HERLICH:  No.

3              MS. PARK:  No.

4              MR. HERLICH:  Has the lunch order been taken so

5     they know it's taken?

6              THE COURT:  No lunch order has been taken.  They

7     will be excused for lunch at one-thirty.

8              MR. HERLICH:  Oh, they go out.  I didn't know

9     that.  Is that new, your Honor?  I didn't -- I don't mean to

10    be sarcastic.

11             THE COURT:  Yeah, it's been in place for about

12    five years now.  We're not supposed to really give a lunch

13    unless there is a reason to believe that that will expedite

14    things.

15             MR. HERLICH:  You know, I'm sorry, I didn't know

16    that.

17             THE COURT:  You don't need to be sorry.  In the

18    good old days, yes, everybody got lunch.  Now it's on a case

19    by case basis.

20             MR. HERLICH:  Okay.

21             THE COURT:  Apparently you've been appearing

22    before the judges who are not following the rules.

23             MR. HERLICH:  Off the record.

24             (Whereupon, a discussion was held at the bench and

25    off the record.)


                        Joanne Fleming

1    THE SERGEANT:  Judge, upon consulting with my

2    lieutenant, Lieutenant McGee, protocol is he will have to

3    stand for the restraints being the normal protocols of

4    shackles as well as the D ring security belt.

5         THE COURT:  Thank you for asking.

6         THE SERGEANT:  Just to make sure that Mr. Harrell

7    understood what it was, I'm going to go back in and just

8    confirm that he doesn't think it's only going to be for

9    transportation out to here.

10        THE COURT:  You know what?  I -- my suggestion is

11   that we not -- and it's your client, Mr. Herlich, if you

12   disagree, please jump in -- my suggestion is we not

13   highlight that, that we bring him out.  He will realize soon

14   enough when he sits the shackles are not being taken off.

15        THE SERGEANT:  Okay.

16        THE COURT:  If he has an issue at that point, he

17   can ask to be removed.

18        Do you agree?

19        MR. HERLICH:  That's fine.

20        THE COURT:  I am concerned, given his personality,

21   to highlight it or flag it might become an issue that was

22   not an issue before.

23        THE SERGEANT:  Certainly.

24        THE COURT:  Okay, thank you.

25        And, of course, there's no disagreement as to just

1   rereading all of count three again, right?

2            MS. PARK:  No.

3            MR. HERLICH:  No, not at all.

4            (Court conferring with sergeant.)

5            THE COURT:  Just in discussing with the sergeant a

6    little bit further, what else we can possibly do to protect

7    the rights of the defendant, the sergeant has indicated that

8    when he enters the courtroom, he will stand kind of in front

9    of the defendant to block the jury's view of his hands as

10   they enter.

11           THE SERGEANT:  More so behind you, Mr. Herlich.

12           MR. HERLICH:  Okay.

13           THE SERGEANT:  Rather than behind the defendant.

14   So they're basically forced to go off at the

15   angle.

16           THE COURT:  And not be able to see his hands are

17   in the D link --

18           MR. HERLICH:  Okay.

19           THE COURT:  -- belt.

20           MR. HERLICH:  Okay.

21           THE COURT:  Alright?

22           MR. HERLICH:  Alright.

23           THE COURT:  I'm just trying to do everything we

24   can to make sure, you know, that he gets a fair trial.

25           MR. HERLICH:  (Indicating.)

Joanne Fleming

1          Just one last thing.  I keep looking at the

2    redirect by Ms. Park.  I will just note that I'll object --

3    for what it's worth, your Honor, I will object to the

4    material beginning at page 94 line 25 through page 95 line

5    6.

6          THE COURT:  In other words, what I just ruled on.

7          MR. HERLICH:  Yes.  I just wanted to note my

8    objection.

9          THE COURT:  I think it's clear from the jury note,

10   and I will read the note again:  Witness Cypress Smith's

11   testimony to both prosecution and defense regarding the

12   position of defendant's penis in relation to witness' vulva

13   slash vagina, including witness' statements that the

14   defendant quote moved to and that she quote asked him to

15   stop because it would hurt and he responded that quote it

16   would not hurt if you relaxed.

17          I think that last section where she asked him to

18   stop because it would hurt and he responded that it would

19   not hurt if you relaxed, this is clearly right in line with

20   that, with that whole line of their concern.  So I think

21   it's part of that.

22          Good afternoon, Mr. Harrell.

23          (Whereupon, the defendant entered the courtroom.)

24          THE COURT:  How are you today?

25          THE DEFENDANT:  (Indicating.)

Joanne Fleming

A885

| | |
|---|---|
| 1 | THE COURT:  I think you made a very wise choice |
| 2 | coming out to join us.  I'm glad you made that decision. |
| 3 | We received a jury note.  Mr. Herlich, do you need |
| 4 | a minute to explain to your client? |
| 5 | MR. HERLICH:  Just to explain to him what is |
| 6 | happening. |
| 7 | THE COURT:  Sure. |
| 8 | Let the record reflect that I just handed the |
| 9 | actual note so he can discuss it with Mr. Harrell. |
| 10 | A COURT OFFICER:  (Handing.) |
| 11 | (Counsel conferring with defendant.) |
| 12 | THE COURT:  You ready to go forward now, Mr. |
| 13 | Herlich? |
| 14 | MR. HERLICH:  Yes, I am. |
| 15 | THE COURT:  Okay. |
| 16 | You've brought your client up to speed what's |
| 17 | going on with the note? |
| 18 | MR. HERLICH:  Yes. |
| 19 | THE COURT:  Okay. |
| 20 | Let's bring the jury in, please. |
| 21 | MS. PARK:  Judge, before the -- |
| 22 | THE COURT:  Yes? |
| 23 | MS. PARK:  Page 64 line eight, there was a |
| 24 | typographical error.  So maybe we can agree on that? |
| 25 | THE COURT:  Do you agree? |

Joanne Fleming

A886

1              MR. HERLICH:  It should be:  Did anything else

2     happen as opposed to "did thing else happen."

3              THE COURT:  Okay.

4              MS. PARK:  And also the word "our."  It says "our

5     vagina."

6              MR. HERLICH:  Yes.

7              MS. PARK:  It should be "your vagina."

8              THE COURT:  Correct.

9              Let's give Joanne a minute or more to make sure

10    that she's located everything she needs to read and then you

11    can bring the jury.

