1    not evidence and are, thus, not available for your

2    inspection and consideration.  But testimony based on

3    exhibits that were not received in evidence may be

4    considered by you.  It is just that the exhibit itself is

5    not available for your inspection and consideration.

6            I will read to you the charge on expert witnesses.

7    You will recall that Jeannie Tamariz, Dean Delitta and Dr.

8    Anjay Singh testified about certain scientific, medical and

9    technical matters and gave opinions on such matters.

10           Ordinarily, a witness is limited to testifying

11   about facts and is not permitted to give an opinion.  Where,

12   however, scientific, medical, technical or other specialized

13   knowledge will help a jury understand the evidence or

14   determine a fact in issue, a witness with expertise in a

15   specialized field may render opinions about such matters.

16           You should evaluate the testimony of any such

17   witness just as you would the testimony of any other

18   witness.  You may accept or reject such testimony in whole

19   or in part, just as you may with respect to the testimony of

20   any other witness.

21           In deciding whether or not to accept such

22   testimony, you should consider the following:  The

23   qualifications and believability of the witness, the facts

24   and other circumstances upon which the witness' opinion was

25   based, the accuracy or inaccuracy of any assumed or

Joanne Fleming

1   hypothetical fact upon which the opinion was based, the

2   reasons given for the witness' opinion and whether the

3   witness' opinion is consistent or inconsistent with other

4   evidence in the case.

5         Moving now to your second question:  Do we

6   consider all evidence for charge number three or is there

7   specific evidence for this charge?  Can one piece of

8   evidence apply to multiple charges?

9         Yes, one piece of evidence may apply to multiple

10  charges.  And the evidence that you consider is simply

11  whatever evidence you find to be relevant and credible.

12  That is the evidence that you consider, and again, yes, you

13  can consider one piece of evidence as to multiple charges.

14        Question number three:  Reread the charge number

15  three and the law that's applicable.  I will do that now.

16        The third count is an attempt to commit the crime

17  of rape in the first degree.  I will instruct you first on

18  the definition of the crime of rape in the first degree,

19  then I will define for you an attempt to commit a crime,

20  finally, I will put both definitions together and list for

21  you the elements of an attempt to commit the crime of rape

22  in the first degree.

23        Under our law, a person is guilty of rape in the

24  first degree when he engages in sexual intercourse with

25  another person by forcible compulsion.

Joanne Fleming

1    Under our law, it is also an element of this

2    offense that the sexual act was committed without consent.

3    Sexual intercourse takes place without a person's

4    consent when the lack of consent results from forcible

5    compulsion.

6    Some of the terms used in this definition have

7    their own special meaning in our law.  I will now give you

8    the meaning of the following terms:  Sexual intercourse and

9    forcible compulsion.

10    Sexual intercourse means any penetration, however

11    slight, of the penis into the vaginal opening; in other

12    words, any penetration of the penis into the vaginal opening

13    regardless of the distance of penetration constitutes an act

14    of sexual intercourse.  Sexual intercourse does not

15    necessarily require erection of the penis, emission or

16    orgasm.

17    Forcible compulsion means to intentionally compel

18    either, one, by the use of physical force, or two, by a

19    threat, expressed or implied, which places a person in fear

20    of immediate death or physical injury to herself or another

21    person.

22    Under our law, a person is guilty of an attempt to

23    commit a crime when, with intent to commit a crime, he

24    engages in conduct which tends to effect the commission of

25    such crime.

1        Some of the terms used in this definition of

2  attempt have their own special meaning in our law.  I will

3  now give you the meaning of the following terms:  Intent and

4  tends to effect.

5        Intent means conscious objective or purpose.

6        Thus, a person acts with intent to commit a crime

7  when his conscious objective or purpose is to commit that

8  crime.

9        Conduct which tends to effect the commission of a

10  crime means conduct which comes dangerously close or very

11  near to the completion of the intended crime.

12        If a person intends to commit a crime and engages

13  in conduct which carries his purpose forward within

14  dangerous proximity to the completion of the intended crime,

15  he is guilty of an attempt to commit that crime.

16        It does not matter that the intended crime was not

17  actually completed.  A person's conduct must be directed

18  toward the accomplishment of the intended crime.  It must go

19  beyond planning and mere preparation, but it need not be the

20  last act necessary to effect the actual commission of the

21  intended crime.  Rather, the conduct involved must go far

22  enough that it comes dangerously close or very near to the

23  completion of the intended crime.

24        In order for you to find the defendant guilty of

25  an attempt to commit the crime of rape in the first degree,

Jury Deliberations

1   the People are required to prove, from all the evidence in

2   the case, beyond a reasonable doubt, each of the following

3   three elements:

4        First:  That on or about July 16th, 2014, in the

5   County of New York, the defendant, Lonnie Harrell, intended

6   to commit the crime of rape in the first degree;

7        Two:  That the defendant engaged in conduct which

8   tended to effect the commission of that crime;

9        And, three:  That the defendant did so without

10  Cypress Smith's consent by the use of forcible compulsion.

11        Therefore, if you find that the People have proven

12  beyond a reasonable doubt all three of those elements, you

13  must find the defendant guilty of the crime of an attempt to

14  commit the crime of rape in the first degree under the third

15  count.

16        On the other hand, if you find that the People

17  have not proven beyond a reasonable doubt any one or more of

18  the three elements, you must find the defendant not guilty

19  of the crime of attempt to commit the crime of rape in the

20  first degree under the third count.

21        Moving onto your fourth and fifth questions.  The

22  fourth question:  Does the first degree charge require more

23  evidence than other charges?

24        Well, I will answer that one separately.  The

25  answer to your question is not -- your question cannot

Joanne Fleming

A930

1     really be answered with a yes or no.  It's not a matter of

2     whether there's more evidence.  The question is:  Have the

3     People satisfied the elements of the offense.  Different

4     charges, simply different elements.

5              And it is not a question of more evidence or less

6     evidence.  It is a question of the elements of the offense

7     and whether those elements are proven beyond a reasonable

8     doubt.  The burden of proof is proof beyond a reasonable

9     doubt regardless of the level of the crime.

10             Question five:  Is there a crime of attempted rape

11    in the second and third degrees and what is the difference.

12             I don't mean to be flippant when I respond to you

13    that the defendant in this case is not charged with any

14    other crime.  The defendant in this case is charged with

15    attempted rape in the first degree.  That is the charge that

16    is before you for your consideration.  I direct that you are

17    not to speculate as to what any other charge might be or

18    what the elements of that other charge might be.  There's

19    one remaining charge before you and that's the one for you

20    to consider.

21             If you can give one minute.  Counsel, please

22    approach.

23             (Whereupon, the following proceedings took place

24    on the record and outside the presence of the jury:)

25             THE COURT:  I just want to ask if you're satisfied

Joanne Fleming

1      with the explanations that I gave.

2                  MR. HERLICH:  Yes, your Honor.

3                  MS. PARK:  Yes.

4                  THE COURT:  And it's consistent with what we

5      agreed and discussed, right?

6                  MR. HERLICH:  Yes.

7                  MS. PARK:  Yes.

8                  THE COURT:  Okay.

9                  (Whereupon, the following proceedings took place

10     on the record and in the presence of the jury:)

11                 THE COURT:  Okay, Mr. Foreperson, I hope that was

12     responsive to your questions.  If it's not, please send me

13     as many questions as you would like and I will try my best

14     to answer them, okay?

15                 THE FOREPERSON:  Yes.

16                 THE COURT:  You can continue now.

17                 A COURT OFFICER:  Jurors, make sure you have all

18     your stuff and this way, please.

19                 (Whereupon, the jury exited the courtroom.)

20                 THE COURT:  Okay, thank you.

21                 (Whereupon, jury deliberations took place.)

