1: Crim. Sex. Act in the 1st. Dergree (P.L. 130.50(1)

2. Crim. Sex Act in the 1st. Degree (P.L. 130.50(1)

3. Att. Rape in the 1st. Degree (P.L. 110/130.35(1)

4. Sex. Abuse in the 1st. Degree (P.L.130.65(1)

5. Sex. Abuse in the 1st. Degree (P.L. 130.65(1)

6. Crim. Sex Act in the 3rd. Degree (P.L. 130.40(2)

7. Crim. Sex Act in the 3rd. Degree (P.L. 130.40(2)

3.On **October 21, 2015**, I was sentenced to <u>**25 years and 15**</u> **Post Release**.

My basis for challenging my conviction are as follows:

## <u>C.P.L. 440.10(1)(b)</u>

4. (a) <u>**Multiplicity**</u>: This Procedural violation occured when Prosecutor " Cyrus R. Vance,Jr. " prepared and submitted an Indictment to a Grand Jury on **September 19, 2014**, which contained 2 Counts of **Crim. Sex. Act in the 1st. Degree (P.L. 130.50(1), 2 Counts of Sexual Abuse in th 1st. (P.L. 130.65(1) and 2 Counts of Crim. Sex Act in the 3rd. (P.L. 13040(2).** The People seen fit to create a latter of offenses which were pursuant to the same, incident, conduct, victim and both offenses fully rely uopn the same statutory elements. In submitting the above mentioned multiple offenses to a Grand Jury, Prosecutor " Cyrus R. Vance,Jr. " immediately placed the Defendant twice in jeopardy of being Indicted for the same offenses. **See. Indictment Ex. (A)**.

5. On **Septmember 19, 2014**, the Grand Jury illegally chose to Indict the Defendant on all counts also subjected the Defendant to " Multiplicity ".

6. Charging a single offense in several counts is improper.

(2)

Multiplicity can lead to " Multiple Sentences for the same offenses ". See. U.S. v. Reed, 639 F. 2d. 896, 904 See. Ex. (B) and may suggest to the jury that the Defendant has committed more crimes than are actually at issue. See. Peo. v. Demetsenare, 663 N.Y.S 2d. 299 Ex. (C). A Defendant who, in an uninterrupted course of conduct directed at a single victim, violates a single provision of the Penal Law, committs but one crime and if one count contains no alleged facts that are not also required to be proven under another count, it is Multiplicitous. See. Peo. v. Garson, 793 N.Y.S. 2d. 539 & 815 N.Y.S. 2d. 887 Ex. (D). Here, the Defendant can make a clear showing that " Multiplicity " exist and that those counts affected the Defendant's Fundamental and Substantial Rights. Here, the multiple counts alleged violations of the same subdivisions of the Penal Law and no count can survive the " same elements test " as both counts are pursuant to the same victim and conduct. See. Peo. v. Bomani, 751 N.Y.S. 2d. at 865 (2nd. Dept. 2002) Ex. (E). " Same Offense " crime within the Statutory Double Jeopardy Clause must include essentially the same statutory elements or one must be lesser included offense of the other. See. Booth v. Clary, 613 N.Y.S. 2d. at 112 Ex. (F), Clearly, a State may not put a Defendant twice in jeopardy for the same offense. See. Arizona v. Washington, 434 U.S. 497 Ex. (G), See. Benton v. Maryland, 395 U.S. 784 Ex. (H).

7. In successfully obtaining an Indictment against the above named Defendant, Prosecutor " Cyrus R. Vance " placed the

(3)

Defendant twice in jeopardy of being convicted for the same offense.

## C.P.L. 440.10(1)(h)

8. (b) **Double Jeopardy**: This Constitutional violation transpired when my presiding judge " Juan Merchan " authorized the submission of the " Multiplicitous " counts to a trial jury on **October 7, 2015,** who rendered a verdict of guilty on all counts, thereby, subjecting the Defendant to an immediate **Double Jeopardy Clause violation.** (N.Y. Cosnt. Art. 1 & 6, U.S. Const. Amend. 5). Double Jeopardy is " **Binding** " on the States. **See. Fransaw v. Lynaugh, 810 F. 2d. 518 Ex. (I),** and " Multiplicitous " Indictments are prohibited by the Double Jeopardy Clause **See. U.S. v. Carrasco, 968 F. at 949 (S.D.N.Y.) Ex. (J).**

9. Double Jeopardy Clause of the Fifth Amendment is applicable to the State by the Fourteenth Amendment. **See. Lockett v. Montemango, 784 F. 2d. at 82 (2nd. Cir. 1986) Ex. (K).** The rationale for prohibiting Double Jeopardy is evident, it's protection extends beyond Federal and State Constitutional guarantees. Double Jeopardy rights are protected by Federal Constitution (U.S. Const. Amend. 5), State Constitution (N.Y. Art. 1 & 6) and State Statue (C.P.L. 40.20).

The facts of the Defendant's case clearly indicates that one alleged Unlawful Sexual Encounter transpired, and it involved one victim, yet the People seen fit to charge, Indict and convict the above named Defendant with multiple charges as if the Defendant is " guilty " of committing two offenses against two separate victims, more importantly, because the People failed to establish

(4)

a Prima Facie showing that the multiple offenses arose out of seperate incidents that involved the same victim and occured in " Rapid Succession " See. **Peo. v. Alejandro**, 517 N.Y.S. 2d. at 931 (Ct. Appeals/1987). **Ex.** (L), the multiple charges are pursuant to the same offense. The right not to be placed twice in jeopardy more than once for the same offense is a vital safeguard and a Fundamental ideal in our Constitutional heritage. **See. Ex.** (F) at 111. WHEREFORE, the Defendant respectfully seeks the DISMISSAL of his **Indictment** pursuant to Ind. **No.** 04258/2014.

### C.P.L. 440.10(1)(h)

11. (c) **Due Process:** A Defendant's right not be placed twice in jeopardy falls within the Due Process provisions of section 6 of Article 1 of our State Constitution. To deny a Defendant of such rights violates the Defendant's right to Due Process of Law which is guaranteed to the Defendant. A denial of Due Process must be considered a failure to observe that Fundamental Fairness is essential to the very concept of justice. See. **Peo. v. Molina**, 468 N.Y.S. 2d. at 558 **Ex.** (M), also See. **Kinsella v. United States**, 361 U.S. 234 **Ex.** (N). " Due Process of Law " is not a rigid or static expression, but it is a concept of what is Fundamentally just, fair and right. See. **Peo. v. Colozo**, 283 N.Y.S. 2d. 409 **Ex.** (O). Due Process of Law imposes upon Courts a duty to foster Fundamental Fairness essential to the very concept of justice, Clearly, one who is deprived of any right accorded to others in denied " Due Process of Law " (N.Y. Art. 1 & 6) also See. **Mc Donald v. Simonian**, 18 N.Y.S. 2d. at 372 **Ex.** (P).

12. (d) **Preservation:** In the above matter, the Defendant

(5)

A1051

contends that failure to object to his Double Jepardy claims is
of no consequence since he was subjected to Procedural, State and
U.S. Constitutional violations that are deemed so fundamental
that they are reviewable despite his failure to raise Double
Jeopardy objections at trial. A Defendant's State and U.S.
Constitutional Double Jeopardy claims are reviewable even if they
are not properly preserved. See. Peo. v. Michael, 420 N.Y.S. 2d.
at 373 Ex. (Q), also See. Peo. v. Patterson, 383 N.Y.S. 2d. 573
Ex. (R).

13. (e) Plain Error: Because there is no support for the
multstructuring of the Defendant's " Multiplicitous " Sexual
Misconduct counts, convictions on seperate occassions that are
pursuant to the same offense constitutes an " Error " that is
plain. For there to be " Plain Error " there must be an error
that is plain and that affects substantial rights. See. U.S. v.
Ben Zi, 242 F. 3d. 89 Ex. (S). Here, the Defendant has met this
criteria and seeks relief in the form of a DISMISSAL of his
Indictment. Reversal is required if unpreserved error is plain,
affected substantial Rights and seriously affected fairness,
integrity or Public Reputation of judicial proceedings. See. U.S.
v. Middlemiss, 217 F. 3d. 112. Ex. (T).

14. (f) Harmless Error: In the above matter, the Defendant
was prejudiced through the introduction of additional
impermissible Sexual Misconduct charges which placed the
Defendant twice in Jeopardy of being convicted for the same
offense. A Defendant's Right to Due Process of the 5th. Amendment
prohibiting Double Jeopardy is so basic to the concept of a fair

(6)

A1052

trial that it's denial can never be treated as " Harmless Error ". Some error's of Constitutional magnitude are so fundamental that their commission serve to invalidate the entire trial and they are simply not amendable to harmless error analysis. More importantly, when a Defendant is brought to trial in violation of his rights under Double Jeopardy Clause of the Fifth Amendment the very power of the Court to try him is implicated. See. **Peo. v. Michael**, 420 N.Y.S. 2d. 371 Ex. (Q) also **Blackledge v. Perry**, 417 U.S. 21. Ex. (U). Thus, a trial held in violation of the Double Jeopardy Clause must be deemed to be a " Nullity " having no legal effect **Peo. ex. rel. Zakrezewski v. Mancusi**, 292 N.Y.S. 2d. 892 and harmless error approach does not apply (U.S. Const. Amend. 5) also See. **Peo. v. Mayo**, 422 N.Y.S. 2d. at 366. Ex. (V).

15. (g) **Due Dilligence**: In opposition, it is likely that the People will argue that pursuant to paragragh (c) of subdivisions (2) and (3) of the C.P.L. 440.10 statue, that the Supreme Court is required to deny the Defendant's motion because the above mentioned facts appear on the record and that the above mentioned grounds or issue's were not raised upon direct appeal or any post conviction motion thus far. Here, it is the Defendant's claim that his 5th. Amendment protection is in conflict with the stipulations of C.P.L. 440.10(2)(c) & (3)(c) that was mandated by the Legislature. In essence, the Defendant's conviction is a Constitutional nullity, though the legislature has the authority to prescribe the procedures by which a Defendant can obtain a remedy for deprivation of a Constitutional right, it would be Unconstitutional to bar the Defendant's C.P.L. 440.10 motion

(7)

pursuant to C.P.L. 440.10(2)(c) & (3)(c) as the Defendant's claims are of Constitutional dimensions whereas, C.P.L. 440.10(2)(c) & (3)(c) is a State Statue which cannot override or overrule Constitutional pronouncement. If a Constitutional right is denied, a State Statue cannot excuse it's denial **See. Nicholas v. Wallenstein, 266 F. 3d. 1083. Ex. (W).** Furthermore, it would be Unconstitutional to allow the People to use the C.P.L. 440.10(2)(c) & (3)(c) statues as a formal hurdle to place in the way of meritous claims of Constitutional magnitude. Statutory Laws enacted by legislative bodies cannot impair rights given under the Constitution **See. In re Young, 235 B.R. 666.** Rights that are guaranteed by the Constitution should prevail over a State Statue in the event of a conflict. It is a fundamental axiom of american law, rooted in the United States history as a People and requiring no citation to authority, that the requirements of Constitution prevail over a Statue in the event of a conflict. **See. U.S. v. Coppa, 267 F. 3d. at 145-146. Ex. (X).**

16. While the People may routinely rely upon C.P.L. 440.10(2)(c) & (3)(c) to prevail over liable collateral attacks, the underlying fact that no issue contained in this motion appear on the record therefore, the C.P.L. 440.10(2)(c) & (3)(c) approaches do not apply. It has long been settled that a State may not impose a penalty upon those who exercise a right guranteed by the Constitution **See. Harman v. Forssenius, 85 S. Ct. at 1185. Ex. (Y).** Constitutional Rights would be of little

(8)

value if they could be " indirectly denied ". **See. Ex. (Y) at 1185.**

## Conclusion

17. In a combined effort to seek the Defendant's conviction Prosecutor " Cyrus R. Vance " along with presiding judge " Hon. Juan Merchan " subjected the Defendant to Multiplicity, Double Jeopardy and Due Process violation, Etc. all of which brought about an illegal conviction. Here, the Defendant has made such a showing of such violations and pray's this Court take notice to these factual showings and grant the Defendant relief in the form of a DISMISSAL of his Indictment pursuant to **Indictment No. 04258/2014.**

18. The ground(s) raised upon relief in this motion has not previously been determined on the merit upon a prior motion or proceeding in a Court of this State, or upon an appeal from the judgement, or upon a prior motion or proceeding in a Federal Court.

19. The Defendant seeks an order pursuant to N.Y. Crim. Proc. Law 440.30(5), to produce the Defendant at any hearing to be conducted for the purpose of determining this motion; and such other and further relief as the Court may deem just and proper.

*Lonnie Harell*

Mr. Lonnie Harell

Sworn to before me this 29
day of July, 2017.

NOTARY PUBLIC

Adam M. Carey
Notary Public, State of New York
No. 01CA6349087
Qualified in Cayuga County
Commission Expires October 11, 2020

A1055

Due 10/19/17
Court Copy

PT. 59  OCT 1 8 2017

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: PART 59

| | |
|---|---|
| THE PEOPLE OF THE STATE OF NEW YORK<br><br>-against-<br><br>LONNIE HARRELL,<br><br>          Defendant. | PEOPLE'S RESPONSE TO DEFENDANT'S PRO-SE MOTION TO VACATE JUDGMENT PURSUANT TO CPL §440.10<br><br>Ind. No. 04258/2014 |

JUNG PARK, an attorney admitted to practice before the Courts of this State,

affirms under penalty of perjury that:

1. I am an Assistant District Attorney in the New York County District

Attorney's Office and was assigned to the prosecution of the above-captioned case.

This affirmation is based upon my personal knowledge, review of the District

Attorney's files, transcript of the trial and defendant's motion papers dated July 29,

2017.

2. In his motion papers, defendant moves to vacate the judgment of conviction

pursuant to CPL §440.10 ("440.10 motion") on grounds that some of the counts

submitted to the jury were multiplicitous and that his "double jeopardy" rights were

violated. See generally, Defendant's 440.10 motion. For the reasons set forth below, the

People request that this Court summarily deny defendant's motion.

1

3. As an initial matter, this Court must deny defendant's 440.10 motion. A trial court must deny a defendant's motion to vacate when "[t]he judgment is, at the time of the motion, appealable or pending on appeal, and sufficient facts appear on the record with respect to the ground or issue raised upon the motion to permit adequate review thereof upon such appeal." CPL §440.10(2)(b). According to the records of the District Attorney's Office, defendant's appeal is pending. Subsequent to his conviction, defendant timely filed a Notice of Appeal. Defendant moved to request assignment of counsel and filed a Poor Person's Relief, claiming that he did not have the financial resources to hire an attorney for his appeal. On January 14, 2016, the Appellate Division, First Department granted his request for a Poor Person's Relief and assigned Center for Appellate Litigation to represent him on appeal. To date, he has not perfected his appeal. All of the issues raised by defendant in his instant motion are part of the record, and they should be raised on appeal. Thus, this Court is procedurally barred from deciding the issue at this time.