12              Joanne, let me know when you're ready.

13              MR. HERLICH:  My client wanted to know why I did

14    not tell the jury in my summation that he wanted to testify

15    but couldn't testify.  And I said that's not how it works.

16              (Defendant conferring with counsel.)

17              MR. HERLICH:  He wants to know why all parties had

18    a discussion in the holding pen with whether the defendant

19    wanted to come out.

20              THE DEFENDANT:  In shackles.

21              MR. HERLICH:  In shackles.

22              And I'm trying to explain to my client the court

23    officers, who are responsible for security, made that

24    determination based upon certain conduct of the defendant

25    during the trial.

1          And, as a courtesy, to be -- to bend over

2    backwards to make sure you understood your options to be

3    present for your trial, the Judge and the prosecutor and

4    myself all came to inform you that you have a right to be

5    present at your trial and to testify, but that if you will

6    not agree to come in shackles that will be hidden from the

7    jury, then you will forfeit your right to be present, as

8    well as your right to testify on your own behalf.  And

9    that's why we came to the pen area to speak with you.

10          THE COURT:  And, so, he's asking why you didn't

11    say those things to the jury.

12          He would not be permitted to say those things to

13    the jury.  That's not permitted at a trial.  If you want to

14    communicate anything to a jury, you do so when you take the

15    stand and you chose not to do that.

16          THE DEFENDANT:  But not in no shackles.

17          THE COURT:  Right, but we already had that

18    discussion.

19          THE DEFENDANT:  I mean, that wasn't fair.  There

20    was no reason for me to be in no shackles.

21          THE COURT:  And we discussed this yesterday,

22    right?

23          THE DEFENDANT:  No.  We actually -- just one

24    sided.  That was, like, one sided.

25          THE COURT:  Well, that's not true, Mr. Harrell.

Joanne Fleming

A888

1    That's not true.  There's at least six people who were there

2    in the pens with me yesterday.  They all heard what

3    happened.  It wasn't one sided.

4              I was trying to engage you in a conversation.  I

5    treated you with respect.  I treated you like a man.  I was

6    trying to appeal to your sense of logic and common sense.

7    You were the one who, if anything, was interrupting me and

8    cutting me off.

9              And I did everything I could possibly do to bring

10   you out here so you could testify in your behalf, and at the

11   end of the day you said:  No, if I'm in the shackles, I'm

12   not going.  That's what happened.

13             THE DEFENDANT:  So why wouldn't they have to know

14   that?  I don't understand that.

15             THE COURT:  Because it's not relevant.  It's not

16   relevant to the ultimate issue in this case.  Why you

17   wouldn't come out here in shackles and why you were not in

18   the courtroom is not relevant to their findings of fact.

19             THE DEFENDANT:  So they're not supposed to know

20   I'm already incarcerated?

21             THE COURT:  There is a lot of things they're not

22   supposed to know, which we don't let them know in order to

23   make sure you get a fair trial, yes.

24             THE DEFENDANT:  Well, that would be fair for me

25   seeing --

1          THE COURT:  Mr. Harrell, we made that clear to

2    you.  They wouldn't have seen you in shackles.  We made that

3    clear to you yesterday.  Every precaution that could have

4    been taken would have been taken, including putting you on

5    the witness stand before the jury came out.

6          Okay, are we ready to bring the jury in, Mr.

7    Harrell?

8          THE DEFENDANT:  I don't have a choice, do I?

9          THE COURT:  Well, I just want to make sure your --

10   that you will continue to conduct yourself as a gentleman.

11         THE DEFENDANT:  What did I do wrong the first

12   time?  I never did anything wrong.

13         THE COURT:  Alright, let's bring the jury in,

14   please.

15         A COURT OFFICER:  Jury entering.

16         (Whereupon, the jury entered the courtroom.)

17         THE CLERK:  Continuing case on trial, People

18   versus Lonnie Harrell.

19         All parties and all jurors are present.

20         THE COURT:  Good afternoon, jurors.  Welcome back.

21         Jurors, we received your note.  It was signed by

22   your jury foreperson at twelve-fifteen, and it's been marked

23   as Court Exhibit Number III and it reads as follows:

24         We, the jury, request one:  Witness Cypress

25   Smith's testimony to both prosecution and defense regarding

Joanne Fleming

A890

1    the position of defendant's penis in relation to witness'

2    vulva slash vagina, including witness' statements that the

3    defendant quote moved to and that she quote asked him to

4    stop because it would hurt and he responded that quote it

5    would not hurt if you relaxed.

6              And, two:  The Judge's instructions regarding

7    charge number three.

8              Mr. Foreperson, did I read that note correctly?

9              THE FOREPERSON:  Yes, you have, your Honor.

10             THE COURT:  Okay.

11             We're prepared to give you that readback.  It's

12   pretty brief.  We will read that back to you, and then after

13   the court reporter reads that back to you, I will read to

14   you again the charge for count three.

15             (Whereupon, the requested testimony was read

16   back.)

17             THE COURT:  Jurors, at this time I will read to

18   you count three again.

19             The third count is an attempt to commit the crime

20   of rape in the first degree.  I will instruct you first on

21   the definition of the crime of rape in the first degree,

22   then I will define for you an attempt to commit a crime,

23   finally, I will put both definitions together and list for

24   you the elements of an attempt to commit the crime of rape

25   in the first degree.

1          Under our law, a person is guilty of rape in the

2     first degree when he engages in sexual intercourse with

3     another person by forcible compulsion.

4          Under our law, it is also an element of this

5     offense that the sexual act committed was without consent.

6          Sexual intercourse takes place without a person's

7     consent when the lack of consent results from forcible

8     compulsion.

9          Some of the terms used in this definition have

10    their own special meaning in our law.  I will now give you

11    the meaning of the following terms:  Sexual intercourse and

12    forcible compulsion.

13         Sexual intercourse means any penetration, however

14    slight, of the penis into the vaginal opening; in other

15    words, any penetration of the penis into the vaginal

16    opening, regardless of the distance of penetration,

17    constitutes an act of sexual intercourse.  Sexual

18    intercourse does not necessarily require erection of the

19    penis, emission or orgasm.