22                 THE CLERK:  Recalling case on trial, People versus

23     Lonnie Harrell.

24                 THE COURT:  Good afternoon.

25                 MR. HERLICH:  Good afternoon.

Jury Deliberations

581

1      THE COURT:  We've received two notes that I need

2 to put on the record.

3      The first one was signed by the jury foreperson at

4 eleven-fifty-seven.  It was marked as Court Exhibit Number

5 VI and it reads:  We, the jury, ask a fifteen-minute break.

6 We will leave building for a smoke break.

7      And did you guys have a chance to read that note?

8      MR. HERLICH:  Yeah.

9      MS. PARK:  Yes.

10      THE COURT:  And they were given that break.

11      Then we received another note, signed at

12 one-o-three by the jury foreperson, one-o-three by the jury

13 foreperson, marked as Court Exhibit Number VII and it says:

14 We have reached a verdict.

15      Did you both read that note?

16      MR. HERLICH:  Yes.

17      MS. PARK:  Yes.

18      THE COURT:  Okay, thank you.

19      Let's bring them in, please.

20      A COURT OFFICER:  Ready?

21      THE COURT:  Yes.

22      A COURT OFFICER:  Jury entering.

23      (Whereupon, the jury entered the courtroom.)

24      THE CLERK:  Continuing case on trial, People

25 versus Lonnie Harrell.

Joanne Fleming

A933

1      All parties, except for the defendant, and all

2    jurors are present.

3           THE COURT:  Good afternoon, jurors.

4           So, jurors, we received two notes that I need to

5    put on the record.

6           The first note came in at eleven-fifty-seven.  It

7    was signed by your jury foreperson at eleven-fifty-seven and

8    marked as Court Exhibit Number VI.  And it requested a smoke

9    break, and I take it that you got that smoke break, right?

10          THE FOREPERSON:  Yes.

11          THE COURT:  Then the second note was signed by

12   your jury foreperson at one-o-three, and it has been marked

13   as Court Exhibit Number VII, and it says:  We, the jury,

14   have reached a verdict.

15          Mr. Foreperson, without telling me the verdict,

16   has the jury, in fact, reached a verdict as to the one

17   remaining count?

18          THE FOREPERSON:  We have, your Honor.

19          THE COURT:  Okay, thank you.

20          THE CLERK:  Will the foreperson please rise?

21          (Foreperson complies.)

22          THE CLERK:  As to count three, charging Lonnie

23   Harrell with attempt to commit the crime of rape in the

24   first degree, how do you find the defendant, guilty or not

25   guilty?

Joanne Fleming

A934

1      THE FOREPERSON:  Guilty.

2      THE CLERK:  Thank you.

3      Please be seated.

4      Members of the Jury, hear your verdict as it

5  stands recorded, you say you find the defendant guilty as to

6  count three, attempt to commit the crime of rape in the

7  first degree, is that your verdict, so say you all?

8      VOICES FROM JURY BOX:  Yes.

9      THE COURT:  Would you like the jury polled?

10      MR. HERLICH:  Yes, please.

11      THE CLERK:  Juror Number 1, is that your verdict?

12      JUROR NUMBER 1:  Yes.

13      THE CLERK:  Juror Number 2, is that your verdict?

14      JUROR NUMBER 2:  Yes.

15      THE CLERK:  Juror Number 3, is that your verdict?

16      JUROR NUMBER 3:  Yes.

17      THE CLERK:  Juror Number 4, is that your verdict?

18      JUROR NUMBER 4:  Yes.

19      THE CLERK:  Juror Number 5, is that your verdict?

20      JUROR NUMBER 5:  Yes.

21      THE CLERK:  Juror Number 6, is that your verdict?

22      JUROR NUMBER 6:  Yes.

23      THE CLERK:  Juror Number 7, is that your verdict?

24      JUROR NUMBER 7:  Yes.

25      THE CLERK:  Juror Number 8, is that your verdict?

Joanne Fleming

1          JUROR NUMBER 8:  Yes.

2          THE CLERK:  Juror Number 9, is that your verdict?

3          JUROR NUMBER 9:  Yes.

4          THE CLERK:  Juror Number 10, is that your verdict?

5          JUROR NUMBER 10:  Yes.

6          THE CLERK:  Juror Number 11, is that your verdict?

7          JUROR NUMBER 11:  Yes.

8          THE CLERK:  Juror Number 12, is that your verdict?

9          JUROR NUMBER 12:  Yes.

10          THE COURT:  Okay, jurors just give me one second.

11          Okay, jurors, at this time I just want to thank

12     you very much for your jury service.  I know that you were

13     with us for about two weeks, and during that time, we

14     disrupted your lives, we took you away from work, school,

15     your other responsibilities that you had.

16          I know that Juror Number 5 had a concern that you

17     brought to our attention and I was mindful of that as well.

18          But I just want you to know I'm very grateful for

19     your time and I do appreciate your service.  I know that you

20     gave this matter very serious attention.  I could tell that

21     you were doing that during the course of the trial and it

22     was obvious to me as well during your deliberations.

23          You will recall that during the course of the

24     trial, I mentioned many times certain admonitions and among

25     the admonitions was that you are not to discuss this case

Joanne Fleming

1      either among yourselves or with anyone else.

2             I just want you to know that those instructions no

3      longer apply, and among them, you are free to discuss this

4      case with anyone that you would like to talk about it, but

5      you're also free not to.  No one can make you do anything

6      you don't want to do.  The decision is entirely up to you.

7             But at this time I do excuse you with the

8      gratitude of the Court.  Thank you very much.

9             A COURT OFFICER:  All rise.

10            (Whereupon, the jury exited the courtroom.)

11            THE COURT:  Are there any applications at this

12     time?

13            MS. PARK:  I will just ask that the defendant be

14     remanded.

15            THE COURT:  The defendant currently has, I

16     believe, $100,000 bail.  The People asked he be remanded.

17     Mr. Herlich, you wish to be heard?

18            MR. HERLICH:  No.

19            THE COURT:  Okay.

20            At this time the defendant's bail status is

21     changed to remand.

22            And we will adjourn this matter for sentence,

23     how's October 21st?

24            MS. PARK:  Can I have another date that week?

25            THE COURT:  That week?

Joanne Fleming

1          MS. PARK:  Yes.

2          THE COURT:  How is the twenty-second?

3          MR. HERLICH:  Judge, I'm supposed to be on trial

4    starting this Friday for a month with Judge Wiley and the

5    only days I'm available will be on Wednesdays, beginning

6    with the twenty-first or any Wednesday thereafter.

7          THE COURT:  I see.

8          MR. HERLICH:  Through probably the first week or

9    so of November.

10          THE COURT:  So, Ms. Park, you're not available at

11    all on the twenty-first?

12          MS. PARK:  I'm on call.  So I could be available,

13    just depends on --

14          THE COURT:  Is that homicide call?

15          MS. PARK:  Homicide call.

16          THE COURT:  Let's put it down for the twenty-first

17    and if something comes up, we can always make arrangements.

18          So, October 21st for sentence and we will mark the

19    defendant's card accordingly.  Thank you.

20          MR. HERLICH:  Thank you, your Honor.

21          - - - - - - - - - - - - -

22          CERTIFIED TO BE A TRUE AND ACCURATE
     TRANSCRIPT OF THE ORIGINAL STENOGRAPHIC
23    MINUTES TAKEN OF THIS PROCEEDING.