4. Further, defendant's claims should be denied as a matter of discretion. See CPL §440.10(3)(b). A trial court may deny a motion to vacate when "[t]he ground or issue raised upon the motion was previously determined on the merits upon a prior motion or proceeding in a court of this state." At trial, defendant, through his counsel, Theodore Herlich, Esq., moved to dismiss one count each of Criminal Sexual Act in the First Degree, Criminal Sexual Act in the Third Degree, and Sexual Abuse in the First Degree

2

alleging that the counts were multiplicitous under People v. Alonzo, 16 N.Y.3d 267 (2011). The People argued that Alonzo was distinguishable from defendant's case in that the sexual acts between defendant and the victim consisted of different acts occurring at different times. This Court, after having heard arguments from both parties, ruled that the counts were not multiplicitous and submitted all the charges to the jury. Again, this Court should conclude that defendant is barred from raising this issue on a 440.10 motion.

5. However, even on its merit, defendant's argument should be rejected. In People v. Alonzo, 16 N.Y.3d 267 (2011), the defendant was charged with two counts of Sexual Abuse in the First Degree for touching a victim's breasts and buttocks. The touching of the two body parts with the defendant's hand appeared to be an "uninterrupted course of conduct." Id. at 270. The victim there could not remember "exactly how often defendant removed his hand and touched her again in the course of groping her, or how often he moved a hand from one body part to another." Id. at 270. In the present case, with respect to the two counts of Criminal Sexual Act in the First Degree, it is clear that there were two separate sexual conduct: defendant's mouth to the complainant's vagina and the complainant's mouth to defendant's penis. They consist of different sex acts and body parts occurring at separate times, and there was an interruption between the two acts. At trial, the victim testified that after defendant put his mouth on her vagina, he told her to stand up. When she did, he grabbed the back of her neck. See Attached

Ex. A: Transcript, pages 63-64. She further stated that she grabbed defendant's testicles and twisted them to try to "make him stop," but it caused defendant to grab her neck harder (Transcript: 65). Defendant then told the victim to get down on her knees. She said, "No," and he grabbed her hair with his other hand and pushed her down to her knees. Defendant instructed her to open her mouth, and he forced his penis in her mouth (Transcript: 65-67). As demonstrated, there was a definite break between the two acts of Criminal Sexual Act in the First Degree. This is unlike Alonzo where the defendant was moving his hand back and forth in an "uninterrupted course of conduct" for the same penal law provision.

6. Second, defendant was found guilty of two counts of Sexual Abuse in the First Degree: one count for contact between defendant's mouth and the victim's mouth and a second count for contact between defendant's fingers and the victim's vagina. Unlike Alonzo, 16 N.Y.3d at 270, where defendant moved his hand from the victim's breasts to buttocks repeatedly, this case involves different types of touches and body parts. Again, there was a definite break between the two acts of first-degree sexual abuse. For instance, the victim testified that defendant "kissed" her by kissing her on her mouth and putting his tongue inside her mouth (Transcript: 61-62). Defendant instructed her to take off her pants. When she refused, he pulled down her shorts and her underwear and put them on a nearby table. He then inserted two fingers in her vagina (Transcript

4

62-63). These two counts involved different sex acts and different body parts, with a definite interruption between the two acts.

7. Finally, defendant argues that the two counts of Criminal Sexual Act in the Third Degree were multiplicitous in that they consisted of a single conduct committed against a single victim. See Defendant's 440.10 Motion, p. 3. Similarly, as argued above, these two counts refer to two separate acts: defendant's mouth to the victim's vagina and defendant's penis to the victim's mouth. The only difference between the first-degree and the third-degree criminal sexual act was that the former requires forcible compulsion and the latter was statutory because the victim was only fifteen years old at the time of the incident. All of the counts constituted specific, separate acts involving different body parts occurring at different times.[1]   Thus, defendant's motion to vacate the judgment on multiplicitous ground should be rejected.

8. Next, defendant alleges that because this Court submitted multiplicitous counts to a jury, his rights under the "double jeopardy" clause were violated. Defendant is wrong. It is true that an indictment that is multiplicitous creates a potential violation of Double Jeopardy principles because a defendant convicted of multiplicitous charges faces the risk of being punished twice for a single crime. People v. Alonzo, 16 N.Y.3d at 270. However, if he violates multiple provisions of the penal law such that the

---

[1] By charging one count each of Criminal Sexual Act in the First Degree, Criminal Sexual Act in the Third Degree and Sexual Abuse in the First Degree, the charges arguably could be duplicitous. It could "undermine the requirement of jury unanimity, for if jurors are considering separate crimes in a single count, some may find the defendant guilty of one, and some of the other." See People v. Alonzo, 16 N.Y.3d at 269.

5

Legislature "intended to authorize separate punishments for the offensive conduct under separate statutes," then there is no multiplicity problem. <u>United States v. Chacko</u>, 169 F.3d 140, 146 (2d Cir. 1999).   The Second Circuit explained, "[i]t is not determinative whether the same conduct underlies the counts; rather, it is critical whether the 'offense' -- in the legal sense, as defined by [the legislature] -- complained of in one count is the same as that charged in another." <u>Id</u>. (citing <u>Hudson v. United States</u>, 522 U.S. 93 [1997]).  As argued above, each of the sex acts were separated by charges requiring different elements of the crimes as charged in the indictment -- different body parts.  For example, for the sexual abuse counts, one count was for contact between defendant's mouth and the victim's mouth and the second count was for the contact between defendant's finger and the victim's vagina.[2]  For the criminal sexual act counts, one count was for oral sexual conduct between defendant's mouth and the victim's vagina and the second count was for oral sexual conduct between the victim's mouth and defendant's penis.  As evidence bore out at trial, there were definite breaks between each of the sex acts.

9.  Defendant cites <u>People v. Alejandro</u>, 70 N.Y.2d 133 (1987) to argue that he was "placed twice in jeopardy. . . for the same offense."  <u>See</u> Defendant's 440.10 Motion, p. 5. Defendant completely misses the point.  <u>People v. Alejandro</u> has nothing to do with double jeopardy or multiplicitous counts.  In <u>Alejandro</u>, 70 N.Y.2d at 135, the defendant

---

[2] At trial, the victim testified that before defendant performed oral sex on her, he rubbed his penis against her vagina

6

was tried and convicted by a jury of Resisting Arrest on the basis of a misdemeanor information that was facially insufficient. The Court of Appeals found that the People's failure to "comply with the 'prima facie case' requirement for facial sufficiency" was a "jurisdictional defect" and upheld the Appellate Term's dismissal of the information. Id.

10. In any event, as defendant maintains, the principal danger in multiplicitous counts is that the defendant will be sentenced more than once for committing a single crime. See People v. Mulligan, 29 N.Y.2d 20, 24 (1971); People v. Smith, 113 A.D.2d 905, 908 (2d Dept. 1985). Here, it is noteworthy that defendant received concurrent sentences for all of the charges for which he was convicted. He was sentenced to twenty-five years on one count of Criminal Sexual Act in the First Degree, and all of the other sentences ran concurrently with the twenty-five years. Since the danger of multiplicitous counts is that an offender may be punished twice for the same crime, and defendant here was not subjected to consecutive prison sentences, the pitfalls that multiplicity jurisprudence was designed to address are absent from this case. Accordingly, defendant's Double Jeopardy claim should be rejected.

11. In conclusion, defendant's multiplicitous and double jeopardy claims are procedurally barred under CPL §§440.10(2)(b) and (3)(b), and this Court should summarily deny his motion. In any event, his claims are meritless and should likewise be denied on its merits.

---

(Transcript: 64). For this act, defendant was convicted of Attempted Rape in the First Degree.

7

A1062

Wherefore, defendant's motion to vacate his judgment of conviction pursuant to CPL §440.10 should be denied.

Cyrus R. Vance, Jr.
District Attorney
New York County

By: _____

Jung Park
Assistant District Attorney
Of Counsel
(212) 335-4126

Dated:   October 18, 2017

8

PARK - DIRECT - C. S███

1    tell us what kind of hair did you have last year in July?

2    A     I had my hair in a bun like.

3    Q     Is that how you had it on July 16 that day?

4    A     Yes.

5    Q     Did you have long hair?

6    A     I had medium length hair.  It's about the same length.

7    Q     And how did he take you to the Learning Center?

8    A     He lead me by my hair.

9    Q     And where in the Learning Center did he lead?

10   A     To a stool that was sitting in front of a closet.

11   Q     What happened when you got to that stool?

12   A     He told me to sit down.

13   Q     Did you do so?

14   A     Yes.

15   Q     Why?

16   A     I didn't want him to choke me again.

17   Q     So what happened after you sat down?

18   A     He told me to take off my pants, and I said, "No." And

19   he told me to do it again.

20          THE COURT:  I know this is very difficult, but we

21   have to be able to hear you.  So please keep your voice up

22   and speak into the microphone.  Okay.

23          THE WITNESS:  Okay.  Sorry.

24   A     He told me to take off my pants, and I said, "No."  And

25   he told me to do it again.  I shook my head no, and then he took

Amalia Hudson, SCR

PARK - DIRECT - C. S█████

1   them off.

2       Q    How did he do that?

3       A    He grabbed them and pulled them down.

4       Q    I know earlier you told us that you were wearing shorts.

5   What kind of waist did you have?

6       A    A drawstring.

7       Q    So did the pants come off your shorts?

8       A    Yes.

9       Q    And what about your underwear?  Did you have any

10  underwear on?

11      A    Yes.

12      Q    What happened to them?

13      A    He took those off as well.

14      Q    Sorry.  I'm just going to ask you maybe if you can bring

15  the microphone a little bit closer to you?

16      A    Is this better?

17      Q    Yes.

18           What did -- what happened to the underwear?

19      A    He sat them on a table nearby.

20      Q    Who took them off?

21      A    Lonnie did.

22      Q    How did he do that?

23      A    He grabbed them by the waistband and pulled them down.

24      Q    Before that happened, did he touch you in any other way?

25      A    Yes.

PARK - DIRECT - C. S▓

1    Q    Can you tell us about that?

2    A    He kissed me.

3    Q    Where?

4    A    On my mouth, and I kept shaking my head, and I kept my

5    mouth closed, and he told me to kiss him back, and I shook my

6    head again, and he told me to kiss him back, or he would choke me

7    again.

8    Q    So what happened?

9    A    So I opened my mouth, and he put his tongue inside of my

10   mouth, and then he told me to take off my pants.

11   Q    So now going forward after you said that he had taken

12   off both of your pants -- your shorts, and your underwear, what

13   happened to them?

14   A    He sat them on a table.

15   Q    Where was the table?

16   A    To my left.

17   Q    Was it within your reach?

18   A    Yes.

19   Q    And at that point are you naked from your waist down?

20   A    Yes.

21   Q    And what happened next?

22   A    After that he put his fingers inside of me.

23   Q    Do you know how many fingers or finger he put inside of

24   you?

25   A    I think two.

PARK – DIRECT – C. S█████

1   Q    And what happened next?

2   A    It hurt.  I was crying, so I said that it hurt.  He said

3   --

4   Q    Sorry.  And you said?

5   A    I said it hurt, and he said that it wouldn't hurt if I

6   relax, and he said to relax, and I said that it hurt.  Then he

7   took his fingers out.

8   Q    Where did he put his fingers?

9   A    What do you mean?

10   Q    You said he took his fingers out.  Where was his

11   fingers?

12   A    In my vagina.

13   Q    And after he took his fingers out, what happened?

14   A    He showed them to me, and he said this means that you

15   like it.

16   Q    And what about his fingers did you notice?

17   A    They were wet.

18   Q    Did you like it?

19   A    No.  No, I didn't.

20   Q    How did you feel?

21   A    I was in pain.

22   Q    Do you need a moment?

23   A    I'm fine.

24   Q    So what happened next?

25   A    Then he put his mouth on my vagina and his tongue, and I

PARK - DIRECT - C. S███

1    kept telling him stop, and he kept saying that I like it, and

2    that I wanted this, and if I said, "No, I didn't.   Then he would

3    say, "Yes, you did."

4        Q    What do you mean?

5        A    If I say stop, he would say, "You wanted this."   And I

6    said, "No, I didn't.   And he said, "Yes, you did want it."   I

7    said "No, I didn't."   And he said, "Yes, you did again.

8        Q    Before he put his mouth on your vagina, did any thing else

9    happen?

10       A    He took out his penis and he rubbed it against me.

11       Q    He rubbed it against you where?

12       A    On my vagina, and I asked him not -- I asked him not to

13   put it in because it would hurt.   He said, It won't hurt if you

14   relax again.

15       Q    Did his penis touch your vagina?

16       A    Yes.

17       Q    Did he -- did his penis go into your vagina?

18       A    No.

19       Q    And after he rubbed your vagina what happened?

20       A    Then he told me to stand up and he grabbed me at the

21   back of the neck.

22       Q    When he told you to stand up, what did you do?

23       A    I Scooched forward some, and he told me to stand up

24   again, so I did.

25       Q    What happened after you stood up?

**Amalia Hudson, SCR**

PARK - DIRECT - C. S▮▮▮▮▮

1    A    I tried to grab his testicles and twist because I

2  thought that would stop him.

3    Q    And what do you mean -- can you tell us how you did

4  that?

5    A    I think his pants were zipped again, and I tried

6  grabbing and twisting because it hurts, and so I thought it would

7  make him stop.

8    Q    How did you know that?

9    A    I think I learn it in karate or something when I was in

10  third grade.

11    Q    And did you do that over his pants?

12    A    Yes.

13    Q    Do you remember what he was wearing?

14    A    He was wearing a black shirt and khaki cargo shorts.

15    Q    How long did the shorts go to?

16    A    Knee length.

17    Q    And what happened when you -- what happened after you

18  tried to grab him or you grabbed him?

19    A    He grabbed my neck harder, and he told me to get on my

20  knees.

21    Q    Sorry.  He grab where?

22    A    The back my neck.

23    Q    With how many hands?

24    A    Just one.

25    Q    So his hand is behind your neck?

PARK – DIRECT – C. S█████

1   A   Yes.

2   Q   Is he in front of you?

3   A   Yes.

4   Q   And what happened next?

5   A   And he told me to get on my knees, and I said, "No.

6   Q   What happened when you said no?

7   A   He grabbed my hair with the other hand and pushed me

8   down.

9   Q   Pushed you down where?

10  A   To my knees on the floor.

11  Q   At this point are you on your knees?

12  A   Yes.

13  Q   And where is he?

14  A   Standing in front of me.

15  Q   And is he grabbing any part of your body?

16  A   Just my neck and my head.

17  Q   What happened next?

18  A   And he said to open my mouth.  He took out his penis

19  first, and then he said to open my mouth.

20  Q   What did you do?

21  A   I kept my mouth closed, and then he -- he took one of

22  his hands and put it on my cheeks.

23  Q   What do you mean, he put it on your cheek?

24  A   He had his fingers on my cheek, and then he pushed in so

25  my mouth could open.

Amalia Hudson, SCR

PARK – DIRECT – C. S▮▮▮

1    Q    Can you just demonstrate for what you mean by that.

2                    (Indicating)

3            MS. PARK:  Let the record reflect the witness has

4    grabbed either side of her mouth with one hand.

5    Q    And did he squeeze his hand together?

6    A    Yes.

7    Q    What happened when he did that?

8    A    My mouth opened.

9    Q    What happened next?

10   A    And then he put his penis in my mouth.

11   Q    And then what happened?

12   A    And he grabbed my neck harder and pushed my head down on
13   to him.

14   Q    What do you mean pushed your neck down on to him?

15   A    He made it go further into my mouth.

16   Q    Is he standing up?

17   A    Yes.

18   Q    And did his penis go further into your mouth?

19   A    Yes. Yes.

20   Q    And what happened next?

21   A    And then he told me to suck it, and I shook my head --

22   Q    Sorry?

23   A    He told me to suck his penis, and I shook my head no,
24   and then he kept pushing my head so that his penis would go
25   further into my mouth.