20         Forcible compulsion means to intentionally compel,

21    either by the use of physical force or by a threat,

22    expressed or implied, which places a person in fear of

23    immediate death or physical injury to herself or another

24    person.

25         Under our law, a person is guilty of an attempt to

1   commit a crime when, with intent to commit a crime, he

2   engages in conduct which tends to effect the commission of

3   such crime.

4          Some of the terms used in this definition of

5   attempt have their own special meaning in our law.  I will

6   now give you the meaning of the following terms:  Intent and

7   tends to effect.

8          Intent means conscious objective or purpose.

9          Thus, a person acts with intent to commit a crime

10  when his conscious objective or purpose is to commit that

11  crime.

12         Conduct which tends to effect the commission of a

13  crime means conduct which comes dangerously close or very

14  near to the completion of the intended crime.

15         If a person intends to commit a crime and engages

16  in conduct which carries his purpose forward within

17  dangerous proximity to the completion of the intended crime,

18  he is guilty of an attempt to commit that crime.

19         It does not matter that the intended crime was not

20  actually completed.  The person's conduct must be directed

21  toward the accomplishment of the intended crime.  It must go

22  beyond planning and mere preparation, but it not need be the

23  last act necessary to effect the actual commission of the

24  intended crime.  Rather, the conduct involved must go far

25  enough that it comes dangerously close or very near to the

Jury Deliberations

1   completion of the intended crime.

2            In order for you to find the defendant guilty of

3   an attempt to commit the crime of rape in the first degree,

4   the People are required to prove, from all of the evidence

5   in the case, beyond a reasonable doubt, each of the

6   following three elements:

7            First:  That on or about July 16th, 2014, in the

8   County of New York, the defendant, Lonnie Harrell, intended

9   to commit the crime of rape in the first degree;

10            Two:  That the defendant engaged in conduct which

11   tended to effect the commission of that crime;

12            And, three:  That the defendant did so without

13   Cypress Smith's consent by the use of forcible compulsion.

14            Therefore, if you find that the People have proven

15   beyond a reasonable doubt all three of those elements, you

16   must find the defendant guilty of the crime of an attempt to

17   commit the crime of rape in the first degree under the third

18   count.

19            On the other hand, if you find that the People

20   have not proven beyond a reasonable doubt any one or more of

21   those three elements, you must find the defendant not guilty

22   of the crime of an attempt to commit the crime of rape in

23   the first degree under the third count.

24            Mr. Foreperson, was that responsive to your

25   question?

Joanne Fleming

A894

1        THE FOREPERSON:  Yes, it was, your Honor.

2        THE COURT:  Okay.

3        It's about ten after one right now.  I will allow

4    you to continue your deliberations until about one-thirty.

5    At one-thirty, I will ask you to please stop, take your

6    lunch recess and come back at two-forty-five.

7        When you come back at two-forty-five, please again

8    remember, that unless all of the jurors are gathered

9    together, you cannot continue your deliberations.

10        I remind you also of all my other instructions

11    when you're not together:  To not discuss this case among

12    yourselves or with anyone else.

13        And refrain from reaching a final opinion or

14    conclusion until you've deliberated with the entire jury.

15        Thank you.  You can continue your deliberations

16    now.

17        A COURT OFFICER:  Make sure you have all your

18    belongings and step this way, please.

19        (Whereupon, the jury exited the courtroom.)

20        THE COURT:  Okay, so at one-thirty we will go down

21    for lunch.

22        THE DEFENDANT:  Can I ask you a question?

23        Why did you allow me to come out here now on

24    redirect or you did not allow me to come out before?  I

25    don't understand that.  I still don't understand.  I mean --

```
 1                    THE COURT:  Can I answer you?  Can I answer you?

 2                    THE DEFENDANT:  Yes.

 3                    THE COURT:  You were allowed to come out before.

 4     You chose not to.

 5                    THE DEFENDANT:  But like this?

 6                    THE COURT:  You chose not to.

 7                    Today we asked you again:  Do you want to come

 8     out.  You said yes.  We brought you out.

 9                    THE DEFENDANT:  You said it yourself, it wasn't me

10     that got angry, it was you.  You said it yourself.

11                    THE COURT:  I said that?

12                    THE DEFENDANT:  Yes, back there.

13                    THE COURT:  Alright, we'll excuse you now, Mr.

14     Harrell.

15                    THE DEFENDANT:  So you don't want to answer now,

16     right?

17                    I've been good.  I've stayed under the table.

18                    Answer my questions.

19                    THE COURT:  I've answered your question.  It

20     serves no purpose.

21                    (Whereupon, the defendant exited the courtroom.)

22                    THE DEFENDANT:  This is funny?  This is a joke,

23     man?  Word up.  This is a joke?

24                    THE COURT:  Let the record reflect, by the way,

25     that from the minute Mr. Harrell was brought out, I had very
```

1   real concerns about what was going to happen.  He was

2   looking over both shoulders.  He kept looking the sergeant

3   up and down.  He was actually not answering when I spoke to

4   him.  He would nod or not respond at all.  Although he was

5   quiet, he definitely appeared to be in a very heightened,

6   very agitated state.  I did not like the way he was sizing

7   up the court officers.

8        And as he was escorted out of the courtroom just

9   now, I believe the court reporter got what he was saying,

10  literally over his shoulder as he was walking out the door.

11       It appears to me that the decisions that were made

12  by the lieutenant and the sergeant to keep him shackled was

13  the right decision.

14            (Whereupon, jury deliberations took place.)

15            (Luncheon recess held.)

16   * * * A F T E R N O O N    S E S S I O N * * *

17       THE CLERK:  Recalling case on trial, People versus

18  Lonnie Harrell.

19       THE COURT:  Okay, good afternoon.

20       Even though it's only ten after four, I wanted to

21  recall the case because it's been brought to my attention by

22  the court officers that they've been informed by Corrections

23  that your client wants to leave, he has no interest in

24  coming back out.  And he's expressing that he wants to

25  leave.  So, I just wanted to give you an opportunity to be

Joanne Fleming

A897

1   heard before I excused him.

2           Do you have any objection to him being permitted

3   to leave?

4           MR. HERLICH:  No, Judge.  I think he missed his

5   bus until maybe much later today.  So it's almost a moot

6   point.  But whatever...  No.