24                              _Joanne Fleming_
                              JOANNE FLEMING
25                         Senior Court Reporter

```
 1   SUPREME COURT        NEW YORK COUNTY
     TRIAL TERM           PART 59
 2   ------------------------------------x
     THE PEOPLE OF THE STATE OF NEW YORK : INDICTMENT #
 3                                       : 4258/2014
                                         :
 4             AGAINST                   :
                                         :
 5                                       :
     LONNIE HARRELL                      :
 6                  Defendant.           :
     ------------------------------------x SENTENCE
 7
                            100 Centre Street
 8                        New York, New York 10013
                            October 21, 2015
 9

10   B E F O R E:

11                  HONORABLE JUAN MERCHAN
12                  Justice of the Supreme Court

13

14   A P P E A R A N C E S:

15
     For the People:     CYRUS R. VANCE, JR., ESQ.,
16                       New York County District Attorney
                         One Hogan Place
17                       New York, New York 10013
                         BY:   JUNG PARK, ESQ.
18                       Assistant District Attorney

19
     For the Defense:    THEODORE HERLICH, ESQ.
20

21

22

23

24                            Vikki J. Benkel
                              Senior Court Reporter
25
```

*Vikki J. Benkel*
*Senior Court Reporter*

A939

1        COURT CLERK:  Number two on the calendar, Lonnie
2    Harrell, indictment number 4258 of 2015.
3        THE SERGEANT:  I have been advised by the officer
4    assigned to pen detail who will bring the defendant out,
5    that the defendant blatantly refuses to exit the cell.
6        MR. HERLICH:  Theodore Herlich for the defendant.
7        MS. PARK:  For the People, Jung Park.
8    Good afternoon.
9        THE COURT:  Good afternoon.
10        Mr. Herlich, have you spoken with your client?
11        MR. HERLICH:  Yes, I did speak to him for five
12    minutes or so, and he was very upset that he had in his mind
13    the choice that he could only be present for his trial under
14    the shackles that he refused to come into the courtroom
15    wearing, so I believe that that continues to be his
16    position.
17        THE COURT:  Did he communicate to you that he does
18    not want to be brought into the courtroom today?
19        MR. HERLICH:  I asked him, don't you want to be
20    present for sentencing.  He was angry, he stood up in the
21    small interview booth that we are in together and just
22    walked out.
23        THE COURT:  Okay.
24        This matter is on for sentencing.  Let's impose
25    sentence.

*Vikki J. Benkel*
*Senior Court Reporter*

1       COURT CLERK:  Lonnie Harrell, you are before the
2   Court for sentence following your conviction by verdict to
3   two counts of criminal sexual act, one count of attempted
4   rape in the first degree and two counts of sexual abuse in
5   the first degree and two counts of criminal sexual act in
6   the first degree.

7       Before being sentenced, you, your attorney and the
8   assistant district attorney have an opportunity to make a
9   statement relevant to the question of sentence.

10      MR. HERLICH:  Your Honor, do you want to do the
11  predicate statement first before we do this?

12      THE COURT:  Yes, we have to arraign the defendant
13  on the predicate felony statement, but the defendant refuses
14  to be brought out.

15      This is nothing new, as you know we went through
16  this during the trial.  I think that he is waiving his
17  rights.

18      People, would you like to be heard on that?

19      MS. PARK:  No, Your Honor, it seems obvious that
20  he is refusing to come out.

21      He has waived his right to be present.

22      THE COURT:  Can we just go on the record with the
23  predicate felony statement.

24      COURT CLERK:  Lonnie Harrell, a statement has been
25  filed by the district attorney's office that alleges that

1    you have been previously convicted and sentenced to a felony

2    for the reason following:

3              On March 26, 1991 in Supreme Court New York County

4    in the State of New York, defendant was convicted of robbery

5    in the first degree Penal Law 160.150 subdivision one

6    violent felony as that term is defined in Penal Law 70.02

7    subdivision one.  Sentence upon that conviction was imposed

8    on March 26, 1991.

9              The ten year period referred to in Penal Law 70.06

10   subdivision one subdivision B subdivision V is extended by

11   the defendant's incarceration in New York State prison from

12   April 22, 1991 to June 17, 2009.

13             MR. HERLICH:  Your Honor, I have reviewed the

14   defendant's NYSID sheet and the violent predicate felony

15   statement conforms with the information set forth in the

16   defendant's NYSID sheet.

17             THE COURT:  And the defendant is not present

18   before the Court because he has voluntarily waived his right

19   to be present before the Court.

20             Therefore, he does not dispute at this time the

21   predicate felony statement.

22             Therefore, the Court finds that the defendant is a

23   violent predicate felon.

24             Let's continue to sentence.

25             Would you like to be heard?

1        MR. HERLICH:  Yes, Your Honor.

2        I would ask the Court to consider a sentence, the

3    minimum of course on the B felonies are ten years, the

4    maximum is 25 years.  I ask that the sentence of this Court

5    be in the range of ten years up to 15 years, plus the period

6    of five years post release supervision.

7        THE COURT:  People, would you like to be heard?

8        MS. PARK:  Yes, Your Honor.

9        And Judge, I have also submitted a letter, a

10   victim impact statement, that I am going to ask with the

11   Court's permission that Laketa Smith be permitted to speak

12   after I give my statement.

13       THE COURT:  Sure.

14       MS. PARK:  Your Honor, the defendant stands before

15   this Court, as Mr. Herlich stated, convicted of multiple

16   violent felonies.  He attacked the most vulnerable member of

17   our society, one of the most vulnerable members, a child.

18   And she was someone who trusted him and he knew that he

19   could overpower her.

20       After having spent about 20 years in jail the

21   defendant was out only four years when he committed this

22   crime.  He was convicted of assault one and robbery in the

23   first degree for robbing and slashing a tourist in the face

24   to the point where the tourist, one of his eyes was caused

25   permanent blindness.

1         While incarcerated for that crime in 2004 he was

2   convicted of possessing a six inch long metal shank.

3         Here the defendant took away a 15 year old's

4   innocence.  He knew she was 15 and inexperienced yet as

5   evidence showed, he did not care, he was going to do what he

6   wanted and he disregarded her pleas to stop.  When she said

7   it hurt, he had the audacity to tell her, you like it, just

8   relax and it won't hurt.

9         He was a coward.  And I think we all got a little

10  glimpse of what Cypress experienced, what caused her to be

11  so fearful.  Many of us in this courtroom witnessed the

12  defendant's behavior.  In the middle of trial when he did

13  not get his way, we observed his behavior.  At one point he

14  said, I have this problem that when I get agitated it just

15  blows.  And that was here before Your Honor in a room full

16  of uniformed court officers and court personnel.

17        Now, imagine a little 15 year old locked in her

18  apartment alone with the defendant, what she experienced was

19  true terror and that was obvious from her testimony.  We all

20  heard the 911 call, her begging the operator, whispering to

21  not send sirens and also locking the door when police

22  officers entered her apartment and also speaking in a low

23  tone, almost in a whisper, about what happened to her.

24  There was no doubt how scared she was and the defendant did

25  that.

*Vikki J. Benkel*
*Senior Court Reporter*

A944

1          But her courage and her resilience crushed the

2   defendant.  Her ability to testify here in front of the

3   defendant proved that despite her fear, she wanted to do the

4   right thing.  And while Cypress's memory, her ability to

5   remember vividly every detail of that day convicted the

6   defendant, unfortunately for her she has been traumatized by

7   it and she will never forget what happened to her that day.

8   And hopefully some day the memory of this horror will fade.

9          This is why we believe that the maximum sentence

10  is appropriate and warranted.

11         For that reason I am asking Your Honor to sentence

12  the defendant on count one to 25 years plus two years of

13  post release supervision.  On count two, 25 years and 20

14  years post release supervision.  On count three, 15 years.

15  On count four, seven years.  On count five, seven years.  On

16  count six, four years.  On count seven, four years.  All

17  sentences to run concurrently.