Amalia Hudson, SCR

A1071

PARK – DIRECT – C. S██████

1    Q    Did you feel anything inside of your mouth?

2    A    When he finished I felt, I guess a salty liquid inside

3  my mouth.

4    Q    Did he pull out his penis when you felt that?

5    A    Yes.

6    Q    So after you felt that what happened?

7    A    Then I grabbed my underwear from the table and I spit it

8  into my underwear.

9    Q    And when you say spit it, are you talking about the

10  salty liquid that you mentioned earlier?

11    A    Yes.

12    Q    And after you spit it out, what happened to your

13  underwear?

14    A    He took them and wiped the floor in front of me with

15  them, and he wiped his penis with them, and he zipped his pants

16  and put them in his pocket and said he is keeping them.

17    Q    The underwear?

18    A    Yes.

19         MS. PARK:  One moment.

20         (Pause in proceedings)

21    Q    How were you feelings while this was happening?

22    A    I was scared.

23    Q    Did he threaten you --

24    A    Yes.

25    Q    -- in anyway?

Amalia Hudson, SCR

A1072

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: PART 59

| | |
|---|---|
| THE PEOPLE OF THE STATE OF NEW YORK | AFFIRMATION IN SUPPORT OF SERVICE BY MAIL |
| -against- | |
| LONNIE HARRELL, | Ind. No. 04258/2014 |
| Defendant. | |

The undersigned, being the attorney of record for the People of the State of New York in this matter, affirms under penalties of perjury that on October 18, 2017, she served a copy of the People's Response to Defendant's Pro Se Motion to Vacate Judgment Pursuant to CPL 440.10 upon defendant, Lonnie Harrell, by causing same to be mailed to his address, which is DIN 15 A 5156, Five Points Correctional Facility, State Route 96, P.O. Box 119, Romulus, NY 14541.

Dated:   New York, New York
         October 18, 2017

Jung Park
Assistant District Attorney
(212) 335-4126

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: CRIMINAL TERM: PART 59
------------------------------------------------------------------------x
THE PEOPLE OF THE STATE OF NEW YORK,
                                                              :
                                                                        DECISION AND ORDER
                              -against-                       :
                                                                        Indictment Number 04258-2014
                                                              :

LONNIE HARRELL,
                                         Defendant.:          :
------------------------------------------------------------------------x

Juan M. Merchan, J.:

      On September 24, 2014, the defendant was convicted after trial of two counts of Criminal Sexual Act in the First Degree (Penal Law § 130.50[1]), Attempted Rape in the First Degree (Penal Law §§ 110/130.35[1]), two counts of Sexual Abuse in the First Degree (Penal Law § 130.65[1]), and two counts of Criminal Sexual Act in the Third Degree (Penal Law § 130.40[2]). On October 21, 2014, judgment was entered, and the defendant was adjudicated a second violent felony offender and sentenced to an aggregate prison term of twenty-five years to life, to be followed by 15 years of post-release supervision. The defendant is currently incarcerated pursuant to this sentence.

      In *pro se* papers dated July 29, 2017, defendant moves to vacate his judgment of conviction pursuant to CPL § 440.10(h). He claims that the counts charged in the indictment were multiplicitous, in that the duplicate counts of the sex offenses were based upon the same conduct, thus, violating his constitutional right against double jeopardy. Defendant's claim is procedurally barred, pursuant to CPL § 440.10(2)(b), because sufficient facts appear on the record to permit adequate appellate review. The purpose of this provision is to prevent CPL 440.10 from being employed as a substitute for direct appeal. *People v. Cooks*, 67 N.Y.2d 100, 103 (1986). As such, Defendant's multiplicitous claim must be brought on direct appeal and is hereby denied.

      The above constitutes the decision and order of this Court.

Dated:     February 2, 2018
           New York, New York

PT. 59  FEB 0 2 2018

                             Juan M. Merchan

                             Judge of the Court of Claims
                             Acting Justice - Supreme Court

                          HON. JUAN M. MERCHAN

# EXHIBIT C

# Petitioner's Appellate Division Brief and Reply Brief

To be argued by: Carolyn Shanahan

New York County Ind. No. 4258/14

# New York Supreme Court

# Appellate Division-First Department

———————————————

THE PEOPLE OF THE STATE OF NEW YORK,

*Respondent,*

*v.*

LONNIE HARRELL,

*Defendant-Appellant.*

———————————————

## BRIEF FOR DEFENDANT-APPELLANT

<table>
<tr>
<td></td>
<td>

ROBERT S. DEAN
Center for Appellate Litigation
*Attorney for Defendant-Appellant*
120 Wall Street, 28th Floor
New York, NY 10005
</td>
</tr>
<tr>
<td>

Carolyn Shanahan
*Of Counsel, Pro Bono*
Arnold & Porter Kaye Scholer LLP
250 West 55th Street
New York, NY 10019

Matthew Bova
*Of Counsel*
mbova@cfal.org
(212) 577-2523, ext. 543

June 4, 2018
</td>
<td></td>
</tr>
</table>

**CONFIDENTIAL UNDER CIVIL RIGHTS LAW § 50-b**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................ 1

QUESTIONS PRESENTED .......................................................................... 2

STATEMENT OF FACTS ............................................................................ 2

A.   On October 1, 2015, the court informs Appellant that if he does not attend trial, he will forfeit his right to be present during the testimony of prosecution witnesses. ............................................. 4

B.   Appellant moves to dismiss on multiplicity grounds. ............................... 6

C.   The court conducts the charge conference in Appellant's absence. ......... 7

D.   On Monday, October 5th, the court informs Appellant that if he is absent, he would merely lose his "right to testify." The court then conducts numerous critical proceedings, including summations and the charge, in Appellant's absence. ............................................... 7

E.   On October 6th, the court formulates a response to a factual inquiry from the jury in Appellant's absence. .......................................... 9

F.   Based on a chain of hearsay, the court finds a waiver of the right to be present during the verdict's rendition (on six of the seven counts) and an *Allen* charge (on the remaining count) (October 6th). ................. 10

G.   Based on another triple-hearsay account, the court responds to a comprehensive jury note and takes the final verdict in Appellant's absence (October 7th). ............................................................. 12

H.   Sentencing ...................................................................... 12

ARGUMENT ........................................................................... 13

POINT I.   APPELLANT WAS DEPRIVED OF HIS FUNDAMENTAL RIGHT TO BE PRESENT DURING NUMEROUS CRITICAL STAGES OF TRIAL ....................... 13

A.   The court violated Appellant's right to be present during the introduction of evidence, summations, and the charge conference ........ 18

B.  The court violated Appellant's right to be present during the formulation of a response to the jury's factual inquiry by failing to wait for his appearance in court.................................................. 19

C.  The court violated Appellant's right to be present during the formulation of a response to two jury notes, the provision of supplemental jury instructions, and the verdict's rendition. ................... 21

POINT II.  THE CHARGES WERE MULTIPLICITOUS. ............................................ 26

CONCLUSION ........................................................................................................ 30

RULE 5531 STATEMENT........................................................................................ 31

PRINTING SPECIFICATIONS STAMENT ............................................................. 31

## TABLE OF AUTHORITIES

**Cases**

*Allen v. United States*, 164 U.S. 492 (1896) ............................................................ 11

*Chapman v. California*, 386 U.S. 18 (1967) .......................................................... 30

*Diaz v. United States*, 223 U.S. 442 (1912) ...................................................... 14, 22

*Illinois v. Allen*, 397 U.S. 337 (1970) ................................................................... 16

*Johnson v. Zerbst*, 304 U.S. 458 (1938) ........................................................... 16, 19

*Matter of Narvanda S.*, 109 A.D.3d 710 (1st Dept. 2013) ................................... 27

*People ex rel. McKay v. Sheriff of County of Rensselaer*, 152 A.D.2d 786 (3d Dept. 1989).... 23

*People ex. rel. Griffin v. Walters*, 83 A.D.2d 618 (2d Dept. 1981) ...................... 23

*People v. Alonzo*, 16 N.Y.3d 267 (2011) ............................................. 6, 27, 28, 29

*People v. Bennett*, 238 A.D.2d 138 (1st Dept. 1997) ...............................16, 17, 19

*People v. Ciaccio*, 47 N.Y.2d 431 (1979) .........................................................14, 20

*People v. Collins*, 99 N.Y.2d 14 (2002) ..........................................................13, 15

*People v. Crimmins*, 36 N.Y.2d 230 (1976) ......................................................... 30

*People v. Davis*, 269 A.D.2d 163 (1st Dept. 2000) .................................................................. 24

*People v. Dini*, 292 A.D.2d 631 (2d Dept. 2002) ..................................................................... 17

*People v. Dokes*, 79 N.Y.2d 656 (1992) .................................................................................. 17

*People v. Enrique*, 165 A.D.2d 13 (1st Dept. 1991) ............................................................... 20

*People v. Epps*, 37 N.Y.2d 343 (1975) ............................................................................... 16, 24

*People v. Eubanks,* 41 A.D.3d 241 (1st Dept. 2007) ........................................................... 17, 23

*People v. Flinn*, 22 N.Y.3d 599 (2014) .................................................................................. 25

*People v. Garcia*, 141 A.D.3d 861 (3d Dept. 2016) ................................................................ 29

*People v. Hewlett*, 133 A.D.2d 417 (2d Dept. 1987) ............................................................... 15

*People v. Kisoon*, 23 A.D.3d 18 (2d Dept. 2005) ............................................................... 14, 20

*People v. Kisoon*, 8 N.Y.3d 129 (2007) ............................................................................. 14, 19

*People v. Madera*, 216 A.D.2d 89 (1st Dept. 1995) ............................................................... 21

*People v. Manigault*, 150 A.D.3d 1331 (3d Dept. 2017) .......................................................... 29

*People v. Mehmedi*, 118 A.D.2d 806 (2d Dept. 1989) ......................................................... 15, 19

*People v. Mehmedi*, 69 N.Y.2d 759 (1987) ....................................................................... 15, 17

*People v. Miller*, 184 A.D.2d 375 (1st Dept. 1992) ................................................................ 25

*People v. Moffitt*, 20 A.D.3d 687 (3d Dept. 2005) ......................................................27, 28, 29

*People v. Morales*, 80 N.Y.2d 450 (1992)........................................................................13, 14, 22

*People v. Mullen*, 44 N.Y.2d 1 (1978) ...........................................................................14, 15, 20

*People v. O'Rama*, 78 N.Y.2d 270 (1991) ......................................................................... 14, 20

*People v. Olson*, 116 A.D.3d 427 (1st Dept. 2014) ................................................................ 27

*People v. Parker*, 57 N.Y.2d 136 (1982) ................................................................................ 16

*People v. Rivas*, 306 A.D.2d 10 (1st Dept. 2003).............................................................. 14, 22

*People v. Rivera*, 23 N.Y.3d 827 (2014) ............................................................ 13, 14, 16, 17

*People v. Rodriguez*, 20 A.D.3d 355 (1st Dept. 2005) ............................................ 21

*People v. Rodriguez*, 76 N.Y.2d 918 (1990) .......................................................... 15

*People v. Salley*, 25 A.D.3d 473 (1st Dept. 2006) ..............................................15, 21

*People v. Sloan*, 79 N.Y.2d 386 (1992) .................................................................. 20

*People v. Spotford*, 85 N.Y.2d 593 (1995) ..........................................................14, 18, 21

*People v. Sprowal*, 84 N.Y.2d 113 (1994) .............................................................. 14

*People v. Starks*, 88 N.Y.2d 18 (1996) ................................................................... 21

*People v. Trubin*, 304 A.D.2d 312 (1st Dept. 2003) .............................................. 24

*People v. Williams*, 38 A.D.3d 429 (1st Dept. 2007) ............................................. 15

*People v. Williams*, 85 N.Y.2d 945 (1995) ..........................................................13, 20

*Snyder v. Massachussetts*, 291 U.S. 97 (1934) ....................................................... 13

*Stanley v. Illinois*, 405 U.S. 645 (1972) ................................................................. 25

*United States v. Carter*, 576 F.2d 1061 (3d Cir. 1978) .........................................27, 29

*United States v. Clarridge,* 811 F. Supp. 697 (D.D.C.1992) ...............................27, 28, 29

*United States v. Ketchum*, 320 F.2d 3 (2d Cir. 1963) ...........................................28, 29

*United States v. Langford,* 946 F.2d 798 (11th Cir. 1991) ....................................27, 29

*United States v. Reed*, 639 F.2d 896 (2d Cir. 1981) ..............................................27, 29

**Statutes**

C.P.L. § 260.20 ............................................................................................. 13, 15, 19, 22

C.P.L. § 310.30 ...............................................................................................................passim

C.P.L. § 310.40 ..............................................................................................13, 14, 22

Penal Law § 110 .......................................................................................................... 1, 3

Penal Law § 130.35 ..................................................................................................... 1, 3

Penal Law § 130.40 ................................................................................... 1, 3, 6

Penal Law § 130.50 ................................................................................... 1, 3, 6

Penal Law § 130.65 ................................................................................ 1, 3, 6, 28

**Other Authorities**

Appellant's Court of Appeals Brief, *People v. Rodriguez*, 76 N.Y.2d 918 (1990) ............ 15

Gregg Kettles, *Ancient Documents and the Rule Against Multiple Hearsay,* 39 Santa Clara L. Rev. 719 (1999) ...................................................................................... 23

Respondent's Brief, *People v. Davis*, 269 A.D.2d 163 (1st Dept. 2000) .......................... 24

Respondent's Brief, *People v. Trubin*, 304 A.D.2d 312 (1st Dept. 2003) ........................ 24

Wayne R. LaFave, 5 Criminal Procedure (4th ed.) ................................................ 27, 29

SUPREME COURT OF THE STATE OF NEW YORK
APPELLATE DIVISION: FIRST DEPARTMENT

THE PEOPLE OF THE STATE OF NEW YORK,

      *Respondent,*

  *v.*

LONNIE HARRELL,

      *Defendant-Appellant.*

## PRELIMINARY STATEMENT

This is an appeal of an October 21, 2015 judgment of conviction (Supreme Court, New York County), convicting Appellant of seven counts:

- two counts of first-degree criminal sexual act (Penal Law § 130.50[1]);
- two counts of first-degree sexual abuse (Penal Law § 130.65[1]);
- two counts of third-degree criminal sexual act (Penal Law § 130.40[2]); and
- one count of attempted first-degree rape (Penal Law §§ 110 and 130.35[1])

Appellant was sentenced to an aggregate sentence of 25-years' incarceration (Merchan, J. at trial and sentence).

On January 14, 2016, this Court assigned Robert S. Dean, Center for Appellate Litigation, to Appellant's appeal. Arnold & Porter Kaye Scholer LLP appears *pro bono* of counsel to the Center for Appellate Litigation.

On February 2, 2018, Justice Merchan denied Mr. Harrell's *pro se* motion to vacate his conviction. No appeal of that decision has been taken.

Appellant is currently incarcerated, Appellant has not sought a stay, and there were no co-defendants below.

## QUESTIONS PRESENTED

1. Did the court violate Appellant's right to be present when it conducted numerous critical proceedings in his absence?

2. Did three sets of charges contain multiplicitous counts because those charges arose from a single, uninterrupted course of conduct?

## STATEMENT OF FACTS[1]

Appellant (age 51) was friends with the complainant and her family. He lived in their apartment building and was the building's maintenance man (Complainant 37-95).