7           THE COURT:  Okay.

8           There was also one thing that the sergeant just

9   brought to my attention and I would like the sergeant to put

10  it on the record.

11          THE SERGEANT:  Upon the defendant leaving the

12  courtroom, he made a statement, loud enough for all the

13  security staff to hear, basically in sum and substance:  I

14  should have just stood up, indicating to me that he was

15  going to make an attempt to show the jury that he was in

16  fact shackled and handcuffed.

17          THE COURT:  Okay.  Thank you, sergeant.

18          And if you can please communicate to Corrections,

19  to the extent that he can leave, he's permitted to leave

20  now.

21          MS. PARK:  Judge, what happens if we do get a

22  verdict by the end of the day?

23          THE COURT:  He has stated that he doesn't want to

24  come out.

25          MS. PARK:  Does he know that the case will just

1  move forward and even if we get a verdict?

2         THE COURT:  Well, he's been Parkerized a number of

3  times.

4         MS. PARK:  Yes.

5         THE COURT:  And in light of what the sergeant has

6  just stated, the last thing I want is a disruption with the

7  jury present.

8         So, he has asked to go home.  He knows the jury is

9  deliberating.  He knows the jury's deliberating hopefully to

10  reach a verdict, but he's asking to be excused from these

11  proceedings.

12         We will ask to produce him tomorrow, please.

13         THE SERGEANT:  Certainly.

14         THE COURT:  And I guess we will just sit tight for

15  a few minutes and see if the jury's able to reach a verdict

16  or not.

17         THE CLERK:  (Handing.)

18         THE SERGEANT:  Counsel.

19         THE COURT:  Alright, I'll take that.

20         A COURT OFFICER:  (Handing.)

21         THE COURT:  Did you mark it, Brian?

22         THE CLERK:  Yes, four.

23         THE COURT:  Alright, we've just received a note,

24  it was signed by the foreperson at four-o-seven.  It's been

25  marked as Court Exhibit Number IV.  It's also been given to

1    both attorneys to read.

2            It says:  We, the jury, request guidance.  We have

3    a unanimous decision on six of seven counts.  Please advise

4    us on how to proceed when we are deadlock, in quotes, on one

5    of the seven counts, meaning we don't have a unanimous

6    decision on one count.

7            You have both had a chance to read that?

8            MR. HERLICH:  Yes, your Honor.

9            MS. PARK:  Yes.

10           THE COURT:  I'll hear you.

11           MR. HERLICH:  We can either take the verdict on

12   the -- first, I never want to guess what a jury is thinking,

13   but if I had to, I would say on the attempt rape one, they

14   may be deadlocked in some way, shape or form.

15           We can either take a verdict on six of the seven

16   counts and declare a mistrial on that one count, or you

17   could admonish them to continue to deliberate.  It's --

18           THE COURT:  And if I were to admonish them to

19   deliberate, do you have any suggestion as to what that

20   admonishment should be?

21           MR. HERLICH:  I mean, I guess --

22           THE COURT:  In other words, are you asking for an

23   Allen charge?  Are you requesting --

24           Short of an Allen charge, what are you requesting?

25           MR. HERLICH:  They've deliberated, I suppose,

Joanne Fleming

A900

1    about approximately a half hour yesterday, which wasn't

2    much, and today they have had a full day.  So perhaps a

3    little pep talk, short of a full Allen charge.

4              THE COURT:  People, what is your position?

5              MS. PARK:  I mean, perhaps we can take a partial

6    verdict.

7              THE COURT:  Take a partial verdict and give

8    them --

9              MS. PARK:  And then give them the Allen charge.

10             THE COURT:  Okay.

11             You know, there is different levels of Allen

12   charges.  There is the first one and then they become

13   progressively more on course.  Would you oppose to them

14   receiving the first Allen charge?

15             MR. HERLICH:  No, I don't oppose that, although my

16   position would be that we not take a partial verdict at this

17   point unless that was going to end the deliberation with a

18   mistrial on the deadlocked count.  If they're going to

19   continue to deliberate, I would -- my position would be to

20   wait until further notice of a unanimous verdict on all

21   counts before taking the verdict.

22             THE COURT:  How do you feel about that?

23             MS. PARK:  I mean, I don't see why we can't take a

24   partial verdict and then give the Allen charge as to the

25   remaining count.

1    THE COURT:  Okay.

2        I'm going to give them kind of a toned down Allen

3    charge, and at this point I'm inclined to take a partial

4    verdict, a bird in the hand, and they have reached verdicts

5    on six out of seven.

6        MS. PARK:  Yes.  It seems the note was very clear

7    that they reached a unanimous verdict.

8        THE COURT:  And the section of law that governs is

9    CPL section 310.70, subdivision one:  If a deliberating jury

10   declares that it has reached a verdict with respect to one

11   or more but not all of the offenses submitted to it, or with

12   respect to one or more but not all of the defendants, the

13   court must proceed as follows:

14       B:  If the court is satisfied that there is a

15   reasonable possibility of ultimate agreement upon any of the

16   unresolved offenses with respect to any defendant, it may

17   either:

18       One, order the jury to renders its verdict with

19   respect to those offenses and defendants upon which or with

20   respect to whom it has reached agreement and resume its

21   deliberations upon the remainder; or:

22       Two, refuse to accept the partial verdict at the

23   time and order to the jury to resume its deliberations upon

24   the entire case.

25       I believe, as governed under subsection B, that

1   there is a reasonable possibility of ultimate agreement upon

2   the unresolved offenses, and therefore, I'm going to proceed

3   as per 310.70, subdivision (1)(b), and I will take the

4   partial verdict.

5           And after that, I will give them the Allen charge

6   and I will excuse them.  I find that excusing the jury after

7   giving an Allen charge is often a good way to end the day

8   and starts them fresh the next day.

9           So, let's bring them in and we will take the

10  verdict.

11          THE CLERK:  Are you going to ask them which count

12  or are you going to go through the full thing?

13          THE COURT:  I'll ask them.

14          MR. HERLICH:  Just so I'm clear, your Honor, will

15  you go down the verdict sheet and by that method find out

16  which is the count upon which they're deadlocked?  How do

17  you --

18          THE COURT:  I am -- you know, we run the risk that

19  somebody's going to say something inappropriate if we do

20  that.  I will ask them which count have you not reached a

21  verdict.