18         THE COURT:  Thank you.

19         Was there anything else that you wanted to read

20  and bring to the Court's attention?

21         MS. PARK:  No, but may I ask Ms. Smith to speak on

22  her behalf.

23         MS. LAKETA SMITH:  Good afternoon.

24         I have a statement that my daughter prepared and a

25  letter that I would like to read.

1    It has been a year and a few months since I was
2    attacked.  For a year and a few months I have not been able
3    to hug friends and family without wincing.  I have made up
4    cover stories as to why I have had to suddenly leave school
5    and go to New York.  For a year and a few months I have been
6    afraid to fall asleep because the nightmares get to be
7    unbearable.  I have been going to weekly therapy to erase my
8    wish that he had killed me like he said he would.  I have
9    been afraid that somehow the secret of my assault would come
10   to light and everyone would look at me differently, with
11   pity.

12   I have been living in a constant cycle of fear and
13   shame.  The fear that I will be hurt again and the shame of
14   feeling like damaged goods.  That fear that I will be
15   alienated if anyone knew and the shame of not being able to
16   fight back.

17   I have been terrified that somehow my family or
18   friends would be hurt by my decision to come forward.  I
19   feel guarded and sheltered because I don't want to trust
20   anyone enough to let someone hurt me again.

21   I can't go outside without my keys between my
22   fingers and my head down.  And I still feel intimidated by
23   being told that naked pictures of me would become public.
24   Every time I see someone that looks remotely like my
25   attacker I feel my body go into shock.  I cannot breathe and

1    I still feel his hands around my neck.  And I feel a panic

2    that comes from not knowing if I would be able to defend

3    myself against someone if I had to.

4          The control that my attacker took from me stirred

5    deeply routed self doubts and feeling of weakness.  In this

6    society victims are constantly fed information that tells

7    them it is their fault that they were attacked, questions

8    like what were you wearing or why didn't you scream, how

9    much were you drinking, why didn't you fight back.  These

10   things run through the media and put blame on people that

11   were hurt instead of people that committed the crime.  While

12   it is easy to tell another victim that it is not their

13   fault, these questions haunt me and make it impossible

14   beyond reason for me to ever see that I did not cause this

15   incident because I opened the door.

16         I feel like I don't know myself and I could not

17   stand to look at myself in the mirror.  I felt ashamed that

18   I had become a weak victim and I hated it.  I hated him and

19   I hated what he made me do and I hated myself for not being

20   able to stop it and I hate everyone else for being normal.

21   I envy people that are not afraid to be close or too

22   friendly and I hate that I cause my family so much pain and

23   sorrow and worry for my well-being.

24         I constantly feel the need to assert myself as a

25   capable person that does not need coddling when all I want

1    is to feel safe again.  I hope that I feel comfortable in my

2    body and that I don't hate to look at myself anymore.  I

3    hope that some day I will be able to love people without

4    fear, that I will be able to hug and kiss and be a regular

5    girl, a normal capable woman without being afraid.

6           Some day I will learn to forgive and hopefully

7    forget this even happened, then I will be free to live my

8    life unlimited.

9           That was the end of her statement.

10          If I could share mine if you give me one moment.

11          THE COURT:  Sure.

12          MS. LAKETA SMITH:  On July 16, 2014 my daughter

13   was at home hanging out in her pajamas on break from school

14   when this man came knocking on my door with the sinister

15   intent to assault and to sexually violate her.

16          After he assaulted her, he threatened to harm her

17   and me and photographed her naked so that he could extort

18   her into silence on an ongoing basis, his plan was to keep

19   her trapped by fear and shame and cut off from any

20   possibility of getting help.

21          Thank goodness she did call the police and she did

22   get help.

23          Who among us remembers their first kiss or their

24   first sexual experience.  For my daughter her memories will

25   not be of some beautifully awkward moment with a person of

1   her choosing.  Her memories will be of being unable to
2   defend herself in her own home against a violent criminal
3   more than twice her size and more than three times her age.
4   Her memories will include ambulances and the emergency room,
5   special victims unit detectives and trauma therapy for
6   years.  They will feature her having to get shots and
7   vomiting up a cocktail of drugs that were given to her to
8   prevent disease.

9        Her memories will be of being exhausted and
10  questioned and swabbed and probed and photographed by
11  strangers collecting evidence.

12       This should never be visited upon any child or any
13  person.  His act of inhumanity against my daughter turned a
14  talented bright girl who once had the confidence to sing
15  before thousands in a Tony award winning Broadway show to a
16  mistrustful anxious girl who has nightmares, insomnia and
17  flashbacks that happen in unexpected moments.  All this
18  while she is just trying to figure out how to live.

19       Add to that the disruption of having to leave
20  school and stand up in this courtroom to face this attacker
21  and describe in detail to complete strangers what had
22  happened to her and then return to school to a mountain of
23  homework and missed assignments and tests that she needs to
24  make up for like a normal teenager.

25       This crime was a violation against my daughter's

1    mental, physical, sexual and emotional well-being.  It has

2    also caused financial distress in missed work, medical

3    bills, travel expenses, difficulty finding housing that we

4    can afford and therapy for my daughter indefinitely.

5         It has also instilled pain and guilt and confusion

6    in Cypress' little brother who thought this was a good

7    person but who turned around and violated his sister in this

8    way.  It was a crime against my entire family.

9         We have heard that this is a violent person and I

10   just don't feel that he should be ever let out again to

11   inflict more damage on any person, family or community.

12        On behalf of my daughter who has to cope with this

13   for the rest of her life and of my family, I ask that you

14   issue the maximum sentence, he should not be given the

15   chance to harm another family like this again.

16        I just wanted to express my gratitude to the

17   police officers and the EMT staff who responded to my

18   daughter's call with compassion and dignity.  And to Ms.

19   Park and the hospital staff and social workers who worked

20   with us, for supporting us through the way so that we can

21   put our lives together and move forward in some kind of

22   peace.

23        Thank you.

24        THE COURT:  Thank you, Ms. Smith.

25        Ms. Smith, I would like to thank you and your

1    daughter Cypress for your courage throughout the proceedings

2    and the dignity that you both demonstrated throughout these

3    proceedings.

4                I think it is very telling that the defendant was

5    present and in court during the complainant's testimony and

6    yet chose to absent himself once she finished testifying.

7                I think that is consistent with the character that

8    Mr. Harrell has displayed and indicative of the control that

9    he seeks to exert over others, the way that he tries to

10   influence others.

11               I want to make clear for the record that I don't

12   take it lightly at all that we are going to sentencing

13   without the defendant being present.  In fact, I don't ever

14   recall doing it before.  If I did, I don't remember it.

15               But the record is clear as to everything that Mr.

16   Harrell did during the course of this trial and the ways

17   that he basically tried to highjack these proceedings to

18   make them his own, he wanted things done his way and only

19   his way.  And when that did not happen, he absented himself.

20   And this Court despite its greatest efforts to, could not

21   compel Mr. Harrell to come back to court.

22               So I am sorry, Ms. Smith, that you were not able

23   to address those words directly to him and he was not here

24   for that and he deprived you of that.

25               As Ms. Park said, we all had the opportunity to

1      see Mr. Harrell during the course of this trial, we saw how

2      he tried to intimidate the court officers in this courtroom,

3      he tried to intimidate the sergeants, he even tried to

4      intimidate the Court.  It did not matter to him that the

5      court officers outnumbered him or had weapons, it did not

6      matter to him that the Court was wearing a black robe, it

7      was still his way or the highway.

8              So one can only imagine what it must have been

9      like for Cypress to be alone with that man, alone in an

10     apartment with no one to help her, no one to hear her pleas

11     for help.  And we can only speculate as to just how

12     terrified she must have been to be at the hands of what can

13     only be described as a bully, 210 pound bully trying to have

14     his way with a young lady and depriving her of her

15     innocence.