The prosecution alleged that on the afternoon of July 16, 2014, Appellant knocked on complainant's family's apartment door and asked if complainant's brother was home. Complainant, age 15, said her brother was not home but invited Appellant inside for a beverage (Complainant 44-49).

---

[1] The following citation conventions have been used:

- Citations to trial testimony are indicated by the witness's name and the transcript page (*e.g.*, Complainant #).

- Other transcript citations, including colloquies outside the jury's presence, are indicated by the transcript-page number.

- Citations to the court file are indicated by the nature of the cited document.

Unless otherwise noted, all emphasis has been added by Appellant.

The two then sat down on the living room couch while they drank their beverages and complainant ate lunch. When they finished eating, complainant asked Appellant to leave so she could do her chores. They walked to the door and Appellant hugged her (Complainant 49-56).

The prosecution alleged that Appellant then engaged in an uninterrupted sexual assault. The alleged assault included, in the following order: kissing, digital penetration, the placement of Appellant's penis on complainant's vulva, mouth-to-vulval contact, and penis-to-mouth contact (Complainant 56-94).

Complainant contacted 911 that afternoon and was subsequently brought to the hospital, where she was interviewed by police and hospital staff. *See* Complainant 73, 90, 92; Brown 226; Pros. Ex. 21 (hospital records).

Based on these allegations, the prosecution indicted Appellant for seven counts. Three sets of those counts alleged two violations of the same Penal Law provision:

- two counts of first-degree criminal sexual act (Penal Law § 130.50[1]) (oral sexual conduct by forcible compulsion);

- two counts of first-degree sexual abuse (Penal Law § 130.65[1]) (digital penetration by forcible compulsion);

- two counts of third-degree criminal sexual act (Penal Law § 130.40[2]) (oral sexual conduct with a person younger than 17); and

- one count of first-degree attempted rape (Penal Law §§ 110 and 130.35 [1]).

The prosecution's non-consent theory was based exclusively on the complainant's account.

The case proceeded to trial. Throughout the September and October 2015 trial, Appellant was present with counsel during pre-trial evidentiary motions, jury selection, openings, the trial testimony of thirteen witnesses (including the complainant),[2] and the introduction of over a dozen exhibits. But throughout several subsequent proceedings, Appellant was absent.

**A.   On October 1, 2015, the court informs Appellant that if he does not attend trial, he will forfeit his right to be present during the testimony of prosecution witnesses.**

On Thursday, October 1, 2015, after the prosecution had presented its thirteenth witness (but had not yet rested), Appellant indicated he needed to attend religious services on Friday (281-84). Although defense counsel had previously agreed to have trial on Fridays (97), Appellant personally informed the court that he had changed his position and apologized (282-284).

The court said that Appellant could not modify his position, adding that if he attended Friday services, the trial would continue in his absence (283-85).

Frustrated by the court's suggestion that he had to choose between religious service and his trial, Appellant informed the court that he was becoming agitated and "wanted to leave now" before the jury returned (285-90). He explained that he did not want to

---

[2] *See* Complainant: 37-94; Complainant's Mother: 99-120; Officer Castillo: 121-131; Officer Martinez: 131-139; Jean: 144-160; Sierra: 161-184; Devulpillieres: 188-195; DeLitta: 196-214; Brown: 220-227; Detective Barbato: 228-245; Officer Lora: 247-255; Officer Field: 256-271; Detective Pinard: 272-279.

disrupt the court, trigger a mistrial, or allow the jury to see him in a frustrated state (285-90).

Appellant then indicated he would "be back" at trial after Friday services (286, 289-90). The prosecutor confirmed, in Appellant's presence, that if Appellant left the courtroom, "a witness will testify" in his absence:

> PROSECUTOR: Judge, just so he knows if he cho[o]ses to be absen[t] the case will go forward without him.
>
> APPELLANT: I am not choosing--I don't want to be here *right now*.
>
> PROSECUTOR: And *a witness will testify* in [Appellant's] absence if he refuses to be present. I just wanted the record to be clear.
>
> COURT: That's crystal clear. I made that clear to him as well. The proceeding will continue tomorrow in his absence (290).

Appellant was escorted out of the courtroom (290).

After Appellant left the courtroom, the court instructed counsel to visit his holding cell to advise him that he would forfeit his "right to testify" if he did not appear on Friday (292-94). After speaking to Appellant, counsel informed the court that Appellant did not want to forfeit his right to testify and would appear on Monday, October 5th, to testify (293-95). The judge agreed that he would not hold court on Friday so Appellant could testify on Monday (295).

The court next instructed the courtroom sergeant to ask Appellant whether he would return to the courtroom for the testimony of the prosecution's remaining three witnesses (295-97). The sergeant reported that Appellant wanted to return to Rikers for

the remainder of the day (297). The court asked if Appellant understood that "Monday he will come back" (297). The sergeant responded:

> I didn't give him the date he was coming. I just told him you were going to consent to his right to observe his religious observances, and that you will adjourn the case tomorrow, but the *two witnesses that were scheduled for today will be appearing today*, and the only purpose of my coming in there was to see if he wanted to exercise his right to be present before the Court *while those witness[es] took the stand* (297).

The court then took the testimony of the prosecution's witnesses in Appellant's absence (297-380). The prosecution then rested (379-80).

### B.   Appellant moves to dismiss on multiplicity grounds.

As counsel had done before trial, counsel again argued, at the close of the prosecution's case, that the two counts of first-degree criminal sexual act (Penal Law § 130.50[1]), two counts of first-degree sexual abuse (Penal Law § 130.65[1]), and two counts of third-degree criminal sexual act (Penal Law § 130.40[2]), were multiplicitous since the underlying acts constituted a single, uninterrupted occurrence. Counsel thus argued that one of each of those counts should be dismissed. *See* 10/1/15 Tr. 383-87 (citing *People v. Alonzo*, 16 N.Y.3d 267 [2011]); 10/5/15 Tr. 403-04; *see also* Defendant's Pre-Trial Motion to Dismiss (9/16/15); 9/21/15 Pre-Trial Tr. 2-4 (court denied pretrial motion to dismiss on multiplicity grounds and invited counsel to renew the motion at the close of the prosecution's case).

The court denied counsel's motion (10/5/15 Tr. 403-04).

**C.     The court conducts the charge conference in Appellant's absence.**

The court conducted the charge conference in Appellant's absence (387-88). During that conference, counsel requested an instruction on "impeachment by omission," citing an inconsistency between the complainant's trial testimony and her statement to Detective Barbato at the hospital on the day of the incident (387). Counsel pressed that while the complainant testified to penile-vulval contact, her hospital statements did not reference such contact. *Compare* Complainant 64 (testifying that Appellant placed his penis on her vagina), *with* Barbato 242-43 (testifying that complainant never mentioned such contact); *see also* Pros. Ex. 21: Pre-Hospital Care Report, page 2 of 6, (detailed account of complainant's statement, which does not reference penile-vaginal contact); Pros. Ex. 21: Emergency-Room Record, page 4 of 6 (same).

The court adjourned the proceedings to Monday (388).

**D.     On Monday, October 5th, the court informs Appellant that if he is absent, he would merely lose his "right to testify." The court then conducts numerous critical proceedings, including summations and the charge, in Appellant's absence.**

Citing a "verbal confrontation" in the robing room "earlier on in the trial"[3] and Appellant's recent indication of agitation, the court explained that Appellant's legs would be shackled (10/5/15 Tr. 389-95). The sergeant reported that Appellant refused to appear in court in shackles to testify or discuss the matter with the court (393-96).

---

[3] There is no record of this robing-room colloquy.

The judge, defense counsel, and the prosecutor went to Appellant's holding cell to speak to him off-the-record (406). Back on the record, the judge recounted his conversation with Appellant, explaining that he had informed Appellant that if he did not appear he would lose his right to *testify*:

> I was just trying my hardest to convince him that I just wanted him to have a fair trial and I want to preserve *his right to testify*, and I tried to communicate that to him I don't know how many different ways. . . .
>
> I [went to the holding cell] because I genuinely just want him to have his day in court if *he wants to testify*. I was trying to do everything within my power to find a way to make that happen, but there was no compromising with him. His feeling was no shackles period. I explained to him that this is a serious case. He's looking at significant jail time [and] it would in his best interest for the jury to *hear his story*, if that's what he wants to do (406-09).

Defense counsel indicated that Appellant had stated, during the off-the-record discussion, that he "want[ed] to *testify* at trial, but refuse[s] to come to the courtroom if [his] legs are shackled" (408).

The prosecutor added that "defendant was told that the trial will proceed if he refuses to come out" (410). But given the court's narrow warnings about the waiver of the "right to testify" (406-09), there is no indication in the record that Appellant understood this general comment to indicate that *post*-testimony proceedings— including summations—would occur in his absence if he did not appear that day.

Subsequently, numerous proceedings occurred in Appellant's absence, including the introduction of exhibits into evidence, the continued charge conference, summations, and the charge. 10/5/15 Tr. 410-515.

During summation, defense counsel repeatedly argued that the complainant was "impeach[ed] by omission"—that is, she never told Detective Barbato, and hospital staff, that Appellant placed his penis on her vagina (422-429, 444). "If she was consistent about one thing, she consistently left out the fact that there was even penis to vaginal contact at all in this case" (444; *see also* Charge 488 [court instructed the jury that it could consider omissions as evidence of incredibility]).

### E.   On October 6th, the court formulates a response to a factual inquiry from the jury in Appellant's absence.

On Tuesday, October 6th, the court received a note requesting a read-back of complainant's testimony:

> [Complainant's] testimony to both prosecution and defense regarding the position of defendant's penis in relation to witness' vulva/vagina, including witness' statements that the defendant "moved to…" and that she "asked him to stop because it would hurt" and he responded that "it would not hurt if you relaxed" (Ct. Ex. III; 523-24).

In Appellant's absence, the parties discussed an appropriate response to the factual inquiry (523-33). The prosecutor asked the court "whether [they] should make a record about the defendant not being here" (525). The court stated that the "defendant is in the holding pen right next door. Would you like to ask him if he would like to come join us?" (525). The sergeant relayed that Appellant wanted to "come into the courtroom" (525).

Still in Appellant's absence—while he was "on his way up" to the courtroom—counsel and the prosecutor continued to debate a response to the factual inquiry (525-

33). Defense counsel stated that they had located responsive portions of the "direct, cross, and redirect" and specifically identified the transcript pages (527-28).[4] But counsel repeatedly objected to the prosecutor's request to read certain portions of the complainant's redirect (page 94, line 25 through 95, line 2), arguing that they were not responsive (528, 533).[5] The court twice overruled counsel's objection (528, 533).

After the court had already decided the appropriate response to the inquiry, Appellant appeared (534). The court gave Appellant the note and counsel confirmed he had "brought [his] client up to speed [with] what's going on with the note" (533-34).

The court then responded to the jury's note (538-39). Deliberations continued and Appellant was returned to his cell (544-45).

### F.   Based on a chain of hearsay, the court finds a waiver of the right to be present during the verdict's rendition (on six of the seven counts) and an Allen charge (on the remaining count) (October 6th).

A day into deliberations, the court called counsel into court at 4:10 p.m. and recounted a chain of triple hearsay:

---

[4] Counsel expressly cited page 64 lines 8 through 18 (direct); pages 90 (line 24) through 91 (line 12) (cross); and (3) page 94 (lines 18-24) (redirect).

[5] Defense counsel and the prosecutor agreed that page 94 lines 18-24 should be read to the jury. *See* Complainant 94 (lines 18-24) ("Q. [Defense counsel] also asked you about the defendant's attempt to insert his penis into your vagina. Do you remember that question? A. Yes. Q. And he also asked you when you asked him to stop, he stopped. Correct? A. Yes."). Counsel, however, objected to the subsequent three lines of testimony. Complainant 94 line 25 through 95 line 2 ("Q. Did he stop - - did he stop with everything at that point? A. No."). When the court overruled counsel's objection, counsel proposed four additional lines of testimony. *See* 528-29 (citing Complainant 95 lines 3-6 ("Q. Did he continue? A. Yes. Q. What was the next incident after that? A. He put his mouth on my vagina.")).

[It has been] brought to my attention by the court officers that they've been informed by Corrections that your client wants to leave, he has no interest in coming back out (545).

The court did not ask counsel to consult with Appellant or ask the un-named officers about this hearsay chain. Instead, the court credited the hearsay chain and decided to move forward in Appellant's absence (545-46).

Doubting a waiver, the prosecutor asked whether Appellant had been adequately advised he was waiving his right to be present during the verdict's rendition: "Judge, what happens if we do get a verdict by the end of the day?" (546). Relying on the triple hearsay, the court answered, "He has stated that he doesn't want to come out" (546).

Still uncertain, the prosecutor queried: "Does he know that the case will just move forward [ ] even if we get a verdict?" (546-47). Citing prior warnings, and the hearsay chain, the court stated that Appellant had voluntarily opted to be absent (546-47). The court directed that Appellant should be produced the following day (547).

The court then received a note indicating that the jury had reached a verdict on six of the seven counts, but was deadlocked on one count (547-48). Over objection, and still in Appellant's absence, the court took a partial verdict and issued an *Allen* charge on the deadlocked count (548-51; *Allen v. United States*, 164 U.S. 492 [1896]).

In Appellant's absence, the court asked the jury about the deadlock (552). The foreperson said they were deadlocked on the attempted first-degree-rape charge (552). The court then took a partial guilty verdict on the six other counts and issued an *Allen* charge on the attempted-rape count (552-59).

**G.** **Based on another triple-hearsay account, the court responds to a comprehensive jury note and takes the final verdict in Appellant's absence (October 7th).**

On October 7, 2015, the final day of deliberations, the court again proceeded in Appellant's absence based on triple hearsay:

> [T]his morning when I first entered the courtroom, I was informed by one of the court officers that he had been informed by Corrections that [Appellant] had been produced, that he was in an agitated state, that he didn't want to be here, he wanted to leave, he was not interested in hearing the verdict, he was not interested in participating in any of that (563).

The court then received a jury note requesting instruction on the probative value of certain testimony, the elements of the attempted-rape charge, and whether there is a "crime of attempted-rape in the second or third degrees" (564-65). In Appellant's absence, the court formulated a response to this comprehensive note and then answered it (564-80).

Still in his absence, the court took the verdict convicting Appellant of attempted-first-degree rape (581-84).

**H.** **Sentencing**

Appellant was sentenced to concurrent sentences on all seven counts, thus triggering an aggregate sentence of 25 years of incarceration and 15 years of PRS.

# ARGUMENT

## POINT I

### APPELLANT WAS DEPRIVED OF HIS FUNDAMENTAL RIGHT TO BE PRESENT DURING NUMEROUS CRITICAL STAGES OF THE TRIAL.

A defendant has a fundamental right to be present at his trial. *People v. Rivera*, 23 N.Y.3d 827, 831 (2014); *People v. Morales*, 80 N.Y.2d 450, 453-57 (1992); C.P.L. §§ 260.20, 310.30, 310.40(a)(1); U.S. Const. Amends. 6 (confrontation), and 14 (due process); N.Y. Const. Art. I § 6 (confrontation and due process).