22          MR. HERLICH:  Okay, fine.

23          A COURT OFFICER:  Ready?

24          THE COURT:  Yes.

25          A COURT OFFICER:  Jury entering.

1          (Whereupon, the jury entered the courtroom.)

2          THE CLERK:  Continuing case on trial, People

3   versus Lonnie Harrell.

4          All parties, except for the defendant, and jurors

5   are present.

6          THE COURT:  Good afternoon, jurors.

7          Jurors, I received your note.  It's been marked as

8   Court Exhibit Number IV and it was signed by your jury

9   foreperson at four-o-seven.

10          The note reads:  We, the jury, request guidance.

11   We have a unanimous decision on six of seven counts.  Please

12   advise us on how to proceed.  We are deadlocked, quote, on

13   one of the seven counts, meaning we don't have a unanimous

14   decision on one count.

15          Mr. Foreperson, did I read that note correctly?

16          THE DEFENDANT:  Yes, you did.

17          THE COURT:  And without telling me the verdict,

18   has the jury in fact reached a unanimous verdict as to six

19   of the seven counts?

20          THE FOREPERSON:  We have, your Honor.

21          THE COURT:  Okay.

22          Which count has the jury not reached a verdict on?

23          THE FOREPERSON:  Count number three, an attempt to

24   commit the crime of rape in the first degree.

25          THE COURT:  Okay.

Joanne Fleming

A904

1          What we're going to do, I'm going to respond to

2    this note in a couple of different sections.  The first

3    thing we're going to do, we're going to take what's called a

4    partial verdict.  So we will take that partial verdict right

5    now.

6          THE CLERK:  Will the foreperson please rise?

7          (Foreperson complies.)

8          THE CLERK:  As to the People of the State of New

9    York versus Lonnie Harrell, how do you find the defendant,

10   count one, criminal sexual act in the first degree, guilty

11   or not guilty?

12         THE FOREPERSON:  Guilty.

13         THE CLERK:  As to count two, charging the

14   defendant with criminal sexual act in the first degree, how

15   do you find the defendant, guilty or not guilty?

16         THE FOREPERSON:  Guilty.

17         THE CLERK:  As to count four, charging sexual

18   abuse in the first degree, how do you find the defendant,

19   guilty or not guilty?

20         THE FOREPERSON:  Guilty.

21         THE CLERK:  As to count five, sexual abuse in the

22   first degree, how do you find the defendant, guilty or not

23   guilty?

24         THE FOREPERSON:  Guilty.

25         THE CLERK:  As to count six, charging criminal

1      sexual act in the third degree, how do you find the

2      defendant, guilty or not guilty?

3              THE FOREPERSON:  Guilty.

4              THE CLERK:  As to count seven, charging criminal

5      sexual act in the third degree, how do you find the

6      defendant, guilty or not guilty?

7              THE FOREPERSON:  Guilty.

8              THE CLERK:  Thank you.

9              Please be seated.

10             (Foreperson complies.)

11             THE CLERK:  Members of the Jury, hear your verdict

12     as it stands recorded, you said you find the defendant

13     guilty as to count one, criminal sexual act in the first

14     degree; guilty as to count two, criminal sexual act in the

15     first degree; guilty as to count four, sexual abuse in the

16     first degree; guilty as to count five, sexual abuse in the

17     first degree; guilty as to count six, criminal sexual act in

18     the third degree; and guilty as to count seven, criminal

19     sexual act in the third degree.

20             Is that your verdict, so say you all?

21             VOICES FROM JURY BOX:  Yes.

22             THE COURT:  Would you like the jury polled?

23             MR. HERLICH:  Yes.

24             THE CLERK:  Juror Number 1, is that your verdict?

25             JUROR NUMBER 1:  Yes.

Joanne Fleming

A906

1          THE CLERK:  Juror Number 2, is that your verdict?

2          JUROR NUMBER 2:  Yes.

3          THE CLERK:  Juror Number 3, is that your verdict?

4          JUROR NUMBER 3:  Yes.

5          THE CLERK:  Juror Number 4, is that your verdict?

6          JUROR NUMBER 4:  Yes.

7          THE CLERK:  Juror Number 5, is that your verdict?

8          JUROR NUMBER 5:  Yes.

9          THE CLERK:  Juror Number 6, is that your verdict?

10         JUROR NUMBER 6:  No.

11         THE COURT:  That's not your verdict, ma'am?

12         JUROR NUMBER 6:  What?

13         THE COURT:  That's not your verdict?

14         JUROR NUMBER 6:  No, no.

15         THE COURT:  As to counts one, two, four, five, six

16    and seven, is that your verdict?

17         JUROR NUMBER 6:  Yes.

18         THE COURT:  Okay.

19         THE CLERK:  Juror Number 7, is that your verdict?

20         JUROR NUMBER 7:  Yes.

21         THE CLERK:  Juror Number 8, is that your verdict?

22         JUROR NUMBER 8:  Yes.

23         THE CLERK:  Juror Number 9, is that your verdict?

24         JUROR NUMBER 9:  Yes.

25         THE CLERK:  Juror Number 10, is that your verdict?

Joanne Fleming

A907

1              JUROR NUMBER 10: Yes.

2              THE CLERK:  Juror Number 11, is that your verdict?

3              JUROR NUMBER 11: Yes.

4              THE CLERK:  Juror Number 12, is that your verdict?

5              JUROR NUMBER 12: Yes.

6              THE COURT:  Okay, thank you.

7              So, you asked for guidance.  So I will attempt to

8       give you some guidance now.

9              Members of the Jury, from my experience, you have

10      not been considering this case long enough to conclude that

11      you are deadlocked as to any particular count.  When you

12      consider the time of day you started your deliberations,

13      yesterday at about roughly four o'clock, and today you

14      started at about ten o'clock, we then broke for lunch for

15      about an hour and fifteen minutes, and you stopped at about

16      four o'clock, when you add it all up, you've only been

17      deliberating for five hours, or just a little bit more than

18      that.