16             I think that if ever a case cried out for the

17     maximum sentence this is it.  Not only because of the

18     conduct that he demonstrated and was proven beyond a

19     reasonable doubt to a jury of 12 people who unanimously

20     found him guilty, but also by the conduct that he exhibited

21     here in this courtroom as well as his criminal history.

22             So on count one and two, this Court will impose

23     the maximum sentence of 25 years incarceration to be

24     followed by 15 years of post release supervision.  On count

25     three the Court will impose a sentence of 15 years

*Vikki J. Benkel*
*Senior Court Reporter*

A952

1    incarceration to be followed by 15 years post release

2    supervision.  On counts four and five the Court will impose

3    a maximum sentence of seven years incarceration to be

4    followed by 15 years post release supervision.  And on

5    counts six and seven, this Court imposes a sentence of four

6    years incarceration to be followed by 15 years post release

7    supervision.  All of these sentences are to run

8    concurrently.

9              Thank you.

10             And there is also a final order of protection.

11             MS. PARK:  Yes, Your Honor.

12             THE COURT:  The Court will sign the order.

13             Thank you all.

14             COURT OFFICER:  I took the order of protection

15   into the corrections facility so that Mr. Harrell will be

16   given the opportunity to sign it if he so wished to do so,

17   and he refused.

18             THE COURT:  Thank you very much.

19

20        I, Vikki J. Benkel, a Senior Court Reporter in and for
     the State of New York, do hereby certify that the foregoing
21   transcript is true and accurate to the best of my knowledge,
     skill and ability.

22

23        _____
                    Vikki J. Benkel
24

25

*Vikki J. Benkel*
*Senior Court Reporter*

A953

# St. Luke's-Roosevelt Hospital Center



## COMPREHENSIVE SEXUAL ASSAULT ASSESSMENT FORM  Page 1 of 6

SMITH, CYPRESS
ED1544348
MR# 200004657493
SER# 00048974703
DOB 04/21/1999   F
VST DATE 07/16/2014   15

*PLEASE PRINT CLEARLY*

Date: 7/16/2014

Patient Name: Cypress Smith                    Contact No.: _____

*S.A.F.E.   1) _____    Contact No.: _____
Examiner(s):

             2) _____    Contact No.: _____

Provider: Anjali Singh and Simran     Dept: Emergy Medicine  Contact No.: 212-523-___
(If not *S.A.F.E Examiner)        Bittar

*\* Sexual Assault Forensic Examiner*

### PATIENT CONSENT

I understand that if I consent, an examination for evidence of sexual assault will be conducted. I may withdraw consent at any time for any portion of the examination. I understand that the collection of evidence may include photographing injuries, which may include injuries to the genital area. I understand that if I consent, such evidence will be released to the police at this time; and that if I do not consent, such evidence will be preserved at the Hospital for one year.

I consent to:

Physical Examination:        ☒ Yes   ☐ No
Photographing of Injuries:   ☒ Yes   ☐ No
Collection of Evidence:      ☒ Yes   ☐ No
Release of Evidence to Police: ☒ Yes  ☐ No
Verbal Communication by Hospital Personnel with Prosecutorial Agency:   ☒ Yes   ☐ No

Signature of Patient _____   Date 7/16/2014

Signature of Witness _____   Date 7/16/2014

Print Name of Witness _____(ANJALI SINGH)_____

### LOG OF ITEMS TAKEN FROM SURVIVOR FOR EVIDENCE

1. Shorts                     4.

2. tank top                   5.

3. shirt                      6.

A954

LEASE PRINT CLEARLY

## 1. INITIAL ASSESSMENT

Date of Birth: 4/21/1999 ☐ Male ☒ Female

☒ African-American ☐ Asian/Pacific Islander ☐ Caucasian ☐ Hispanic ☐ Other _____

Physical Disability: ☐ Yes ☒ No If "Yes," describe: _____

☐ Check here if Interpreter was used

Primary Language if not English: _____

## 2. PERTINENT PAST MEDICAL HISTORY

None

LMP: 3 weeks prior to today

Allergies: Ø

Medications: Ø

Last Tetanus Immunization: Up to date/2010 Hepatitis B immunization: ☒ Yes ☐ No

## 3. SEXUAL ASSAULT HISTORY

Date of Sexual Assault: 7/16/2014 Time of Sexual Assault: 2:15 ☐ AM ☒ PM

Time Elapsed Between Assault and Exam: 0 days 4.5 hours

Location of Sexual Assault (include exact address if known):
92 Saint Nicholas Avenue Apartment 2G, New York, NY 10026

### Type of Violations Perpetrated against Survivor during Sexual Assault:

Vaginal Contact ☒ Yes ☐ No ☐ Unsure  Oral Contact (offender to survivor) ☒ Yes ☐ No ☐ Unsure

Anal Contact ☐ Yes ☒ No ☐ Unsure  Oral Contact (survivor to offender) ☒ Yes ☐ No ☐ Unsure

Condom Used ☐ Yes ☒ No ☐ Unsure

Use of Foreign Object ☐ Yes ☒ No ☐ Unsure If "Yes," describe: _____

Foam/Jelly/Lubricant ☐ Yes ☒ No ☐ Unsure If "Yes," describe: _____

Use of Weapon ☐ Yes ☒ No ☐ Unsure If "Yes," describe: _____

Other:

### Brief Narrative of Assault (optional)

Patient was making smoothie, allowed neighbor in who asked for smoothie that patient was making. Patient was threatened by neighbor. Neighbor then asked patient to undress. Neighbor asked patient to perform oral sex on him and then neighbor performed oral sex on patient. Penis contacted vagina/no penetration. Neighbor ejaculated during exam or ejaculation.

### Actions Before or After Assault

Has the survivor had consensual sex within the last 72 hours? ☐ Yes ☒ No ☐ Unsure If "Yes," when: _____
No penetration

After the sexual assault, has the survivor:

| | | | | | |
|---|---|---|---|---|---|
| Urinated? | ☒ Yes ☐ No | Bathed/showered? | ☐ Yes ☒ No | Changed underwear? | ☐ Yes ☒ No |
| Defecated? | ☐ Yes ☒ No | Douched? | ☐ Yes ☒ No | Changed clothes? | ☐ Yes ☒ No |
| Vomited? | ☐ Yes ☒ No | Brushed teeth? | ☐ Yes ☒ No | Changed sanitary product? | ☐ Yes ☒ No |
| | | Used mouthwash? | ☐ Yes ☒ No | Other: _____ | |

## COMPREHENSIVE SEXUAL ASSAULT ASSESSMENT FORM   Page 3 of 6



SMITH, CYPRESS
ED1544348
MR# 200004657493
SER# 00048977470S
DOB 04/21/1999      F
VST DATE 07/16/2014  15

*PLEASE PRINT CLEARLY*

## 4. PHYSICAL EXAMINATION

**General Appearance**

Abrasion to right cheek, otherwise well appear the

**General Medical Examination** *(use Traumagram on last page as appropriate)*

Abrasion / Scratch on right cheek

**Colposcopic Examination** - to be completed prior to pelvic exam and forensic evidence collection
*(use Traumagram on last page as appropriate)*

- **FEMALE**                    None preformed

| | |
|---|---|
| Labia majora | Vagina |
| Labia minora | Hymen |
| Clitoris | Cervix |
| Posterior fourchette | Perineum |
| Fossa navicularis | Anus |
| Periurethral | Rectum |
| Vestibule | Other |