The constitutional right to be present extends to every proceeding at which a defendant's presence "'has a relation, reasonably substantial, to the fullness of [the] opportunity to defend against the charge.'" *Morales*, 80 N.Y.2d at 454 (quoting *Snyder v. Massachusetts*, 291 U.S. 97, 105-06 (1934)). The right thus applies whenever the defendant could potentially contribute to the proceeding. *People v. Williams*, 85 N.Y.2d 945, 947 (1995). The right only dissolves if presence would be "useless, or the benefit but a shadow," *Snyder*, 291 U.S. at 106-07, or if the proceedings are "purely legal" or "ministerial." *People v. Collins*, 99 N.Y.2d 14, 17-19 (2002) (the defendant lacks the right to be present during "purely legal" or "ministerial" proceedings).

Statutory law provides broader protection than the Constitution. C.P.L. § 260.20 broadly guarantees that a "defendant must be personally present during *the trial* of an indictment." *Id.* This right encompasses all "material" stages of trial, regardless of the

defendant's ability to contribute. *People v. Spotford*, 85 N.Y.2d 593, 596 (1995); *Morales*, 80 N.Y.2d at 457; *People v. Mullen*, 44 N.Y.2d 1, 4 (1978).[6]

The Court of Appeals has expressly held that the right to be present at trial applies to, among other things, the introduction of evidence, summations, the court's main and supplemental jury instructions, and verdict's rendition. *Rivera*, 23 N.Y.3d at 831; *Morales*, 80 N.Y.2d at 455; *People v. Ciaccio*, 47 N.Y.2d 431, 436-37 (1979); C.P.L. § 310.30 (right to be present during supplemental jury instructions); C.P.L. § 310.40 (same; rendition of the verdict); *People v. Rivas*, 306 A.D.2d 10, 11-12 (1st Dept. 2003); *Diaz v. United States*, 223 U.S. 442, 455-56 (1912).

Likewise, a defendant has the right to be present when the court formulates a response to a factual inquiry from the jury. Indeed, responses to a jury's factual inquiries "may well be determinative of the outcome of the case, coming as they do in response to questions raised by the jurors themselves." *Ciaccio*, 47 N.Y.2d at 436; *People v. Kisoon*, 8 N.Y.3d 129, 134-35 (2007) ("'[T]here are few moments in a criminal trial more critical to its outcome than when the court responds to a deliberating jury's request . . . '") (quoting *People v. Kisoon*, 23 A.D.3d 18, 20 (2d Dept. 2005) and citing *Ciaccio*, 47 N.Y.2d at 436); *People v. O'Rama*, 78 N.Y.2d 270, 277-279 (1991) (the inquiry-formulation stage is "critical").

---

[6] Like the constitutional right to be present, the statutory right applies to "ancillary proceedings" which, while not technically part of "the trial," are nevertheless stages during which the accused could potentially contribute. *Morales*, 80 N.Y.2d at 456; *People v. Sprowal*, 84 N.Y.2d 113, 118 (1994).

A response to a factual inquiry from a deliberating jury is so "important" that it "must be deemed a part of the trial" under C.P.L. § 260.20. *Mullen*, 44 N.Y.2d at 4. Thus, the failure to ensure a defendant's presence during the formulation of a response to a factual inquiry is "fatal error." *People v. Mehmedi*, 118 A.D.2d 806, 807 (2d Dept. 1989) (court violated the right to be present when, in the absence of the accused, it formulated a response to a note requesting information regarding the police's search of the defendant's vehicle), *aff'd on other grounds* 69 N.Y.2d 759 (1987); *People v. Bici*, 211 A.D.2d 804, 805 (2d Dept. 1995) ("It was further error, among other things, for the court, during the jury's deliberations, to fail to apprise the defendant, his counsel, and the prosecutor of a note from the jury prior to formulating a response thereto."); *People v. Hewlett*, 133 A.D.2d 417, 418 (2d Dept. 1987) (the court violated the right to be present when it "formulated a written response to the jury inquiry in consultation with the prosecutor and defense counsel, but the defendant was not present").[7]

To find otherwise would create an anomaly in the law. Under that anomaly, a defendant would have the right to be present to "listen" to the court's response to a

---

[7] On the other hand, a defendant lacks the right to be present during the formulation of a response to a "purely legal" or a "ministerial" inquiry. *See Collins*, 99 N.Y.2d at 18-19; *People v. Williams*, 38 A.D.3d 429, 430-31 (1st Dept. 2007) (court received a note regarding an uncooperative juror and, in defendant's absence, told the jury to "wait for further instructions"; the "ministerial act of" "essentially" "saying, 'Wait,'" did not require presence) (emphasis added); *People v. Salley*, 25 A.D.3d 473, 474-75 (1st Dept. 2006) (court considered the appropriate response to a request for a written copy of instructions that had been already orally delivered; defendant had no right to be present at that "purely legal discussion"); *People v. Rodriguez*, 76 N.Y.2d 918, 921 (1990) (defendant was present when the court formulated a response to a readback but was absent during a ministerial colloquy concerning "*only* the sufficiency of [a] readback" that had *already* been provided to the jury) (emphasis added); Appellant's Court of Appeals Brief, *People v. Rodriguez*, at 11-13.

factual inquiry (*Rivera*, 23 N.Y.3d at 831; C.P.L. § 310.30), but would lack the right to be present during the more *important* proceeding which actually determines what that response will be.

Although the accused may waive the presence right, the "key issue" is whether he "knowingly, voluntarily and intelligently relinquished this known right." *People v. Epps*, 37 N.Y.2d 343, 350 (1975) (citing *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)). "[T]he record should establish. . . by the defendant's own statements or responses, or other appropriate showing, that he understands the rights which he is surrendering." *People v. Bennett*, 238 A.D.2d 138, 139 (1st Dept. 1997) (internal quotations and citations omitted). There must be a "clear expression of a desire not to be present at trial under any circumstances." *People v. Parker*, 57 N.Y.2d 136, 141 (1982).

There is a heavy presumption against a waiver. *Illinois v. Allen*, 397 U.S. 337, 343 (1970); *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938) . To overcome the presumption, the prosecution must prove an affirmative, knowing, and intentional relinquishment of the right. *Johnson*, 304 U.S. at 464. "Whenever there is a waiver by an incarcerated defendant it will be suspect and subjected to careful examination." *Epps*, 37 N.Y.2d at 350. The Court of Appeals demands close scrutiny of such waivers because an incarcerated citizen does not fully control his ability to attend court—the State also exercises control over his presence. *Id.* Thus, courts must ensure that the defendant's absence is the result of a voluntary and knowing choice, not state action. *Id.*

The scope of the waiver is also critical. If a waiver is limited to certain proceedings, the court cannot proceed in the defendant's absence during proceedings not specifically included within the waiver. *Compare People v. Dini*, 292 A.D.2d 631, 632-33 (2d Dept. 2002) (defendant waived right to be present during the court's clarification of one jury note only, not the administration of all supplemental instructions requested by the jury), *with People v. Eubanks,* 41 A.D.3d 241, 242 (1st Dept. 2007) (no scope problem because it was "clear that defendant waived his presence for *all purposes*, including a possible verdict, for the entire day"). Any ambiguity in the waiver's scope must be resolved against the prosecution, as it carries the burden of proving a valid waiver. *E.g.*, *Bennett*, 238 A.D.2d at 139.[8]

\* \* \*

Here, despite the clear mandate of the Court of Appeals and the Criminal Procedure Law, Appellant was absent from numerous critical stages of trial: (1) the introduction of evidence, (2) summations, (3) the court's main charge, (4) the court's formulation of a response to a factual inquiry from the jury, (5) supplemental jury instructions, and (6) the verdict's rendition. *See* Appellant's Brief, *above*, at 4-12. Appellant's absence stemmed from multiple violations of his right to be present at trial, thus requiring reversal of all the counts.

---

[8] Presence violations are immune from preservation and prejudice analysis. *Rivera*, 23 N.Y.3d at 831; *People v. Dokes*, 79 N.Y.2d 656, 662 (1992); *People v. Cain*, 76 N.Y.2d 119, 124 (1990); *People v. Mehmedi*, 69 N.Y.2d 759, 760 (1987). Further, as the right is personal, counsel's consent to proceeding in the defendant's absence is irrelevant. *E.g.*, *People v. Mehmedi*, 69 N.Y.2d at 760.

### A.   The court violated Appellant's right to be present during the introduction of evidence, summations, and the charge conference.

The court violated Appellant's statutory and constitutional right to be present by accepting exhibits into evidence, conducting summations, and conducting the charge conference in Appellant's absence. 10/5/15 Tr. 410-515.

Appellant's narrow waiver of his right to be present during the testimonial stage of the trial did not cover these critical, *post*-testimony proceedings.

Before these critical stages, Appellant waived his right to be present for the testimony of prosecution "witnesses." 10/1/15 Tr. 281-98; *see* Brief, *above*, at 4-6. This waiver was limited "on its face," *Spotford*, 85 N.Y.2d at 598, both by the express language of the warnings provided—which *only* stated that prosecution-witness testimony would occur in his absence—and Appellant's own stated intention to return to court for his own testimony. Oct. 1, 2015 Tr. 281-97; *see* Brief, *above*, at 4-6.

Second, any waiver stemming from the subsequent off-the-record holding-cell colloquy was expressly limited to Appellant's "right to testify." 10/5/15 Tr. 393, 395, 406-10; *see* Brief, *above*, at 7-9. During that colloquy, the court expressly warned Appellant that he would lose his "right to testify" if he did not appear. In response, Appellant stated that he "want[ed] to *testify* at trial, but refused to come to the courtroom if [his] legs are shackled" (10/5/15 Tr. 406-09). Nothing about this exchange indicates a knowing and intentional relinquishment of the right to be present during *post-testimony* proceedings, such as summations. Indeed, that is how the court itself understood the

18

waiver. *See* 10/6/15 Tr. 537 (court recounted that during the off-the-record conversation, it had done "everything [it] could possibly do to bring [Appellant] out here so [he] *could testify*").

In sum, the record is insufficient to overcome the presumption against waiver. *Johnson*, 304 U.S. at 464. At most, the waiver's scope was ambiguous, thus defeating any waiver claim. *Bennett*, 238 A.D.2d at 139.

**B.    The court violated Appellant's right to be present during the formulation of a response to the jury's factual inquiry by failing to wait for his appearance in court.**

In Appellant's absence, the court formulated a response to a note requesting complainant's direct and cross testimony regarding penile-vaginal contact—an allegation she did not report to the police after the offense. *See* Ct. Ex. III; 10/6/15 Tr. 523-24; Complainant: 93; Barbato Cross 242-43; *see* Appellant's Brief, *above*, at 9-10. When the court formulated a response to this factual inquiry, Appellant was "on his way up" to the courtroom. Oct. 6, 2015 Tr. 523-33. But rather than briefly pausing the proceedings, the court simply moved forward in Appellant's absence. *Id.* That was reversible error.

As explained above, Appellant had a statutory right to be present when the court formulated a response to this factual inquiry—a critical stage of the trial. *See* Appellant's Brief, *above*, at 14-16; C.P.L. §§ 260.20, 310.30; *Mehmedi*, 118 A.D.2d at 807; *Kisoon*, 8 N.Y.3d at 134-35 ("[T]here are few moments in a criminal trial more critical to its

outcome than when the court responds to a deliberating jury's request . . . ") (quoting *Kisoon*, 23 A.D.3d at 20); *O'Rama*, 78 N.Y.2d at 279; *Ciaccio*, 47 N.Y.2d at 436; *Mullen*, 44 N.Y.2d at 4.

Further, since Appellant could have "assist[ed] counsel" and contributed to this proceeding, Appellant had a due-process right to be present. *E.g.*, *Williams*, 85 N.Y.2d at 947. Having sat through much of the trial (500 transcript pages and the testimony of 13 witnesses, including the complainant), heard the evidence, and observed the jury's reaction, Appellant may have: (1) understood nuances in the jury's question that counsel missed; (2) suggested alterations to the response; (3) requested clarifications of the question; or (4) informed counsel of responsive testimony. *See People v. Sloan*, 79 N.Y.2d 386, 392 (1992) (a defendant has the right to be present during *voir dire* because he can "assess the jurors' facial expressions [and] demeanor").

For instance, the jury's inquiry requested complainant's testimony regarding genital-vulval contact. But counsel failed to ask the court to read back the responsive impeachment testimony: Detective Barbato's testimony that complainant omitted this specific sexual contact from her narrative. Complainant 93; Barbato Cross 242-43; Defense Summation 423, 425-26, 429, 444 (stressing this impeachment-by-omission theory). After observing the complainant's testimony, counsel's impeachment of her testimony, and Barbato's cross, Appellant could have informed counsel about that important impeachment material. *See also People v. Enrique*, 165 A.D.2d 13, 16 (1st Dept. 1991) (emphasizing the "essential" value of "discourse between lawyer and client"). But

because the court failed to wait a few minutes for Appellant to enter the courtroom, he could not play that role. *Compare Salley*, 25 A.D.3d at 474-75 (court considered the appropriate response to a request for a written copy of instructions that had been already orally delivered; defendant had no right to be present at that "purely legal discussion").

Finally, the court's violation of the fundamental right was not somehow "cured" because, after the court overruled counsel's objection and chose the responsive testimony, it instructed counsel to bring his client "up to speed" and "explain [ ] what is happening" (10/6/15 Tr. 534). The court can only cure a presence violation if it re-opens the proceeding and conducts a *de novo* proceeding in Appellant's presence. *E.g.,* *People v. Starks*, 88 N.Y.2d 18, 29 (1996); *People v. Spotford*, 85 N.Y.2d 593, 599 (1995); *People v. Rodriguez*, 20 A.D.3d 355, 356-57 (1st Dept. 2005); *People v. Madera*, 216 A.D.2d 89, 90 (1st Dept. 1995). That never happened here. Instead the court marched forward and answered the note under the ruling it made in Appellant's absence (534-539). There was no "cure."

**C.    The court violated Appellant's right to be present during the formulation of a response to two jury notes, the provision of supplemental jury instructions, and the verdict's rendition.**

Appellant was absent during the formulation of a response to two jury notes, the responses to those notes, and the verdict's rendition. *See* 10/6/15 Tr. 545-61 (in Appellant's absence, the court accepted the jury's verdict on six of seven counts, and administered an *Allen* charge); 10/7/15 Tr. 563-85 (court provided supplemental

instructions and accepted the attempted first-degree rape verdict in Appellant's absence).

The court's decision to conduct these critical stages in Appellant's absence violated the presence right. C.P.L. § 310.40(1) (the defendant has the right to be present during the verdict's rendition); C.P.L. § 260.20, 310.30; *Rivas*, 306 A.D.2d at 11-12; *Morales*, 80 N.Y.2d at 455-56; *Diaz*, 223 U.S. at 456; U.S. Const., Amends. 6 (confrontation) and 14 (due process); N.Y. Const. Art. I, § 6 (confrontation and due process).

The trial court erred in finding a valid waiver of the right to be present based on a chain of triple hearsay: unspecified DOC personnel had informed unspecified court officers—who then informed the court—that Appellant did not wish to appear. *See* 10/6/15 Tr. 545 ("[It]'s been brought to my attention by the court officers that they've been informed by Corrections that [Appellant] wants to leave, he has no interest in coming back out."); 10/7/15 Tr. 563 ("I just wanted to go on the record that this morning when I first entered the courtroom, I was informed by one of the court officers that he had been informed by Corrections that [Appellant] had been produced, that he was in an agitated state, that he didn't want to be here, he wanted to leave, he was not interested in hearing the verdict, he was not interested in participating in any of that."); *see also* Brief, *above*, at 10-12.