19             It is not uncommon for a jury to have difficulty

20      in reaching a unanimous verdict.  And it is not uniform for

21      a jury to believe that they will not be able to reach a

22      unanimous verdict.  But after some further deliberations,

23      most juries are able to reach a unanimous verdict.

24             At this time it may be helpful if I explain the

25      process of deliberations.  Now that you have been

1    deliberating, the instructions may have more meaning to you.

2              You remember I said:  To reach a verdict, you must

3    deliberate with the other jurors.  That means you should

4    discuss the evidence and consult with each other, listen to

5    each other, give each other's views careful consideration

6    and reason together when considering the evidence.

7              You should, as I explained, make every effort to

8    harmonize the various views expressed by the different

9    jurors and make every effort to come to a unanimous

10   agreement based on the law and the facts of this case.

11             In making that effort, you should be guided by

12   reason, common sense and logic.  Each juror should have a

13   fair chance to express his or her views and to hear the

14   views of their fellow jurors.

15             Everyone understands that in fulfilling this

16   responsibility, that discussions and arguments can be

17   difficult.  But the deliberations should be based on a

18   reasoned discussion among reasonable people who understand

19   and respect each other's desire to fulfill his or her

20   responsibilities under the law.

21             Harsh language, a demeaning or derogatory

22   approach, will not, in the end, be helpful or fair.  Each

23   juror should participate in the discussions.

24             Remember I told you, before finalizing your

25   opinions and conclusions, you should listen to the views of

your fellow jurors and you should be willing to discuss their views and your views.

You should be open to reason and be willing either to adhere to your opinion and conclusions if persuaded that you are correct or to change an opinion or conclusion if persuaded that you are not correct.

You should not retain a view for the sole reason that you once expressed that view and then close your mind to hearing what your fellow jurors have to say. Nor should you be guilty of pride and stubbornly stick to an opinion or conclusion that you no longer believe is correct.

At the same time, no juror should surrender his or her honest view about the evidence solely because the juror wants the trial to end or because the jury is outvoted.

By your oath and your promise to me, you agreed that you would evaluate the evidence fairly, without fear, favor, sympathy, bias or prejudice, and that you would apply the law to the facts you find to have been proven regardless of whether or not you agree with the law.

Please consider whether a readback of some or all of the testimony will be helpful or whether hearing the law on a particular subject would be helpful.

Again, as I said before, in the interests of justice, please make whatever effort, consistent with your conscious and the evidence in this case, to harmonize your

1   views and decisions in this case with those of your fellow

2   jurors.  To the best of your ability, I ask you to apply

3   common sense and good judgment.

4           In short, I appreciate that deliberations can be

5   difficult.  They were not intended to be easy.  So, in

6   accord with your oath and promise to me, I'm going to direct

7   you to continue your deliberations.

8           Of course, I'm remindful it's now four-thirty.  In

9   my experience, this is a good time to break, and so, we're

10  going to take our recess now.  I will ask you to come back

11  tomorrow at nine-thirty.

12          And I encourage you to please remember the

13  instructions I've just given to you.  I think you will find

14  it helpful.

15          Before I release you, I remind you of the

16  admonitions I've previously given to you:

17          Do not talk either amongst yourselves or with

18  anyone else about anything related to the case.

19          Do not at any time request, accept, agree to

20  accept or discuss with any person, the receipt or acceptance

21  of any payment or benefit in return for supplying any

22  information concerning the trial.

23          You must promptly report directly to me any

24  incident within your knowledge involving any attempt by

25  anyone to improperly influence you or any member of the

Proceedings

jury.

Do not visit or view any of the locations discussed in the case.

And do not use the Internet or Google Maps or anything of that nature to look at any of the locations discussed in the testimony.

Do not read, view or listen to any accounts or discussions of the case reported by newspapers, television, radio, the Internet or any other news media.

Do not attempt to research any fact, issue or law related to this case, whether by discussion with others or research in a library or on the Internet or by any other means or source.

I want to emphasize that in addition to not talking face to face with anyone about the case, you must not communicate with anyone about the case by any other means including telephone, text message, e-mails, chats and the like.

And you must not provide any information about the case to anyone by any means whatsoever, and that includes the posting of information about the case or what you're doing on the case on any device or Internet site, including blogs and chatrooms.

You must also not Google or otherwise search for any information about the case or the law which applies to

Joanne Fleming

1    the case or the people involved in the case including the

2    defendant, the witnesses, the lawyers and myself.

3            You can leave your writing instruments there with

4    you and I will see you tomorrow at nine-thirty.

5            Thank you.

6            A COURT OFFICER:  Make sure you have all your

7    belongings and come this way, please.

8            (Whereupon, the jury exited the courtroom.)

9            THE COURT:  Ms. Park, what I would ask you to do

10   between now and tomorrow is discuss with your supervisors if

11   the jury in fact is deadlocked -- and I'm not prepared to

12   make that finding any time soon -- but if the jury is in

13   fact deadlocked, whether you intend to retry the case as to

14   that one charge or you would move to dismiss that charge.

15   But I would ask you to please begin to look into that so we

16   will know.

17           Again, I'm not prepared to declare a mistrial any

18   time soon.  This is a serious case.  There were numerous

19   charges and really they've only been deliberating for a

20   little over five hours, okay?

21           Thank you.

22           (Whereupon, the trial was adjourned to Wednesday,

23   October 7th, 2015.)

24

25

Joanne Fleming

A913

```
 1   SUPREME COURT OF THE STATE OF NEW YORK
     COUNTY OF NEW YORK:  CRIMINAL TERM:  PART 59
 2   -----------------------------------------x

 3   THE PEOPLE OF THE STATE OF NEW YORK          Indictment
                                                  No. 4258/14
 4
                    -against-                     Crim. Sex Act 1
 5
                                                  Jury Trial
 6   LONNIE HARRELL,

 7                            Defendant.

 8   -----------------------------------------x

 9                                      October 7th, 2015

10                                      100 Centre Street
                                        New York, NY  10013
11

12   B e f o r e:

13
                      HONORABLE JUAN M. MERCHAN,
14
                                         Justice.
15

16   Appearances:

17
                      CYRUS R. VANCE, JR., ESQ.
18                    District Attorney, New York County
                      BY:  JUNG PARK, ESQ.
19                         Assistant District Attorney

20
                      THEODORE HERLICH, ESQ.
21                    Attorney for Defendant

22

23

24
                                      Joanne Fleming
25                                    Senior Court Reporter
```