- **MALE**

| | |
|---|---|
| Penis | Rectum |
| Perineum | Scrotum |
| Anus | Other |

**Pelvic/Genital Examination**

- **FEMALE**                    No lesions not CCD

| | |
|---|---|
| Labia majora | Vagina |
| Labia minora | Hymen |
| Clitoris | Cervix |
| Posterior fourchette | Perineum |
| Fossa navicularis | Anus |
| Periurethral | Rectum |
| Vestibule | Other |

- **MALE**

| | |
|---|---|
| Penis | Rectum |
| Perineum | Scrotum |
| Anus | Other |

*PLEASE PRINT CLEARLY*

## 5. EXAMINATION TECHNIQUES

| | | | |
|---|---|---|---|
| Direct visualization | ☒ Yes ☐ No | Evidence Kit collected | ☒ Yes ☐ No |
| Bimanual exam | ☐ Yes ☒ No | Photos taken | ☒ Yes ☐ No  How many?: _____ |
| Speculum exam | ☐ Yes ☒ No | Area(s) of body photographed: _____ |
| Colposcopic exam | ☐ Yes ☒ No | face / abrasion (2) cheek |
| Toluidene Blue | ☐ Yes ☒ No | abrasion |
| Wood's Lamp | ☐ Yes ☒ No | |
| Anoscope | ☐ Yes ☒ No | |

## 6. DIAGNOSTIC TESTS

| | | | |
|---|---|---|---|
| Pregnancy test: | ☒ Yes ☐ No | | |
| Gonorrhea: Cervical | ☐ Yes ☒ No | Chlamydia: | ☐ Yes ☒ No |
| Urethral | ☐ Yes ☒ No | VDRL: | ☐ Yes ☒ No |
| Rectal | ☐ Yes ☒ No | Hepatitis B serologies: ☒ Yes ☐ No |
| Pharyngeal | ☐ Yes ☒ No | Urine for Rohypnol & other amnestics: ☐ Yes ☒ No |

## 7. STD PROPHYLAXIS

Gonorrhea: ☒ Yes ☐ No    Chlamydia: ☒ Yes ☐ No    Trichomonas/BV: ☐ Yes ☒ No    Hepatitis B: ☐ Yes ☒ No

## 8. HIV POST-EXPOSURE PROPHYLAXIS

Worksheet Completed    ☒ Yes ☐ No

## 9. POST-COITAL CONTRACEPTION

☒ Yes ☐ No

## 10. REFERRALS GIVEN

☒ Crime Victims Treatment Center    ☒ Gyn Clinic    ☒ Patient's Primary Care MD

## 11. CHAIN OF CUSTODY

Name of Person Receiving Evidence ___Officer Hager___

ID#/Shield# ___29807___    Agency ___NYPD 28th precinct___

## ADDITIONAL NOTES OR COMMENTS

None

## PROVIDER SIGNATURE

A957

## COMPREHENSIVE SEXUAL ASSAULT ASSESSMENT FORM   Page 5 of 6

SMITH, CYPRESS
ED1544348
MR# 200004657493
SER# 000489774703
DOB 04/21/1999        F
VST DATE 07/16/2014   15



*PLEASE PRINT CLEARLY*

**TRAUMAGRAM - GENERAL**

PLEASE PRINT CLEARLY

## TRAUMAGRAM - GENITAL



None/Normal genitalia?

no trauma noted

ORAL

ANAL



### ST. LUKE'S ROOSEVELT HOSPITAL CENTER
### HIV PEP FOR SEXUAL ASSAULT PATIENTS
### CENTER FOR COMPREHENSIVE CARE (CCC) REFERRAL SHEET

```
SMITH, CYPRESS
ED1544348
MR# 200004657493
SER# 000489774703  F
DOB 04/21/1999      15
VST DATE 07/16/2014
```

Patient Name _____

MR # _____    * Age: _____

ED where patient seen: _____ Roosevelt    ✓ St. Luke's

Date of Assault  7/16/2014    Time of Assault  1530

Date of Emergency Dept. Visit  7/16/2014    Time First Dose PEP Given  2039

PEP Medications Given  YES  _____

Date of CCC Appointment  7/17/2014

Labs Sent:  ✓ Urine pregnancy POCT    If sent: _____ Negative _____ Positive
           ✓ HIV rapid POCT          If done: _____ Negative _____ Positive
           ✓ CBC
           ✓ Basic Metabolic Panel
           ✓ LFP's
           ✓ CBC
           ✓ Urinalysis (to Lab)
           ✓ HepBs and Hepatitis C Antibodies
           ✓ RPR

Other Rx in Emergency Dept.:   ✓ GC/ Chlamydia prophylaxis
                                 Hepatitis B Vaccine
                               ✓ Emergency Contraception

PROVIDER NAME  ANJALI  SINGH          ✓ MD _____ PA _____ RN
                    *(Please print)*

- **FAX this sheet to ext. 36023 (CCC) from the ED**
- **Leave a VOICEMAIL at x36050 (CCC) with referral info: name of patient, date of CCC appointment, whether appointment is for Samuels or Morningside Clinic**
- **Instruct patient to report at 9:00 AM to:**
  - **Samuels Clinic (Roosevelt patients) or Morningside Clinic (St. Luke's patients)**
  - **\*Adolescent patients:   all patients 18 and younger seen at either site should be referred to Morningside Clinic at St. Luke's**
- **Give patient attached preprinted directions to appropriate clinic**

---

*The information contained in this transmission is confidential and may be privileged and/or contain confidential health information that is legally protected by state and federal law, including the Health Insurance Portability and Accountability Act of 1996 and related regulations. This information is intended only for the use of the individual or organization to whom it is addressed. If it is not meant for you please notify the sender immediately by telephone so arrangements may be made to return the documents or destroy them. Use, disclosure, distribution or copying of documents transmitted to you in error is strictly prohibited. Thank you.*

1/2013

**ST. LUKE'S ROOSEVELT HOSPITAL CENTER**
**HIV PEP FOR SEXUAL ASSAULT PATIENTS**
**CENTER FOR COMPREHENSIVE CARE (CCC) REFERRAL SHEET**

Patient Name _____

MR # _____                                 * Age: _____

ED where patient seen: _____ Roosevelt _____ ✓ St. Luke's

Date of Assault  7/16/2014                    Time of Assault _____

Date of Emergency Dept. Visit  7/16/2014      Time First Dose PEP Given _____

PEP Medications Given    YES

Date of CCC Appointment   7/17/2014

Labs Sent: ___ Urine pregnancy POCT      If sent:  ___ Negative ___ Positive
           ___ HIV rapid POCT            If done:  ___ Negative ___ Positive
           ___ CBC
           ___ Basic Metabolic Panel
           ___ LFF's
           ___ CBC
           ___ Urinalysis (to Lab)
           ___ HepBs and Hepatitis C Antibodies
           ___ RPR

Other Rx in Emergency Dept.:  ✓ GC/ Chlamydia prophylaxis
                              ___ Hepatitis B Vaccine
                              ___ Emergency Contraception

PROVIDER NAME   ANJALI SINGH              ✓ MD    ___ PA    ___ RN
                      (Please print)

* FAX this sheet to ext. 36023 (CCC) from the ED
* Leave a VOICEMAIL at x36050 (CCC) with referral info: name of patient, date of CCC appointment,
  whether appointment is for Samuels or Morningside Clinic
* Instruct patient to report at 9:00 AM to:
    o   Samuels Clinic (Roosevelt patients) or Morningside Clinic (St. Luke's patients)
    o   *Adolescent patients:   all patients 18 and younger seen at either site should be referred
        to Morningside Clinic at St. Luke's
* Give patient attached preprinted directions to appropriate clinic