This triple hearsay was insufficient to prove a waiver. Indeed, New York courts have rejected reliance on multiple levels of hearsay to find a waiver of the right to be present during a parole-revocation proceedings, where the liberty interests are inferior to the

interests at stake here. *People ex rel. McKay v. Sheriff of County of Rensselaer*, 152 A.D.2d 786, 787 (3d Dept. 1989); *People ex. rel. Griffin v. Walters*, 83 A.D.2d 618, 618-19 (2d Dept. 1981) (two layers of parole-officer hearsay were insufficient).

This precedent recognizes the obvious: multiple levels of hearsay are too unreliable to justify conducting critical proceedings in the defendant's absence. Here, for instance, the string of secondhand accounts from unidentified court officers undercut the court's ability to ensure that Appellant had affirmatively relinquished his fundamental rights. "Like the game of 'telephone,' each added level of hearsay increases the risk of mistake." Gregg Kettles, *Ancient Documents and the Rule Against Multiple Hearsay,* 39 Santa Clara L. Rev. 719, 735 (1999).

In cases finding waivers based on hearsay from DOC staff, there were obvious indicia of the hearsay's reliability that were absent here.

In *People v. Eubanks*, 41 A.D.3d 241, 241-42 (1st Dept. 2007), the defendant conveyed that he would not appear on Friday for religious reasons. Then, on Friday, DOC staff directly communicated that the defendant did not want to appear. As this unique "chain of events" indicated a specific and "obvious" reason for the defendant's absence—*i.e.*, religious services—this Court found a valid waiver. *Id.*

But here, the chain of conclusory hearsay merely relayed that Appellant "wants to leave." 10/6/15 Tr. 545-46. Unlike in *Eubanks*, this record does not explain: (1) the reason for the putative waiver; (2) whether Appellant's statement was a mere indication of frustration and not a genuine relinquishment of a core right; or (3) the context of the

conversation that produced this conclusory statement. Absent any additional context or detail, the court lacked a sufficient basis to find a waiver. *Compare also People v. Davis*, 269 A.D.2d 163 (1st Dept. 2000) and Respondent's Brief, *People v. Davis*, 26 ("Department of Corrections" directly informed the court that "defendant had declined to appear [on Friday] because he was a Muslim"); *People v. Trubin*, 304 A.D.2d 312, 312 (1st Dept. 2003) and Respondent's Brief, *People v. Trubin*, 13-17 (same circumstances); *Epps*, 37 N.Y.2d at 346-48 (DOC Captain communicated that defendant had "joined [a] boycott" of court proceedings, defense counsel confirmed he had seen defendant speak to the leader of the boycott, and Captain provided the court with "statistics" proving that a boycott was taking place; trial court's reliance on direct communication from a DOC Captain that defendant was absent since he had "joined the boycott" was permissible).

Further, the timing of the first hearsay chain—minutes from the close of business (4:10 p.m.)—indicates Appellant may have simply "want[ed] to leave" because he had been in a cell all day and believed nothing further of substance would occur. Notably, that morning, Appellant appeared for a response to a jury inquiry (10/6/15 Tr. 534-43), thereby demonstrating a desire to participate in the proceedings. To ensure a genuine, intentional choice to absent himself from critical proceedings—including the verdict's rendition—the court had to do more than rely on a chain of conclusory hearsay.

The prosecutor's doubts about a "waiver" further undermine a waiver theory. After learning of this triple-hearsay chain, the prosecutor asked, "Judge, what happens if we

do get a verdict by the end of the day? . . . Does he know that the case will just move forward [ ] even if we get a verdict?" (10/6/15 Tr. 546-47); *see also* Brief, *above*, at 11. Even the prosecutor doubted that the conclusory, triple-hearsay chain indicated a knowing and intentional waiver.

The court's reliance on the hearsay chain was particularly unreasonable because of the obvious—*and far more reliable*—option: ask defense counsel to consult with his client. As *People v. Flinn*, 22 N.Y.3d 599, 602 (2014), recently explained, "a lawyer may be trusted to explain rights to his or her client, and to report to the court the result of that discussion." *Id.* (finding waiver based on counsel's account of the client's waiver); *see also People v. Miller*, 184 A.D.2d 375, 376 (1st Dept. 1992). The court had previously asked counsel to speak to his client about his presence (10/1/15 Tr. 292-94), and the record reveals no explanation for its failure to do so before the supplemental instructions and verdict's rendition. The only reason to reject that far-more-reliable procedure was a desire to avoid a few minutes of delay. That interest cannot trump the fundamental right to presence. *See, e.g.*, *Stanley v. Illinois*, 405 U.S. 645, 656 (1972) ("[T]he Bill of Rights [was] designed to protect the fragile values of a vulnerable citizenry from the overbearing concern for efficiency.").

This Court should reverse and order a new trial on all counts.

## POINT II

### THE CHARGES WERE MULTIPLICITOUS.

#### A.    The Underlying Record

Appellant was indicted for three sets of counts, each alleging violations of the same provision of the Penal Law:

- two counts of first-degree criminal sexual act (Counts 1 and 2);
- two counts of first-degree sexual abuse (Counts 4 and 5); and
- two counts of third-degree criminal sexual act (Counts 6 and 7).

As for the two first-degree criminal sexual act counts, the indictment alleged oral-vulval (Count 1) and penile-oral contact (Count 2). *See* Indictment. As for the first-degree sexual abuse counts, the indictment alleged digital penetration (Count 4) and mouth-to-mouth contact (Count 5). *Id.* And as for the third-degree criminal sexual act counts, the indictment alleged oral-vulval (Count 6) and penile-oral contact (Count 7). *Id.*

Before and during trial, Appellant argued that these three sets of Article 130 counts contained multiplicitous charges. *See* Def. Pre-trial Motion to Dismiss (9/16/15); Trial Motion to Dismiss 383-87. The court denied the motion. 9/21/15 Tr. 2-3; 10/5/15 Tr. 404.

#### B.    The Charges Were Multiplicitous.

Under multiplicity rules, the State cannot charge or convict a defendant for more than one offense when the defendant engages "in an uninterrupted course of conduct

directed at a single victim." *People v. Alonzo*, 16 N.Y.3d 267, 270 (2011); *Matter of Narvanda S.*, 109 A.D.3d 710, 712 (1st Dept. 2013); *People v. Moffitt*, 20 A.D.3d 687, 690-91 (3d Dept. 2005) ("[T]he fact that defendant allegedly touched both areas of the victim's sexual or intimate parts during [the incident] does not constitute separate, indictable acts of 'sexual contact' for each such part touched during the same incident.").

Multiplicitous charges violate state common law and the state/federal double jeopardy clause's prohibition on multiple punishments for the same crime. U.S. Const. Amend. 5, 14; N.Y. Const. Art. I § 6; *Alonzo*, 16 N.Y.3d at 269; *People v. Olson*, 116 A.D.3d 427, 428 (1st Dept. 2014) (the double jeopardy and multiplicity bars stem from "corresponding" "principle[s]"); *see also* Wayne R. LaFave, 5 Criminal Procedure § 19.2(b) (4th ed.); U.S. Const. Amend. 5; N.Y. Const. Art. I, § 6.

"If an indictment is multiplicitous it creates the risk that a defendant will be punished for, or stigmatized with a conviction of, more crimes than he actually committed." *Alonzo*, 16 N.Y.3d at 269. Multiplicitous charges also prejudice the defendant at trial "by leading the jury to believe that defendant's conduct is especially serious because it constitutes more than one crime." LaFave, *above*, at § 19.3(e); *United States v. Reed*, 639 F.2d 896, 904 (2d Cir. 1981); *United States v. Carter*, 576 F.2d 1061, 1064 (3d Cir. 1978); *United States v. Langford*, 946 F.2d 798, 802 (11th Cir. 1991); *United States v. Clarridge*, 811 F.Supp. 697, 702 (D.D.C.1992). "Once such a message [of repeated crimes] is conveyed to the jury, the risk increases that the jury will be diverted from a careful analysis of the

conduct at issue." *Clarridge*, 811 F.Supp. at 702. Specifically, the jury could "assum[e] that, with so many charges pending the defendant must be guilty on at least some of them." *Id.* at 702; *United States v. Ketchum*, 320 F.2d 3, 8 (2d Cir. 1963) (multiplicitous charges "may have some psychological effect upon a jury by suggesting to it that defendant has committed not one but several crimes.").

*Alonzo* provides the analytical framework. There, the grand jury indicted the defendant on four counts of first-degree sexual abuse related to an incident in which the defendant pinned two women to the ground, groped their breasts, and groped their buttocks. 16 N.Y.3d at 269. The defendant was indicted for (and convicted of) four counts of first-degree sexual abuse: "forcible hand-to-breast contact" (one count as to each victim) and "forcible hand-to-buttocks" contact (same).

The Court of Appeals held that the facts supported only one count of first-degree sexual abuse against each victim. *Id.* at 270; *see* Penal Law § 130.65(1) ("A person is guilty of sexual abuse in the first degree when he or she subjects another person to sexual contact . . . [b]y forcible compulsion."). Although the defendant engaged in "at least two—indeed probably more—occurrences of 'sexual contact,'" the acts involved "'a single, uninterrupted occurrence of forcible compulsion.'" 16 N.Y.3d at 270 (quoting *Moffitt*, 20 A.D.3d at 690). Thus, *Alonzo* held that the indictment on more than one charge of sexual abuse per victim was illegal. *Id.*

*Alonzo* controls this case. The acts comprising the three sets of counts, like those in *Alonzo*, represent an "uninterrupted course of conduct." *Alonzo*, 16 N.Y.3d at 270.

Complainant testified that these points of contact comprised one, uninterrupted encounter (Complainant 60-69). The acts occurred in quick succession, in the same room of the apartment, with no temporal breaks (Complainant 46-73). Further, the contact occurred in the context of a single, sustained exertion of physical control by Appellant. As the conduct constituted an "uninterrupted occurrence of forcible compulsion," the counts were multiplicitous. *Alonzo*, 16 N.Y.3d at 270 (internal quotation marks omitted); *Moffitt*, 20 A.D.3d at 690; *compare People v. Manigault*, 150 A.D.3d 1331, 1332 (3d Dept. 2017) (counts not multiplicitous because, between the two acts, "the victim left the home in an attempt to escape defendant's abuse"); *compare also People v. Garcia*, 141 A.D.3d 861, 865 (3d Dept. 2016) (counts not multiplicitous because acts occurred in distinct locations after a temporal break).

As the acts alleged consisted of "an uninterrupted course of conduct directed at a single victim," one count from each set of multiplicitous charges must be dismissed. *Alonzo*, 16 N.Y.3d at 270.

Further, this Court should order a new trial on the remaining four counts. By unconstitutionally lodging an excessive quantity of charges against Appellant, the prosecution unfairly induced the jury to conclude that "with so many charges pending the defendant must be guilty on at least some of them." *Clarridge,* 811 F. Supp. at 702; LaFave, *above*, at § 19.3(e); *Reed*, 639 F.2d at 904; *Carter*, 576 F.2d at 1064; *Langford,* 946 F.2d at 802; *Ketchum*, 320 F.2d at 8. As the evidence was not overwhelming—indeed, the evidence of non-consent was based solely on a single witness' testimony—this

prejudicial constitutional error cannot be deemed harmless. *Chapman v. California*, 386 U.S. 18 (1967); *People v. Crimmins*, 36 N.Y.2d 230 (1976).

## CONCLUSION

This Court should dismiss one count of first-degree criminal sexual act, one count of first-degree sexual abuse, and one count of third-degree criminal sexual act (Point II) and order a new trial on the remaining four counts (Points I and II).

Respectfully submitted,

Robert S. Dean
Center for Appellate Litigation
*Counsel for Defendant-Appellant*

CAROLYN SHANAHAN
*Of Counsel, Pro Bono*

MATTHEW BOVA
*Of Counsel*

June 4, 2018

## RULE 5531 STATEMENT

1. The indictment number in the Court below was 4258/14.

2. The full names of the original parties were People of the State of New York against Lonnie Harrell. There has been no change of parties on this appeal.

3. This action was commenced in Supreme Court, New York County by indictment.

4. This appeal is from an October 21, 2015 judgment, convicting Appellant, after trial, and sentencing him to an aggregate sentence of 25-years' incarceration and 15-years' post-release supervision (Merchan, J., at trial and sentence).

5. Appellant has been granted permission to appeal as a poor person on the original record. The appendix method is not being used.

## PRINTING SPECIFICATIONS STATEMENT

The brief was prepared in Microsoft Word, using 14-point Garamond font, 12-point in footnotes, and totaled 7,541 words.

To be argued by: Carolyn Shanahan
15 Minutes Requested

New York County Ind. No. 4258/14

# New York Supreme Court

# Appellate Division-First Department

_____

THE PEOPLE OF THE STATE OF NEW YORK,

*Respondent,*

*v.*

LONNIE HARRELL,

*Defendant-Appellant.*

_____

## REPLY BRIEF FOR DEFENDANT-APPELLANT


ROBERT S. DEAN
Center for Appellate Litigation
*Attorney for Defendant-Appellant*
120 Wall Street, 28th Floor
New York, NY 10005

Carolyn Shanahan
*Of Counsel, Pro Bono*
Arnold & Porter Kaye Scholer LLP
250 West 55th Street
New York, NY 10019

Matthew Bova
*Of Counsel*
mbova@cfal.org
(212) 577-2523, ext. 543

October 17, 2018

## CONFIDENTIAL UNDER CIVIL RIGHTS LAW § 50-b

# TABLE OF CONTENTS

REPLY ARGUMENT .......................................................................................1

   REPLY POINT I.

  The court violated Appellant's right to be present during trial. ...............1

     A.   Appellant did not knowingly waive his right to be present during
         the introduction of evidence, summations, and the charge
         conference (October 1st and 5th). . ....................................................1

     B.   Appellant had the right to be present during the formulation of a
         response to the jury's factual inquiry (October 6th). .......................5

     C.   The record fails to prove a voluntary waiver of the right to be
         present during the formulation of responses to two jury notes,
         supplemental jury instructions, and the verdict's rendition
         (October 6th and 7th).. .......................................................................8

   REPLY POINT II.