10/7.15

```
1                 (In open court)

2             THE CLERK:  Continuing case on trial.

3                 (Whereupon, jury deliberations took place.)

4             THE CLERK:  Continuing case on trial, People

5      versus Lonnie Harrell.

6             THE COURT:  Okay, good morning.

7             MR. HERLICH:  Good morning.

8             THE COURT:  Before we get to the note, I just

9      wanted to go on the record that this morning when I first

10     entered the courtroom, I was informed by one of the court

11     officers that he had been informed by Corrections that

12     defendant Harrell had been produced, that he was in an

13     agitated state, that he didn't want to be here, he wanted to

14     leave, he was not interested in hearing the verdict, he was

15     not interested in participating in any of that.

16             Is that a fair representation?

17             A COURT OFFICER:  It is, Judge.

18             THE COURT:  Okay.

19             And based upon that, I then had an off-the-record

20     conversation with Mr. Herlich, who was in the courtroom at

21     the time, and I asked Mr. Herlich if he would have any

22     objection to the defendant being sent back, and Mr. Herlich

23     stated, in substance, that based upon the representations

24     that had been conveyed, he did not have an objection.

25             Is that fair, Mr. Herlich?
```

Joanne Fleming

A915

```
 1        MR. HERLICH:  Yes, your Honor, that's correct.

 2        THE COURT:  Okay.

 3        Now, we received a note, it has been marked as

 4   Court Exhibit Number V, and it was signed by the jury

 5   foreperson at ten-forty-six.

 6        Have you both had a chance to read this note?

 7        MR. HERLICH:  Yes.

 8        MS. PARK:  Yes.

 9        THE COURT:  I will read it into the record and we

10   will take it one by one.

11        We, the jury, request clarification, one:  Does

12   the testimony of an expert witness or general witness

13   constitute evidence?  Please clarify the difference between

14   their testimonies.

15        Two:  Do we consider all the evidence for charge

16   number three or is there specific evidence for this charge?

17   Can one piece of evidence apply to multiple charges?

18        Three:  Reread the charge number three and law

19   applicable.

20        Four:  Does the first degree charge require more

21   evidence than other charges?

22        Can I have the verdict sheet, by the way, a copy

23   of it?

24        THE CLERK:  They got it, but yes.  (Handing.)

25        THE COURT:  And five:  Is there a crime of
```

1    attempted rape in the second or third degrees and what is

2    the difference?

3         So, pretty comprehensive note and I think I

4    definitely want to get your input before I respond.

5         Let's take the first one.  Does the testimony of

6    an expert witness or general witness constitute evidence?

7    Please clarify the difference between their testimonies.

8         Any thoughts on how I should answer that?

9         MR. HERLICH:  Your Honor, obviously testimony of

10   witnesses constitutes evidence just like physical exhibits

11   and stipulations as you indicated.  You can recharge that.

12        And, obviously, I think you want to recharge

13   simply that an expert witness is permitted to give an

14   opinion based on their expertise and the jury's role to

15   either -- they can either accept that opinion testimony or

16   reject it, but that's the significant difference between an

17   expert witness and a lay witness, if you will.

18        MS. PARK:  Judge, I would agree.  I think you

19   should just maybe re-read the expert witness charge and what

20   Mr. Herlich said earlier.

21        THE COURT:  So I was thinking of rereading the

22   expert witness charge, but I was also thinking of rereading

23   the charge on page four which is evidence, what is evidence.

24        MR. HERLICH:  That's fine.

25        THE COURT:  Do you agree?

Joanne Fleming

1          MS. PARK:  Yes.

2          THE COURT:  Now, number two:  Do we consider all

3    evidence for charge number three or is there specific

4    evidence for this charge?  Can one piece of evidence apply

5    to multiple charges?

6          MS. PARK:  And I think the answer is yes.

7          THE COURT:  I see that you're mulling it over, Mr.

8    Herlich.  How about a response that says -- I think that

9    they're a little bit -- when I read this note in its

10   entirety, I get the sense that they're a little bit confused

11   between evidence and credible evidence; in other words, they

12   may be under the impression that anything that came out of

13   the mouth of any witness and anything that was introduced as

14   evidence must be accepted as true.

15         And I want to make sure that maybe I'm reading too

16   much, I don't want to perpetuate that misunderstanding, so I

17   want to respond yes, they can consider all evidence that

18   they find to be credible and relevant for charge number

19   three.  I want to add the words "credible" and "relevant"

20   and not just leave it at evidence.  But if you don't want me

21   to do that, I won't.

22         MR. HERLICH:  Judge, can you say number two point

23   one more time so I can hear it?

24         THE COURT:  Do we consider all evidence for charge

25   number three or is there specific evidence for this charge.

1   Can one piece of evidence apply to multiple charges?

2           So, for example, yes, one piece of evidence may

3   apply to multiple charges provided you find that evidence

4   credible and relevant.

5           MR. HERLICH:  I have no objection to that.

6           THE COURT:  Okay.

7           MR. HERLICH:  I know the next request is to

8   recharge on count three which will state the elements of the

9   crime.  Perhaps as a lead-in to the charge on count three,

10  you might consider saying, your Honor, that, you know,

11  obviously the jury is the finder of fact and they have to

12  determine, like you said, the credible evidence and then

13  determine whether the evidence establishes beyond a

14  reasonable doubt each and every element of the given crime.

15          THE COURT:  I think that's really -- that's

16  already included in there.

17          MR. HERLICH:  That will be in count three?

18          THE COURT:  Yes, in count three.

19          I think that's already included.  If you look at

20  the last two paragraphs of count three, I closed every

21  charge with language to that effect.

22          MR. HERLICH:  Right.

23          THE COURT:  You agree?

24          MR. HERLICH:  Okay.

25          THE COURT:  Okay.


Joanne Fleming

1              Now we get to number four:  Does first degree --

2    does first degree charge require more evidence than other

3    charges?

4              MR. HERLICH:  It has different elements, your

5    Honor.  Either I would not respond to that question as not

6    relevant, or simply say that the first -- the recharge has

7    the elements that I just defined for you in count number

8    three.  It doesn't require -- it's just different elements

9    than something else.