*The information contained in this transmission is confidential and may be privileged and/or contain confidential
health information that is legally protected by state and federal law, including the Health Insurance Portability and
Accountability Act of 1996 and related regulations. This information is intended only for the use of the individual or
organization to whom it is addressed. If it is not meant for you please notify the sender immediately by telephone
so arrangements may be made to return the documents or destroy them. Use, disclosure, distribution or copying
of documents transmitted to you in error is strictly prohibited.  Thank you.*                            1/2013

***SUCCESSFUL TX NOTICE***

STATUS        :  OK
PAGES SENT    :  1
END TIME      :  07.16 21:29
START TIME    :  07.16 21:28
DOCUMENT PAGES :  1
TO            :  ☎ 912125236023
DATE         :  07.16 21:28
FILE NO.      :  670

MEMORY TRANSMISSION REPORT

TIME     :07-16-2014 21:29
FAX NO.1 :2125234956
NAME     :Emergency Dept

A961

## AUTHORIZATION FOR RELEASE OF INFORMATION AND EVIDENCE TO LAW ENFORCEMENT AGENCY

(Please print, type or use a patient information stamp)

Patient's Name: _Cypress Smith_

Date of Birth: _04/21/1999_

Hospital Number: _____

I hereby authorize: _ST. LUKES/MT. SINAI_
(Name of Hospital)

to release the following information covering treatment
given to me
on _07_ _16_ _2014_ to _NYPD_
Month   Day   Year      (Name of law enforcement agency)

```
SMITH, CYPRESS
ED1544348
MR# 200004657493
SER# 00489774703   F
DOB 04/21/1999    15
VST DATE 07/16/2014
```

|  | AUTHORIZED FOR RELEASE | NOT AUTHORIZED FOR RELEASE |
|---|---|---|
|  | (Check those which apply) | |
| 1. One sealed evidence kit, including specimens collected | ☑ | ☐ |
| 2. X-rays or copies of X-rays taken in connection with examination | ☐ | ☒ |
| 3. Photographs | ☒ | ☒ |
| 4. Clothing | ☐ | ☐ |
| 5. Other | ☐ | ☐ |

Name of person authorizing release of
information (please type or print): _____
Last                 First              Middle       Date

Person authorizing release of
information is (check one):  ☐ Patient  ☒ Patient's Parent  ☐ Patient's Guardian  ☐ Other (Specify) _____

Signature of person authorizing
release of information _____

## RECEIPT OF INFORMATION

I certify that I have received the following items (check those which apply):

☐ One sealed evidence kit       ☐ X-rays or copies of X-rays       ☐ Photographs

☒ Sealed clothing bag(s) (If more than one sealed clothing bag, please note): _____

☐ Other _____

Print name of person receiving information and articles _____

Signature of person receiving
information and/or articles: _____   Date _7/16/14_   Time _8:38 PM_

ID#/Shield#/Star#/Title: _____ 933071 ____   Precinct/Command/District _33 Pct_

Person receiving article(s) is representative of _____

Name of person releasing articles: _ANJALI SINGH_   _____
                                      Printed Name              Signature

Distribute:  One copy to patient
             One copy to medical record
             One copy to law enforcement agency



Health Practitioner:

Signature

Print Name

Distribute: One copy to medical record
One Copy to Law enforcement agency

Patient  SMITH, CYPRESS
         ED:544348
         MR# 2000465749
         ACC# 000489774703
         DOB 04/21/1999        F
         VST DATE 07/16/2014    15
Hospital
Date:

A963



Print name or use patient plate

SMITH, CYPRESS
ED1544348
MR# 200004657493
SER# 000489774703    F
DOB 04/21/1999        15
VST DATE 07/16/2014

## MEDICAL RECORD SEXUAL ASSAULT FORM

**I. HISTORY**          DATE OF VISIT _7/16/2014_ TIME _1935_

Significant past medical history: _none_

Approximate Time of Attack_____ Is patient pregnant?_____ LMP_____ Medications_____ Allergies_____

Date of Attack _7/16/2014_ Usual form of birth control _____

Is patient bleeding from an injury?   Yes_____  No__✓__

If yes, describe location _____

**II. PHYSICAL EXAMINATION** (Note all evidence/details of trauma): _normal._

**III. PELVIC/GENITOURINARY EXAM**

Ext/BUS/Hymen_____ Cervix_____ Adnexae__✓__ Vagina_____ Uterus_____ Rectal_____ Penis_____ Scrotum_____

**IV. DIAGNOSTIC TESTS**

Pregnancy test__✓__ GC Cultures___*___ (Pharyngeal_____ Cervical_____ Urethral_____ Rectal_____ ) VDRL_____

Chlamydia_____ Hepatitis B__✓__ Other_____

**V. TREATMENT**

Tetanus Toxoid_____ Pregnancy Prevention__✓__ STD Prophylaxis__✓__ Other _____

**VI. EVIDENCE COLLECTION:**

Evidence collected? Y__✓__ N_____ Evidence kit released to law enforcement Y_____ N_____

Written consent? Y__✓__ N_____

**VII. FOLLOW UP APPOINTMENT**

1. Medical:   (Adults should be seen within 2 weeks)        2. Counseling:

Examining Health Practitioner:-

Signature

Print Name   _ANJALI SINGH_

Health Practitioner:

Signature

_Simran Buttar_

Print Name

*One copy to Medical Record.*
*One copy to CVB if Medical Provider is applying for direct reimbursement.*

A964

# St. Lukes Emergency Department
## 1111 Amsterdam Avenue NY, NY 10025
### 212-523-3335

**Prescriptions Received:** Truvada 200 mg-300 mg tablet, Isentress 400 mg tablet

**Discharge Instructions Received:** CERTIFICATE of TREATMENT, HIV - TEST RESULTS NEGATIVE

**Drug Instructions Received:**

Referral/Appointment:
  Refer Patient To:: GANDHI, VANI - Center - Comprehensive Care
  Phone Number: 212-523-3847
  Follow-up in: 1 day
  Address: Spencer Cox Center for Health 390 Morningside New York, NY
  10025

  Refer Patient To:: CRIMES VICTIMS TREATMENT CENTER (SL)
  PMD/Clinic not in list: mandatory
  Phone Number: 212-523-4728
  Follow-up in: next available appointment



```
SMITH, CYPRESS
ED1544348
MR# 200004657493
SER# 000489774703   F
DOB 04/21/1999    15
VST DATE 07/16/2014
```

I authorize the release of medical information to the physicians to whom I am being referred or to my private physician.

Patient Initials: _____

I hereby acknowledge receipt of the instructions indicated above. I understand that I have had emergency treatment and that I may be released before all my medical problems are known or treated. I will arrange for follow-up care as instructed above.

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***
**Please go to the Morningside clinic at 9am tomorrow, 390 west 114 th st, 3rd floor Scrymser bldg.**
**phone number 212 523-6500**
**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

Date/Time: 07/17/14 00:04:43                    Treating MD: MD ANJALI SINGH

Patient Signature: _____
Account Number: 000489774703
Medical Record Number: 200004657493

**I have removed IV access/heplock:** ____YES ___NO ___NOT APPLICABLE

RN/LPN/MD _____         Date: 7/17/14

I have explained the instructions and have given a copy to the patient.