  The Charges Were Multiplicitous. .................................................................9

  CONCLUSION ...........................................................................................11

  PRINTING SPECIFICATIONS STATEMENT .....................................12

# TABLE OF AUTHORITIES

## <u>Cases</u>

*Ball v. United States,*
  470 U.S. 856 (1985)...............................................................................................10

*Johnson v. Zerbst,*
  304 U.S. 458 (1938)..................................................................................................2

*People ex. rel. Griffin v. Walters,*
  83 A.D.2d 618 (2d Dept. 1981)................................................................................9

*People ex rel. McKay v. Sheriff of County of Rensselaer,*
  152 A.D.2d 786 (3d Dept. 1989)...............................................................................9

*People v. Afrika,*
  13 A.D.3d 1218 (4th Dept. 2004) ............................................................................6

*People v. Alonzo,*
  16 N.Y.3d 267 (2011) ...........................................................................................10

*People v. Campbell,*
  120 A.D.3d 827 (2d Dept. 2014).............................................................................10

*People v. Clark,*
  128 A.D.3d 1494 (4th Dept. 2015) ..........................................................................6

*People v. Collins,*
  29 A.D.3d 434 (1st Dept. 2006) ..........................................................................3, 9

*People v. Corley,*
  67 N.Y.2d 105 (1986) ..........................................................................................1, 2

*People v. Dini,*
  292 A.D.2d 631 (2d Dept. 2002).............................................................................4

*People v. Epps,*
  37 N.Y.2d 343 (1975) .....................................................................................2, 3, 8

*People v. Eubanks,*
  41 A.D.3d 241 (1st Dept. 2007) ..............................................................................3

*People v. Flinn,*
      22 N.Y.3d 599 (2014) ................................................................................................9

*People v. Hewlett,*
      133 A.D.2d 417 (2d Dept. 1987) ..............................................................................6

*People v. Madera,*
      216 A.D.2d 89 (1st Dept. 1995) ...............................................................................7

*People v. Maitland,*
      159 A.D.3d 524 (1st Dept. 2018) ...........................................................................10

*People v. Mehmedi,*
      118 A.D.2d 806 (2d Dep't 1986) ..............................................................................6

*People v. Miller,*
      184 A.D.2d 375 (1st Dept. 1992) .............................................................................2

*People v. Monroe,*
      90 N.Y.2d 982 (1997) ...............................................................................................5

*People v. Parker,*
      57 N.Y.2d 136 (1982) ...........................................................................................3, 4

*People v. Rodriguez,*
      174 A.D.2d 405 (1st Dept. 1991) .............................................................................2

*People v. Rodriguez,*
      20 A.D.3d 355 (1st Dept. 2005) ...............................................................................7

*People v. Rodriguez,*
      76 N.Y.2d 918 (1990) ...............................................................................................6

*People v. Roman,*
      88 N.Y.2d 18 (1996)..............................................................................................7, 8

*People v. Sanchez,*
      65 N.Y.2d 436 (1985) ...........................................................................................1, 2

*People v. Starks,*
      88 N.Y.2d 18 (1996)..................................................................................................7

*People v. Velasco,*
      77 N.Y.2d 469 (1991) ...............................................................................................5

*People v. Young,*
 141 A.D.3d 551 (2d Dept. 2016) .......................................................................... 10

*Taylor v. United States,*
 414 U.S. 17 (1973) .................................................................................................... 2

## **Statutes and Other Authorities**

C.P.L. § 260.20 ............................................................................................................. 6

Wayne R. LaFave, 5 Criminal Procedure § 19.3(e) (4th ed.) ................................. 10

SUPREME COURT OF THE STATE OF NEW YORK
APPELLATE DIVISION: FIRST DEPARTMENT

THE PEOPLE OF THE STATE OF NEW YORK,

       *Respondent,*

   *v.*

LONNIE HARRELL,

       *Defendant-Appellant.*

## REPLY ARGUMENT

## POINT I

**The court violated Appellant's right to be present during trial.[1]**

**A.    Appellant did not knowingly waive his right to be present during the introduction of evidence, summations, and the charge conference (October 1st and 5th).**

Invoking the "forfeiture" doctrine, the Government claims that an *incarcerated* defendant automatically forfeits the right to be present when he is absent from trial even if his waiver was unknowing. Government's Brief 34-36, 40-41 ("Govt. Br."); *People v. Corley*, 67 N.Y.2d 105, 110 (1986) ("Whereas waiver results from a

---

[1] The Government misleadingly claims that Appellant does not "contest" the strength of the prosecution's evidence, apparently because Appellant has not raised a weight-of-the-evidence claim. Govt. Br. 10, 14. On the contrary, Appellant expressly argued in his opening papers that the no-consent evidence was underwhelming because it was based on a single witness' testimony. App. Br. 29-30.

knowing, voluntary and intelligent decision, forfeiture occurs by operation of law, based on objective facts and circumstances and without regard to defendant's actual state of mind.").

This argument misstates the law. The forfeiture doctrine only nullifies the need for an examination of the knowing quality of a waiver if the defendant is "*at liberty*." *People v. Sanchez*, 65 N.Y.2d 436, 443 (1985) ("The [Supreme Court] recognized [in *Taylor v. United States*, 414 U.S. 17, 19-20 n. 3 (1973)] that the 'controlling rule' is: 'if a defendant *at liberty* remains away during his trial the court may proceed provided it is clearly established that his absence is voluntary. . . .'") (emphasis added); *Taylor*, 414 U.S. at 19-20; *People v. Corley*, 67 N.Y.2d at 109-10 (applying forfeiture analysis where the defendant was at liberty); *People v. Rodriguez*, 174 A.D.2d 405, 405 (1st Dept. 1991) (same) (citing *Sanchez*, 65 N.Y.2d at 443).

By contrast, when, as here, the accused is *incarcerated*, the Government bears the heavy burden of proving a knowing and voluntary waiver. *People v. Epps*, 37 N.Y.2d 343, 350 (1975) (citing *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)). As the Court of Appeals held in *Epps*, when analyzing an incarcerated defendant's absence from trial, the "*key issue* is whether th[e] defendant knowingly, voluntarily and intelligently relinquished this known right. . . . Whenever there is a waiver by an incarcerated defendant it will be suspect and subjected to *careful examination*." 37 N.Y.2d at 350 (emphasis added); *id.* at 350-51; *accord People v. Miller*, 184 A.D.2d 375, 376 (1st Dept. 1992) (applying knowing, intelligent and voluntary waiver

2

analysis to an absence claim) (citing *Epps*, 37 N.Y.2d at 350-51).

The Government alternatively advances a "magic words" argument: So long as the court at some point—apparently even more than a week earlier—provides a broad *"Parker* warning," any subsequent absence is invariably the result of a knowing waiver, even if the court later *narrows* the warning's scope. Govt. Br. 36-37. And here, the Government contends that the trial court provided a *Parker* warning on September 24, 2015—at least a week before the proceedings at issue (the introduction of evidence, the charge conference, and the summations)—thus proving a knowing waiver on October 1st and 5th. The court's subsequent narrowing of its warning on October 1st and 5th is, under this view, irrelevant. *Id.*

This theory ignores the reality that subsequent statements can modify the defendant's understanding of "the consequences of failing to appear." *People v. Parker*, 57 N.Y.2d 136, 141 (1982). Thus, a token *"Parker* warning" delivered a week prior to a defendant's absence is insufficient to prove a knowing waiver where more recent, narrowed warnings modify the defendant's understanding of "the consequences of failing to appear." *Id.*; *compare People v. Eubanks*, 41 A.D.3d 241, 242 (1st Dept. 2007) (the scope of the defendant's waiver of the presence right included the rendition of the verdict where the record indicated the defendant's intent to waive the right "for all purposes, including a possible verdict, for the entire day"), *People v. Collins*, 29 A.D.3d 434, 434 (1st Dept. 2006) (cited at Govt. Br. 34, 36, 37) (where there was no narrow warning, general *Parker* warning

proved a knowing waiver of the right to be present during verdict's rendition), *with People v. Dini*, 292 A.D.2d 631, 632-33 (2d Dept. 2002) (defendant waived right to be present during the court's clarification of one jury note only, not the administration of all supplemental instructions requested by the jury).

The Government's position that the scope of the subsequent warnings is irrelevant would lead to absurd results. Suppose, for instance, a court warned a defendant that he would miss testimony by a prosecution witness if he went to the bathroom and then, in the defendant's absence, conducted summations. Under the Government's proposed rule, there would be no presence violation so long as the court had, at some point earlier, provided a broad *Parker* warning. This Court should reject that irrational rule. Instead, this Court should hold that where the court's subsequent statements modify the defendant's understanding of the "the consequences of failing to appear," a waiver theory based on a broad *Parker* warning fails. *Parker*, 57 N.Y.2d at 141.

The Government alternatively claims that the court's warnings on October 1st and 5th that if Appellant did not appear he would merely miss the testimony of prosecution witnesses and his chance to testify did not actually narrow the September 24th warning's scope. Govt. Br. 36. This is so, the Government contends, because the prosecutor stated (when recounting the October 5th holding-cell exchange) that "the defendant was told that the trial will proceed if he refuses to come out." Oct. 5, 2015 Tr. 410.

Context, however, is key. The prosecutor made this statement following the court's detailed account of its conversation with Appellant. And in that account, the court repeatedly stated that it had merely informed Appellant that, if he did not appear, he would lose his "right to testify."[2] Thus, the record does not demonstrate that Appellant understood this critical exchange to indicate he would lose anything beyond his right to testify if he did not appear.

At best, this record is ambiguous. Protection of the fundamental right to be present demands more than a shaky record. App. Br. 17.[3]

### B.   Appellant had the right to be present during the formulation of a response to the jury's factual inquiry (October 6th).

Although the question has split the Second and Fourth Departments and is open in this Court, the Government refuses to meaningfully address whether the accused has a right to be present during the formulation of a response to a *factual*

---

[2] Oct. 5, 2015 Tr. 406 ("I was just trying my hardest to convince him that. . . I want to preserve his right to testify"), Tr. 408 ("I genuinely just want him to have his day in court if he wants to testify"), Tr. 409 ("I explained to him that. . . it would be in his best interest for the jury to hear his story").

[3] The Government oddly suggests that the accused does not have the right to be present during the introduction of evidence and/or the charge conference. Govt. Br. 37-38. The Court of Appeals disagrees. *People v. Monroe*, 90 N.Y.2d 982, 984 (1997) ("Criminal defendants have the right to be present at      all      material      stages      of      trial,      which      include the introduction of evidence."); App. Br. 14. In any event, it is undisputed that Appellant had the right to be present during summations, *People v. Velasco*, 77 N.Y.2d 469, 472 (1991), which occurred on October 5th immediately after the introduction of exhibits into evidence and a part of the charge conference. Oct. 5, 2015 Tr. 409-78. Appellant was absent during all three proceedings, so the question of whether Appellant also had the right to be present during the introduction of evidence/charge conference is ultimately academic.

inquiry. App. Br. 14-16 & 15 n. 7 (citing *People v. Mehmedi*, 118 A.D.2d 806, 807 (2d Dep't 1986), *aff'd on other grounds* 69 N.Y.2d 759 (1987) and *People v. Hewlett*, 133 A.D.2d 417, 418 (2d Dept. 1987)); *compare People v. Clark*, 128 A.D.3d 1494, 1495 (4th Dept. 2015) and *People v. Afrika*, 13 A.D.3d 1218, 1222 (4th Dept. 2004).

The Government does not deny that Appellant could have contributed to the formulation of a response. App. Br. 20-21. The Government also makes no attempt to square its position with the text of C.P.L. § 260.20, which broadly declares, without an exception for charge-related proceedings, that a defendant has the right to be present during "the trial of an indictment." App. Br. 13-14. And the Government does not deny that rejecting a right to be present during the *formulation* stage, while granting that right at the less-meaningful *response* stage, would create an anomaly in our law. App. Br. 14-16.

Instead, the Government exclusively relies on readily distinguishable Court of Appeals precedent (*People v. Rodriguez*) and conclusory Fourth Department precedent relying on it. Govt. Br. 38-39 (citing *People v. Rodriguez*, 76 N.Y.2d 918, 921 [1990] [a defendant lacks the right to be present "at a colloquy between his attorney and the Trial Judge which. . . involved only the sufficiency of the read-back"], and also citing *Clark*, 128 A.D.3d at 1495 [citing *Rodriguez*, 76 N.Y.2d at 921]; and *Afrika*, 13 A.D.3d at 1222 [same]). The Government makes no attempt to explain how *Rodriguez*'s narrow holding—that a defendant lacks the right to be present during a colloquy regarding the sufficiency of a readback that had *already*

6

*been given*—creates a blanket rule that a defendant has no right to be present during the formulation of the *actual* response.  App. Br. 15 n.7.

Guaranteeing the right to be present at the response-formulation stage honors the fundamental right to be present and does no harm to the State. The Government identifies no interest whatsoever in conducting these proceedings in the defendant's absence. Indeed, here, the court even attempted to allow for Appellant's presence, but rushed the proceedings along while Appellant was "on his way" to the courtroom.  Oct. 6, 2015 Tr. 523-33.

The Government adds that the error was harmless ("de minimis") because, after the court had already formally decided its response in Appellant's absence, the court "apprised [Appellant] of the content of the conversation between the court and the attorneys" and Appellant "had the chance to contribute to the proposed response to the note if he wanted to."  Govt. Br. 40.  That is simply not the law. To cure a presence violation, the court must conduct the proceeding *de novo*. App. Br. 21 (citing *People v. Starks* [companion case to *People v. Roman*], 88 N.Y.2d 18, 29 (1996) (error was "de minimis" because the court "replicated *de novo* in defendant Starks' presence the sidebar conference" conducted in his absence); *People v. Rodriguez*, 20 A.D.3d 355, 356-57 (1st Dept. 2005) ("de novo replication" of the proceeding is required) (citing *People v. Madera*, 216 A.D.2d 89, 90 [1st Dept. 1995] [same]); *see also* App. Br. 21.  A mere post-violation "chance" to participate is insufficient, particularly when, as here, the record indicates that counsel was

given only a moment to bring Appellant "up to speed" by showing him the jury note and the court never even asked Appellant if he wanted a *de novo* proceeding. Oct. 6, 2015 Tr. 533-34.

*Roman*, cited by the Government for the claim that a "chance" to participate can cure a presence violation (Govt. Br. 40), actually confirms that a *de novo* proceeding is required. There, the Court of Appeals held that "absence from a hearing will not deprive [the accused] of the opportunity to give meaningful input when the court essentially *holds a de novo hearing* on the same matter at which defendant is present." 88 N.Y.2d at 27 (emphasis added).

### C. The record fails to prove a voluntary waiver of the right to be present during the formulation of responses to two jury notes, supplemental jury instructions, and the verdict's rendition (October 6th and 7th).

The Government offers the circular argument that Appellant voluntarily waived his right to be present during critical post-summation proceedings on October 6 and 7 because he was not present.  Govt. Br. 41-42 and 44 n. 6.[4] The question, however, is whether an uncorroborated triple-hearsay chain establishes that Appellant *affirmatively and voluntarily chose* not to be there—that is, whether he actually told correction officers he did not want to appear.  App. Br. 23; *Epps,* 37 N.Y.2d at 350 (the voluntariness of the waiver of an incarcerated defendant must

---

[4] This argument seems to be a rehash of the Government's mistaken claim that absence *per se* proves forfeiture. Reply Brief, *supra* at 1-2.

be subject to careful scrutiny).

As for the actual voluntariness inquiry before this Court, the Government does not dispute decisions holding, in the parole-revocation context, that a waiver cannot be based on multiple levels of hearsay.  App. Br. 22-23 (citing *People ex rel. McKay v. Sheriff of County of Rensselaer*, 152 A.D.2d 786, 787 (3d Dept. 1989); *People ex. rel. Griffin v. Walters*, 83 A.D.2d 618, 618-19 (2d Dept. 1981)). Instead, the Government claims that parole-revocation proceedings are different from criminal trials. Govt. Br. 43 n. 5. This argument sidesteps the point of the comparison: If a rule protecting basic rights applies in proceedings implicating inferior liberty interests (parole-revocation proceedings), that rule necessarily applies when the liberty interests are, as here, greater (the criminal trial itself). App. Br. 22-23.[5]

## POINT II

### The charges were multiplicitous.

The Government mistakenly argues that Appellant is not entitled to relief for a multiplicity violation because he received a concurrent sentence. Govt. Br. 51-52. On the contrary, Appellant is entitled to a new trial, or, at a minimum, dismissal of one count from each multiplicitous set of charges because those duplicative

---

[5] *People v. Collins*, 29 A.D.3d at 434 (cited at Govt. Br. 43), is distinguishable because there the defendant's agent (counsel), relayed to the court that the client did not want to appear. Counsel's account of the client's statements are obviously reliable. App. Br. 25 (citing *People v. Flinn*, 22 N.Y.3d 599, 602 [2014]). Here though, there were no such statements from counsel.

counts covered a "single uninterrupted occurrence." App. Br. 29-30 (quoting *People v. Alonzo*, 16 N.Y.3d 267, 270 [2011] [internal quotations marks omitted]).

To the extent *People v. Maitland*'s dictum discussing an unpreserved multiplicity argument actually suggests that no relief is available when concurrent sentences are imposed, that is not the law. 159 A.D.3d 524, 525 (1st Dept. 2018) (cited at Govt. Br. 52). As the Court of Appeals explained in *Alonzo*, multiplicity rules prevent the stigma of multiple *convictions*, regardless of consecutive sentencing. 16 N.Y.3d at 269-70; *accord People v. Young*, 141 A.D.3d 551, 554 (2d Dept. 2016) (rejecting the argument that the defendant could not obtain relief because "the defendant received concurrent sentences on the counts at issue" because "those convictions were" nevertheless "'an impermissible punishment'" (quoting *People v. Campbell*, 120 A.D.3d 827, 828 [2d Dept. 2014], quoting in turn *Ball v. United States*, 470 U.S. 856, 865 [1985]). Moreover, regardless of concurrent sentencing, multiplicitous charges prejudice the defendant at trial "'by leading the jury to believe that defendant's conduct is especially serious because it constitutes more than one crime.'" App. Br. 27 (quoting Wayne R. LaFave, 5 Criminal Procedure § 19.3(e) [4th ed.]).

## CONCLUSION

This Court should dismiss one count of first-degree criminal sexual act, one count of first-degree sexual abuse, and one count of third-degree criminal sexual act (Point II) and order a new trial on the remaining four counts (Points I and II).

Respectfully submitted,

Robert S. Dean
Center for Appellate Litigation
*Counsel for Defendant-Appellant*

CAROLYN SHANAHAN
*Of Counsel, Pro Bono*

MATTHEW BOVA
*Of Counsel*

October 17, 2018

PRINTING SPECIFICATIONS STATEMENT

The brief was prepared in Microsoft Word, using 14-point Garamond font, 12-point in footnotes, and totaled 2,578 words.

# EXHIBIT D

# Application for Leave to Appeal to the Court of Appeals

# CENTER FOR APPELLATE LITIGATION

120 WALL STREET – 28TH FLOOR, NEW YORK, NY 10005 TEL. (212) 577-2523 FAX 577-2535



*ATTORNEY-IN-CHARGE*
ROBERT S. DEAN

*ASSISTANT ATTORNEY-IN-CHARGE*
MARK W. ZENO

*SENIOR SUPERVISING ATTORNEYS*
ABIGAIL EVERETT
BARBARA ZOLOT
CLAUDIA S. TRUPP

*MANAGING ATTORNEY*
DAVID J. KLEM

*SUPERVISING ATTORNEYS*
ROBIN NICHINSKY
MARIANNE C. YANG

*ASSISTANT MANAGING ATTORNEY*
KATHARINE SKOLNICK

Matthew Bova
*Senior Appellate Counsel*
ext. 543

February 8, 2019

RE: *People v. Lonnie Harrell*
New York Cty. Ind. No. 4258/14

Application for Leave to Appeal

Hon. Janet DiFiore
Chief Judge
New York Court of Appeals
 Attn:  Hon. John P. Asiello
20 Eagle Street
Albany, New York 12207

Your Honor:

Under C.P.L. § 460.20, Appellant Lonnie Harrell seeks leave to appeal from a January 29, 2019 order of the Appellate Division First Department which affirmed an October 21, 2015 judgment of conviction (New York County Ind. No. 4258/14) (amended on December 3, 2015 to indicate sex offender status). That judgment convicted Appellant, after a jury trial, of 1st-degree criminal sexual act (two counts), attempted 1st-degree rape, 1st-degree sexual abuse (two counts) and 3d-degree criminal sexual act (two counts), and sentenced him to an aggregate prison term of 25 years.

Appellant will submit a follow-up letter once this Court has designated a judge to decide his application. No application has been made to an Appellate Division Justice. Appellant had no co-defendants below.

Appellant seeks leave to appeal on every issue raised in his opening and reply briefs filed below, including his contention that the court's formulation of a response to a jury note in his absence violated his state and federal due process right to be present. U.S. Const. Amend. 14; N.Y. Const. Art. I § 6.

Appellant seeks an oral hearing on the application, either in person or by telephone.

Enclosed please find:

- Appellant's opening brief;
- Respondent's brief;
- Appellant's reply brief;
- the January 29, 2019 order of the Appellate Division; and
- an affidavit of service.

Sincerely,

*Matthew Bova*

Matthew Bova
*Counsel to Defendant-Appellant*

CC: Hon. Cyrus R. Vance
New York County District Attorney
1 Hogan Place
New York, New York 10013
ATTN: Appels Bureau, A.D.A. Aaron Zucker
(without enclosures)

**EXHIBIT F**

**Petitioner's Motion to Vacate the Judgment
(Filed June 25, 2020)**

# CENTER FOR APPELLATE LITIGATION

### 120 WALL STREET – 28TH FLOOR, NEW YORK, NY 10005 TEL. (212) 577-2523 FAX 577-2535



*ATTORNEY-IN-CHARGE*
 ROBERT S. DEAN

*ASSISTANT ATTORNEY-IN-CHARGE*
 MARK W. ZENO

*SENIOR SUPERVISING ATTORNEYS*
 ABIGAIL EVERETT
 BARBARA ZOLOT
 CLAUDIA S. TRUPP

*MANAGING ATTORNEY*
 DAVID J. KLEM

*SUPERVISING ATTORNEYS*
 ROBIN NICHINSKY
 MARIANNE C. YANG

*ASSISTANT MANAGING ATTORNEY*
 KATHARINE SKOLNICK

Matthew Bova
*Senior Appellate Counsel*
ext. 543

March 7, 2019

RE: *People v. Lonnie Harrell*
New York Cty. Ind. No. 4258/14

Application for Leave to Appeal

Hon. Jenny Rivera
Associate Judge
New York Court of Appeals
20 Eagle Street
Albany, New York 12207

Your Honor:

Appellant submits this letter in further support of his application for leave to appeal a January 29, 2019 First Department order affirming an October 21, 2015 judgment of Supreme Court (amended on December 3, 2015 to reflect sex offender registration). *See* Appellate Division Decision: Leave Application Appendix 1-3 ("A")[1] (affirming a judgment which convicted Appellant of seven felony counts and sentenced him to an aggregate prison term of 25 years).

## LEAVE QUESTION PRESENTED

Does the defendant have the right to be present during the formulation of a response to a jury note?

---

[1] Appellant has supplied an appendix in support of his application. Unless otherwise noted, all emphasis in this letter has been added by counsel.

## STATEMENT OF THE CASE

### A. The Trial

Appellant was indicted for seven felony counts:

- two counts of first-degree criminal sexual act (nonconsensual oral-vulval and penile-oral contact);
- two counts of first-degree sexual abuse (nonconsensual digital penetration and mouth-to-mouth contact);
- two counts of third-degree criminal sexual act (oral-vulval and penile-oral contact with a person under 17); and
- one count of attempted first-degree (nonconsensual sexual intercourse) (A7-9).

Appellant was complainant's neighbor and a friend of her family. He lived and worked in complainant's family's apartment building.

The government's theory at the 2015 trial was that Appellant engaged in non-consensual sexual activity with complainant (age 15) inside her apartment. The government's non-consent theory was based exclusively on complainant's testimony.

Deliberations began on October 5, 2015. The next day, the jury sent a note requesting a read-back of complainant's testimony regarding penile-vaginal contact and a conversation that occurred (between complainant and Appellant) during the purported sexual acts. A10, A151-53.

In Appellant's absence, defense counsel and the prosecutor discussed an appropriate response. A152-54. The prosecutor asked the court "whether [they] should make a record about the defendant not being here."A154. The court stated that the "defendant is in the holding pen right next door. Would you like to ask him if he would like to come join us?" *Id.* The sergeant relayed that Appellant wanted to "come into the courtroom." *Id.*

Still in Appellant's absence—while he was "on his way up" to the courtroom—counsel and the prosecutor continued to debate a response to the factual inquiry. A154-62. Defense counsel stated that they had located responsive portions of the "direct, cross, and redirect" and specifically identified the transcript pages. A156-57. But counsel repeatedly objected to the prosecutor's request to read certain portions of the complainant's redirect, arguing that they were not responsive to the note. A157, A162. The court twice overruled counsel's objection. A157, A162.

Although the complainant's testimony that Appellant engaged in penile-vaginal contact had been impeached, and counsel had stressed that impeachment in summation, defense counsel failed to ask the court to

read back the responsive impeachment testimony. Complainant Cross: A69 (testifying that, hours after the purported incident, she may not have told Detective Barbato about penile-vaginal contact); Detective Barbato Cross: A88-89 (confirming that no such statement had been made); Defense Summation: A95-98, A101, A116 (stressing this impeachment theory); *People v. Faulkner*, 195 A.D.2d 384, 385-86 (1st Dept. 1993) ("A request for a reading of testimony is presumed to include cross-examination which impeaches the testimony to be read back.").

After the court had already twice "ruled" on the appropriate response (A157, A162), officers transported Appellant into court. A163. Counsel then confirmed that he had "brought [his] client up to speed [with] what's going on with the note." A163. The readback was then provided to the jury. A167-68.

The jury subsequently convicted Appellant of all seven indicted counts. The court sentenced Appellant to an aggregate prison sentence of 25 years.

## B. Appellate Division Proceedings

Before the Appellate Division, Appellant contended that the court violated his statutory and constitutional right to be present when it formulated a response to the jury's note in Appellant's absence. A193-97, A199-A201, A281-84; C.P.L. § 260.20, § 310.30; U.S. Const. Amend. 14; N.Y. Const. Art. I § 6.

Appellant first contended that the response-formulation stage is a critical part of "the trial," thus triggering C.P.L. § 260.20's protections. A193-95, A199-200; C.P.L. § 260.20 ("A defendant must be personally present during *the trial* of an indictment"); *People v. Spotford*, 85 N.Y.2d 593, 596 (1995) (under C.P.L. § 260.20, a defendant has the "right to be present at all material stages of trial").

Appellant further contended that C.P.L. § 310.30, which guarantees the right to be present during the court's response to a jury note, also justified the right to be present during the response-formulation stage. A195-96, A199; C.P.L. § 310.30 ("Upon [receiving a substantive jury note], the court must direct that the jury be returned to the courtroom and, after notice to both the people and counsel for the defendant, *and in the presence of the defendant*, must give such requested information or instruction as the court deems proper."). "To find otherwise would create an anomaly in the law. Under that anomaly, a defendant would have the right to be present to 'listen' to the court's response to a factual inquiry . . . but would lack the right to be present during the more *important* proceeding which actually determines what that response will be." A195-96 (emphasis in brief).

Finally, due process guaranteed the right to be present because Appellant could have helped counsel formulate a response to the note as he had observed the complainant's testimony. A200; *People v. Williams*, 85 N.Y.2d 945, 947 (1995) (the state and federal due process clauses require that the defendant be present at all stages where he could potentially contribute).

In response, the government did not deny that Appellant could have contributed to the formulation of a response. The government similarly made no attempt to square its position with C.P.L. § 260.20's broad guarantee of the right to be present "during the trial." And the government didn't deny that it would be absurd to guarantee the right to be present when a response is delivered while precluding that right when the response is debated and formulated.

Instead, the government went all in on Fourth Department precedent, which had interpreted this Court's curt decision in *People v. Rodriguez*, 76 N.Y.2d 918 (1990), to reject a right to be present during the formulation stage. A255-56; *People v. Clark*, 128 A.D.3d 1494, 1495 (4th Dept. 2015). The government made no attempt to explain how *Rodriguez*'s narrow holding—that is, a defendant lacks the right to be present during a colloquy regarding the sufficiency of a readback that had *already been formulated and provided to the jury*—categorically nullified the right to be present during the initial formulation stage itself. *See* Reply: A282-83.

**C. The Decision**

With no analysis, the First Department found "no violation of defendant's right to be present at all material stages of the trial. He was present during a requested readback of the victim's testimony, and although he was absent for a portion of the preceding discussion regarding the content of the readback, his right to be present did not extend to that discussion." A1-A2 (citing *Rodriguez*, 76 N.Y.2d at 921).

Appellant filed a timely application for leave to appeal to this Court. A4-6. His application was then assigned to Your Honor.

**REASONS FOR GRANTING LEAVE**

There "are few moments in a criminal trial more critical to its outcome than when the court responds to a deliberating jury's request. Indeed, the court's response may well determine whether a verdict will be reached, and what that verdict will be." *People v. Kisoon*, 8 N.Y.3d 129, 134-35 (2007) (internal quotations omitted); *People v. O'Rama*, 78 N.Y.2d 270, 277-279 (1991) (the inquiry-formulation stage is a "critical postsubmission proceeding[ ]"). Thus it is critical that courts honor core procedural

safeguards in this context. *E.g.*, *People v. Parker*, 32 N.Y.3d 49 (2018); *People v. Mack*, 27 N.Y.3d 534, 544-49 (2016) (Rivera, J., dissenting).

Despite the critical importance of the jury-note stage, the Appellate Divisions are split on the question of whether the defendant has the right to be present during the formulation of a response to a jury note. That legal question is of state-wide importance, implicates the fair administration of justice, and calls upon this Court to correct the First and Fourth Department's basic misinterpretation of this Court's narrow decision in *Rodriguez*. Your Honor should grant leave to resolve the Appellate Division split and ensure that trial courts do not continue to conduct critical proceedings in the defendant's absence.

### A. The Appellate Divisions are split on whether the accused has the right to be present during the formulation of a response to a jury note.

Almost 30 years ago, in *Rodriguez*, this Court issued a narrow memorandum decision holding that the right to be present under C.P.L. § 310.30 did not apply to a "colloquy between [counsel] and the [court] which took place outside the jury's presence and *involved only the sufficiency of the read-back*" that had already been provided. 76 N.Y.2d 918, 921 (1990). "Defendant's absence . . . did not [a]ffect his ability to defend himself against the charges in any way and thus did not violate his due process right to be present at trial." *Id.* Appellant Court of Appeals Brief, *People v. Rodriguez*, at 11-13, annexed at A305-07 (the jury requested a readback and the parties agreed that certain portions of the transcript would be read to the jury; after the readback, the court conducted a colloquy with counsel outside the defendant's presence about whether certain testimony had been provided and whether, alternatively, that testimony was within the scope of the agreed-upon readback); *id.* at A319 (claiming error on the grounds that "appellant was absent from a colloquy regarding the completeness of a requested readback.").

Only an undiscerning reader would interpret *Rodriguez* to broadly and categorically reject the right to be present during the *initial* formulation of a response to a note. *Rodriguez* is limited to the right to be present during a ministerial discussion of whether: (1) certain testimony was actually provided and (2) that testimony was covered by the initial ruling regarding the scope of the readback. *Rodriguez*, 76 N.Y.2d at 921; *People v. Collins*, 99 N.Y.2d 14, 17-19 (2002) (the defendant lacks the right to be present during "ministerial" proceedings). Had this Court intended to categorically reject the right to be present during the response-formulation stage, it would have certainly said so.