10             MS. PARK:  I mean, maybe number four and five has

11   to be addressed together because, I mean, here, he's not

12   charged with second or third degree, so it's not for their

13   consideration, what the elements of rape two or rape three

14   are.

15             THE COURT:  Well, yes, I agree with number five.

16   The response to number five is the charge in this case is

17   attempted first degree rape, not second or third, therefore,

18   you are not to speculate as to what those charges may be,

19   they are not being offered to you for your consideration,

20   you are to put them out of your mind.  No one here asked for

21   lesser includeds.  It's not something for them to consider.

22             Mr. Herlich?

23             MR. HERLICH:  Attempted rape three -- I think

24   attempted rape two has no application to this case

25   whatsoever.

Joanne Fleming

A920

1          THE COURT:  Right.

2          MR. HERLICH:  Attempted rape three is not a lesser

3    included.  It could have been charged based on the age of

4    the complainant and the age of the defendant, but

5    nevertheless, because of those elements which don't exist as

6    to rape one, it's not a lesser included, so...

7          THE COURT:  So the response to number five anyway

8    is to say the defendant was not charged with any other

9    degree, you are not to consider or speculate about that, you

10   have not been instructed on the law on that.

11         MR. HERLICH:  Okay.

12         MS. PARK:  And, your Honor, just going back to

13   question number four.

14         THE COURT:  Yes?

15         MS. PARK:  I mean, they're asking whether they

16   need more evidence for first degree rape.

17         THE COURT:  Right.

18         MS. PARK:  And I think the answer has to be no,

19   that they just have to -- did the People satisfy the

20   elements as you instructed them beyond a reasonable doubt.

21   I think --

22         THE COURT:  Does the first degree charge require

23   more evidence than other charges.  I think -- I think that

24   the way to answer is that's not really relevant in this

25   case.  What's relevant is that the first degree charge

1    requires that the People prove certain elements beyond a

2    reasonable doubt and those elements are as I have given them

3    to you.  It's not a matter of whether they have to prove

4    more evidence or less evidence.  They have to prove the

5    elements of the offense and the legal standard is by beyond

6    a reasonable doubt.

7                 Are you okay with that?

8                 MR. HERLICH:  I am.

9                 MS. PARK:  Yes, yes.

10                THE COURT:  Okay.  Let's see if I can remember to

11   say that.

12                MR. HERLICH:  We'll let you know.

13                THE COURT:  I'm sure you will.

14                I'm glad to see that they're deliberating.

15                MR. HERLICH:  Judge, it may be they're wrestling

16   with whether the explicit forcible compulsion that they've

17   already found was utilized in the commission of other

18   offenses was utilized at the time of the alleged attempted

19   rape.

20                THE COURT:  Are they getting the jurors?

21                THE CLERK:  Yes, they're getting them.

22                THE COURT:  While we wait, so we agreed in

23   response to the first question, I'm going to read the charge

24   on evidence and the charge on expert witness.

25                Do you think we should read the charge on

1    evidentiary inferences?

2              MS. PARK:  I don't think so.

3              THE COURT:  Okay.

4              It's probably your page five.  I realize that not

5    all of the pages are numbered.

6              THE SERGEANT:  Sorry for the delay, there was a

7    little screw-up on the communication.

8              THE COURT:  No problem.                          7

9              MR. HERLICH:  I wouldn't request it, your Honor.

10             THE COURT:  Alright, that's fine.

11             MR. HERLICH:  I mean, while we have a minute, for

12   what it's worth, Judge, attempt rape three, while it is not

13   a lesser included offense, I suppose it could have been

14   requested under People v. Ford, which is a Court of Appeals

15   case, which permits a court in its discretion to charge an

16   offense that's made out by the evidence at trial though not

17   technically a lesser included offense of the counts

18   contained in the indictment.  However, I don't think that

19   that charge can come into being at this point --

20             THE COURT:  Right.

21             MR. HERLICH:  -- in the case, so...

22             THE COURT:  Yes.

23             MR. HERLICH:  Right.

24             But it is a thoughtful question by the jury that

25   they even --

1        THE COURT:  Yes.

2        A COURT OFFICER:  Jury entering.

3        All rise.

4        THE COURT:  All rise, please.

5        (Whereupon, the jury entered the courtroom.)

6        THE CLERK:  Continuing case on trial, People

7   versus Lonnie Harrell.

8        All parties, except for the defendant, and all

9   jurors are present.

10       THE COURT:  Good morning, jurors.  Welcome back.

11       VOICES FROM JURY BOX:  Good morning.

12       THE COURT:  Jurors, we received your note.  It was

13   signed by your jury foreperson at ten-forty-six and it's

14   been mark as Court Exhibit Number V, and it reads as

15   follows:

16       We, the jury, request clarification, one:  Does

17   the testimony of an expert witness or a general witness

18   constitute evidence?  Please clarify the difference between

19   their testimonies.

20       Two:  Do we consider all evidence for charge

21   number three or is there specific evidence for this charge?

22   Can one piece of evidence apply to multiple charges?

23       Three:  Reread the charge number three and the law

24   that's applicable.

25       Four:  Does the first degree charge require more

1    evidence than other charges?

2              And, five:  Is there a crime of attempted rape in

3    the second and third degrees and what is the difference?

4              Mr. Foreperson, did I read that correctly?

5              THE FOREPERSON:  Yes, your Honor.

6              THE COURT:  Okay, we will try to answer these one

7    at a time.

8              So for the first one, does the testimony of an

9    expert witness or a general witness constitute evidence?

10   Please clarify the difference between their testimonies.

11             The way I'm going to respond to that is, I'm going

12   to reread to you my charge on evidence in general and then I

13   will reread to you the charge on expert witnesses, okay?

14             So, evidence.  When you judge the facts, you are

15   to consider only the evidence.  The evidence in the case

16   includes the testimony of the witnesses, the exhibits that

17   were received in evidence and the stipulation by the

18   parties.

19             Testimony which was stricken from the record or to

20   which an objection was sustained must be disregarded by you.

21             Exhibits that were received in evidence are

22   available upon your request for your inspection and

23   consideration.

24             Exhibits that were just seen during the trial or

25   marked for identification but not received in evidence are