Signature: _____         Date: 7/17/14
Emergency Primary Nurse: JESSICA ST. FELIX, RN

**EmSTAT Report of Home Medications,**
**Medications Given and Medications Prescribed**

**Mount Sinai St. Luke's**
1111 Amsterdam Avenue
New York, NY 10025

**Emergency Department**     212-523-3335

Name: Smith, Cypress                                      Sex: F
MR #: 200004657493
Account #: 000489774703
DOB: 21-Apr-1999          Age: 15          Weight:
Chief Complaint: Sa
Prim Diagnosis:
ED Physician: SINGH, ANJALI - Emergency Medicine
PCP: * YOUR PRIVATE PHYSICIAN/CLINIC

---

Our records indicate that at the time of discharge you are taking these medications.
Please share this list with the physician providing your follow-up care

**Allergies:**
    NKDA

## Home Medications
Recorded by SIMRAN BUTTAR, MD - 07/16/2014 17:39

| Medication/Route/Dose/Frequency | Last Dose | Disposition | PCP Contacted |
|---|---|---|---|
| None | | Continue/Stop | No |

Comment:

## Medications Given in ED
No Medications Given

## Medications Prescribed by ED Physician
No Medications Prescribed

---

Verified By: _____                    PCP / EDMD (circle one)    Date/Time: _____



## NEW YORK STATE CRIME VICTIMS BOARD
## MEDICAL PROVIDER FORENSIC RAPE EXAMINATION
## DIRECT REIMBURSEMENT CLAIM FORM

**INSTRUCTIONS:** This form is to be used when a healthcare provider is directly billing the New York State Crime Victims Board for reimbursement of costs associated with providing a forensic rape or sexual assault examination.

(1) Fill in all blanks on this form.
(2) Attach: Itemized bill including Physicians Procedural Terminology (CPT) Codes.

(3) Mail the completed form and all attachments to:
New York State Crime Victims Board
Attn: FRE Processing
1 Columbia Circle, Suite 200
Albany, New York 12203

All Sections ONE through THREE must be completed.

### SECTION ONE. VICTIM INFORMATION  (TO BE COMPLETED BY MEDICAL PROVIDER)

Date of Crime _7/16/2014_  Location of Crime: (city) _New York City_ (county) _New York City_ (state) _New York_

Victim's Name _CYPRESS SMITH_

Address _92 St. Nicholas Avenue Apartment 2 G. New York, NY 1002_

Date of Birth _4/21/1999_  Social Security Number _____

Was a Sexual Offense Evidence Collection Kit or Drug Facilitated Sexual Assault Kit used?  ☐ Yes  ☒ No

It is not necessary that the crime be reported to the police.  If applicable and available, provide the following information:

Police Department _____  Complaint# _____

### SECTION TWO. BILLING PROVIDER INFORMATION (TO BE COMPLETED BY MEDICAL PROVIDER)

Billing Provider Federal I.D. Number _13-2997301_  Date of Forensic Exam _____

Billing Provider Name _SLRHC - St. Luke's Division_  Operator Certificate or Facility I.D.# _1469_

Address _411 West 114th Street #2C New York, NY 10025_

Billing Department Contact Person _Monica Pombo_  Phone Number (212) 523-4727

The Provider, by law, shall not bill the victim for these services.  Payment made to the Provider by the New York State Crime Victims Board for the forensic rape examination or other physical examination conducted for the purpose of gathering evidence as a direct result of the sexual offense shall be considered by Provider as payment in full.

### SECTION THREE. VICTIM INSURANCE WAIVER  (TO BE COMPLETED BY VICTIM/GUARDIAN)

- The law requires that the victim be advised orally and in writing that he or she may decline to provide insurance information. I have been fully advised of the options of payment for the forensic exam and the outcomes resulting from my forensic payment decision.  I understand that I may use private insurance benefits, including Medicaid, Medicare, HMO or any other insurance program for payment of the forensic exam provided to me.  I choose not to use my private insurance benefits but request that the NYS Crime Victims Board be billed directly.
- I decline to provide such information regarding private health insurance benefits because I believe that the provision of such information would substantially interfere with my personal privacy or safety.
- I have been advised that I will have to use my private insurance if I file a claim with the Crime Victims Board for other medical services outside of the forensic exam.

Victim/Guardian Name (Print or Type): _Laketa Smith_

Victim/Guardian Signature: _Laketa Smith_  Date _7/16/14_

Forensic Examiner Name (Print or Type): _____  License #: _____

Forensic Examiner Signature: _____  Date _____

Green

# Prehospital Care Report Summary

## North Shore University Hospital Ambulance Service

Date:07/16/2014 Call #:2080  Booklet:  Branch: NYC 911 - Lenox Hill (#10)

| Call Information: | | # Patients Transported | |
|---|---|---|---|
| | | **In My Unit:** | 1 |
| **Disposition:** | Treated / Transported | **# Patients at Scene:** | N/A |
| **Unit #:** | 10C2 - 10C2, Ambulance - Land   **Trip Type:** | | |
| **Run Type to Scene:** | Emergency (Immediate) | | |
| **Incident Facility:** | | **Call Received:** | N/A |
| **Incident Location:** | 92 ST NICHOLAS AVE #2G - New York, NY (New York County) | **Dispatched:** | 14:31:00 |
| **Incident Type:** | N/A | **En Route:** | 14:31:00 |
| | | **On Scene:** | 14:42:00 |
| **Receiving Facility:** | St. Luke's Roosevelt (#20-NYC) (Hospital) - 1111 AMSTERDAM AVE - New York, NY 10027 | **Patient Contact:** | 14:42:00 |
| | | **Left Scene:** | 15:32:00 |
| **Facility Address:** | 1111 AMSTERDAM AVE - New York, NY 10027 | **At Destination:** | 15:48:00 |
| **Destination Type:** | | **Transfer of Care:** | |
| **Dest. Reason:** | Patient /Family Choice | **In Service:** | N/A |
| **Registration #** | N/A | | |
| | | **Time On Scene:** | 50 Min |
| **Loaded Mileage:** | 0.9 (Total Mileage: 0.9) | **Time to Destination:** | 77 Min |
| **Crew Members:** | Donald Grande Jr., EMT Basic*(DS)(DH)* ( NYNEMSIS: 376260 ) ; Tina Danens, EMT Basic*(DOC)* ( NYNEMSIS: 362485 ) | **Total Time of Run:** | N/A Min |

**Moved to Amb By:** Walked with Assist  **Transport Position:**   **From Amb By:**

**Call Origin:**   911   **Lights/Siren:** Scene-Not used / Destination-Not used

## Patient Information:

| | | | |
|---|---|---|---|
| **Name:** | CYPRESS E SMITH | **DOB:** | 04/21/1999 |
| **Address:** | 92 ST NICHOLAS AVE #2G - New York, NY 10027 | **Gender:** | Female |
| **Phone:** | (917) 975-7475 | **Age:** | 15 Years |
| **Email:** | | **Weight:** Broselow: | |
| **SSN:** | -- | | |

**Driver License:**

| | | | |
|---|---|---|---|
| **Current Meds:** | None | **Comments:** | |
| **Env Allergies:** | NKA | **Comments:** | |
| **Med Allergies:** | NKDA | **Comments:** | |

**Patient Physician:**
**Advanced Directives:**
**PMH:**   None
**Comment:**

## Payer Information:

| | | | | |
|---|---|---|---|---|
| **Priority: Primary  Name:** | | **Type:** | **Policy #:** | **Group #:** |
| **Policy Holder:** , , Apt , NY | | | **Phone:** | **DOB:** |
| **Priority: Secondary  Name:** | | **Type:** | **Policy #:** | **Group #:** |
| **Policy Holder:** , , Apt , NY | | | **Phone:** | **DOB:** |

## Clinical:

**Medical Need:**

**Onset Date/Time:**
**Dispatch Reason (EMD):** RAPE  RAPE - Rape

**Chief Complaint:** Assault Sexual
**Provider Impression:** Trauma Injury
**Mechanism of Injury:** Assault Sexual
**Protocol 1:**                 **Protocol 2:**

```
SMITH, CYPRESS
ED1544348
MR# 200004657493
SER# 000489774703   F
DOB 04/21/1999    15
VST DATE 07/16/2014
```


## FlowChart: